## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ROBINHOOD DERIVATIVES, LLC

*Plaintiff*,

v.

ANDREA JOY CAMPBELL, in her official
capacity as Attorney General of the
Commonwealth of Massachusetts, et al.,

*Defendants*.

Civil Action No. 1:25-cv-12578

## <u>COMBINED MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS AND IN RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

**Table of Contents**

PRELIMINARY STATEMENT........................................................................................1

BACKGROUND .............................................................................................................2

MOTION TO DISMISS ARGUMENT ...........................................................................4

    I.    ROBINHOOD'S SUIT SHOULD BE DISMISSED FOR LACK OF STANDING. ...................................................................................................................4

        A.    Robinhood Alleges No Commonwealth Action Directed at Robinhood, Undercutting Any Credible Threat of Imminent Enforcement. .......5

        B.    The Commonwealth's Non-Enforcement Stipulation Eliminates Imminence of Any Alleged Threat of Prosecution. .........................7

    II.    ROBINHOOD'S CLAIMS ARE UNRIPE BECAUSE THEY TURN ON CONTINGENT EVENTS AND THERE IS NO HARDSHIP FROM WITHOLDING REVIEW.........................................................................10

    III.    EVEN IF ROBINHOOD HAD STANDING, THE COURT SHOULD REFRAIN FROM ENTERTAINING ROBINHOOD'S CLAIMS.........................................12

        A.    Robinhood's Claim Under the Supremacy Clause is Not Actionable and is a Veiled Declaratory Judgment Act Claim Which the Court Should Not Entertain.......................................................................................12

        B.    Even if Actionable, the Court Should Decline Declaratory Judgment Jurisdiction Under *Wilton/Brillhart*. ...............................................13

        C.    Even Were this Case Actionable, The Court Should Abstain under Younger, which Favors Dismissal..................................................16

        D.    Colorado River Provides an Additional, Independent Basis for Dismissal. ...................................................................................................18

        E.    At a Minimum, an Equitable Stay is Appropriate..........................20

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION ...............................22

    I.    ROBINHOOD IS UNLIKELY TO SUCCEED ON THE MERITS..........22

        A.    Federal Law Continues to Bar Interstate Sports Wagering, Irrespective of the CEA....................................................................................24

        B.    The CEA's Express Preemption Provisions Indicate that State Gaming Law is Not Preempted.................................................................26

        C.    Congress Has Not Impliedly Preempted State Regulation of Sports Wagering. .......................................................................................29

    II.    ROBINHOOD WILL NOT SUFFER IRREPERABLE HARM ABSENT A PRELIMINARY INJUNCTION...............................................................32

    III.    THE EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR THE COMMONWEALTH.................................................................................33

CONCLUSION..............................................................................................................35

## Table of Authorities

**Cases**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118 (D.D.C. 2017) .......................................................................... 33

*Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967) ....................................... 11

*Abdow v. Att'y Gen.*, 468 Mass. 478 (2014) ............................................... 30, 34

*Acton Corp. v. Borden, Inc.*, 670 F.2d 377 (1st Cir. 1982) ................................ 20

*Ah Sin v. Wittman*, 198 U.S. 500 (1905) .................................................. 30, 34

*Altria Grp. v. Good*, 555 U.S. 70 (2008) .................................................. 26, 30

*American Home Assurance Co. v. Insular Underwriters Corp.*, 494 F.2d 317 (1st Cir. 1974) ....................................................................................... 15

*Arizona v. United States*, 567 U.S. 387 (2012) ............................................ 29

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ...................... 12

*Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass. 2020) ........................ 23, 32

*Blue Cross & Blue Shield of Massachusetts, Inc. v. Regeneron Pharms., Inc.,* 633 F.Supp 3d 385 (D. Mass. 2022) ....................................................... 20, 21

*Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014) ............................................. 7, 9

*BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755 (9th Cir. 2018) .............. 28

*Bond v. United States*, 572 U.S. 844 (2014) ................................................ 25

*Bower v. Egyptair Airlines Co.*, 731 F.3d 85 (1st Cir. 2013) ........................... 26

*Braintree Laboratories, Inc. v. Citigroup Global Mkts., Inc.*, 622 F.3d 36 (1st Cir. 2010) ....................................................................................... 32

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) ............................... 15

*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) ............................................. 6

*Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9 (1st Cir. 2019) ........... 29, 30, 31

*Chicago Mercantile Exch. v. SEC*, 883 F.2d 537 (7th Cir. 1989) ...................... 27

*Cipollone v. Liggett Grp., Inc.*, 50 U.S. 504 (1992)..........................................................27

*City of Fall River, Mass v. F.E.R.C.*, 507 F.3d 1 (1st Cir. 2007) .........................................11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).............................................................. 7

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) ............................... 5, 6, 7, 9

*Colella v. State Racing Comm'n*, 360 Mass. 152 (1971) ................................................... 34

*Colonial Penn Grp., Inc. v. Colonial Deposit Co.*, 834 F.2d 229 (1st Cir. 1987) ............. 13

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ........... 18

*Commonwealth of Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass.)..... 1, 3

*Commonwealth of Massachusetts v. KalshiEX LLC*, No. 2584CV02525-BLS1 ................ 2

*Corp. Techs., Inc. v. Harnett*, 731 F.3d 6 (1st Cir. 2013) ................................................. 23

*Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87 (2017) .................................... 26

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) .................................................................. 26

*Dataphase Systems, Inc. v. C L Systems, Inc.* 640 F.2d 109 (8th Cir. 1981).................... 33

*DHL Assocs., Inc. v. O'Gorman*, 6 F.Supp. 2d 70 (D. Mass. 1998) ................................. 13

*Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13 (1st Cir. 2006) ................................................ 15

*Env't Def. Fund, Inc. v. Wright*, No. CV 25-12249-WGY, 2025 WL 2663068 (D. Mass. Sept. 17, 2025)........................................................................................................ 22

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) ................................................................. 25

*Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530 (1st Cir. 1995) ................. 15

*Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13 (1st Cit. 2006) ................ 22

*F.T.C. v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001) ............................................... 27

*F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980)................................................... 33

*FMC Corp. v. Holliday*, 498 U.S. 52 (1990)..................................................................... 26

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983)....................................................................... 13

*Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995) .......................................................... 27

*Get In Shape Franchise, Inc. v. TFL Fishers, LLC* 167 F. Supp. 3d 173 (D. Mass. 2016) ................................................................................................................ 6

*Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989) .................................... 12

*Grant v. Trial Ct.*, 784 F. Supp. 3d 475 (D. Mass. 2025) ................................................ 33

*Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999) ............. 34

*Greenfield & Montague Transp. Area v. Donovan*, 758 F.2d 22 (1st Cir. 1985) ............. 13

*Harris as next friend of RNH v. Adams*, 757 F. Supp. 3d 111 (D. Mass. 2024).... 23, 32, 33

*Hewlett-Packard Co. v. Berg*, 61 F.3d 101 (1st Cir. 1995) ................................................ 20

*Hicks v. Miranda*, 42 U.S. 332 (1975) .............................................................................. 17

*Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016) ........................................ 4

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) ............................................................ 28

*Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010) ........................................ 18, 19

*KalshiEX LLC v. Hendrick*, No. 25-cv-575, 2025 WL 1073495 (D. Nev. Apr. 9, 2025) ............................................................................................................................. 23

*KalshiEX LLC v. Martin*, No. 25-cv-1283-ABA, 2025 WL 2194908 (D. Md. Aug. 1, 2025) ..................................................................................................................... passim

*Kansas v. Garcia*, 589 U.S. 191 (2020) ...................................................................... 29, 32

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) ...................................................... 4, 7

*KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1 (1st Cir. 2003).................. 18, 19

*Labor Relations Div. v. Healey*, 844 F.3d 318 (1st Cir. 2016) ......................................... 12

*Landis v. North American Co.*, 299 U.S. 248 (1936)......................................................... 20

*LCM Enters, Inc. v. Town of Dartmouth*, 14 F.3d 675 (1st Cir. 1994)............................. 31

*Lichoulas v. City of Lowell*, 555 F.3d 10 (1st Cir. 2009) ................................................. 14

*Local Union No. 12004 v. MCAD*, 330 F.3d 12 (1st Cir. 2004)........................................ 13

*Mass. Ass'n of Priv. Career Schs. v. Healey*, 159 F. Supp. 3d 173 (D. Mass. 2016) ........ 30

*Massachusetts Coal. of Citizens with Disabilities v. Civ. Def. Agency & Office of Emergency Preparedness of Com. of Massachusetts,* 649 F.2d 71 (1st Cir. 1981) ............................................................................................. 32

*Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33 (1st Cir. 2012) ............................ 17

*Mazurek v. Armstrong,* 520 U.S. 968 (1997) (*per curiam*) ................................ 33

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) ................ 27

*Microfinancial, Inc. v. Premier Holidays Intern., Inc.*, 385 F.3d 72 (1st Cir. 2004) ......... 20

*Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423 (1982)............ 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)..................... 18

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018)................................ 29, 34

*Nashoba Commc'ns Ltd. P'ship No. 7 v. Town of Danvers*, 893 F.2d 435 (1st Cir.1990) ............................................................................................. 13

*Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109 (1st Cir. 2012)............. 18, 19

*New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35 (D. Mass. 2015) ............................................................................................. 21

*New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1 (1st Cir. 2002)............. 22

*New Hampshire Lottery Commission v. Rosen*, 986 F.3d 38 (1st Cir. 2021) ................ 8, 9

*Nken v. Holder*, 556 U.S. 418 (2009)................................................................ 22

*O'Neil v. Canton Police Dep't*, 116 F.4th 25 (1st Cir. 2024) ............................................ 6

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) ............................................................ 30

*Penobscot Nation v. Frey*, 3 F.4th 484 (1st Cir. 2021), cert. denied, 142 S. Ct. 1669 (2022)............................................................................................8, 11

*Ponchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603 (5th Cir. 2022) ............................................................................................. 15

*Power v. Arlington Hosp. Ass'n*, 42 F.3d 851 (4th Cir. 1994) ........................................ 28

*Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889 (1979) .......... 21

*Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111 (1962) ......................................... 15

*Public Interest Legal Foundation v. Bellows*, 92 F.4th 36 (1st Cir. 2024)................... 9, 10

*Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237 (1952)................ 12

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) ........................................................4, 5, 9, 11

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999) ............11

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56 (1st Cir. 2005) ..................... 32

*Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219 (1st Cir. 2003) ................................. 33

*Rossi v. Gemma*, 489 F.3d 26 (1st Cir. 2007)..................................................................... 14

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8 (1st Cir. 2000).................... 14

*Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9 (1st Cir. 2020)............................ 22, 23

*Santiago v. Municipality of Utuado*, 114 F.4th 25 (1st Cir. 2024) ................................... 33

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) ............................................................ 13

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015)................................... 16, 17

*Skelly Oil Co. v. Phillips Petroleum Co.*, 575 U.S. 320 (1950) ........................................ 12

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ...................................................... 16

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024)......................................................... 22

*Stone v. Mississippi*, 101 U.S. 814 (1879) ........................................................................ 30

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................................................... 5

*Tauton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977)............................................... 20

*Texas v. United States*, 523 U.S. 296 (1998)..................................................................... 10

*Toilet Goods Ass'n v. Gardner*, 387 U.S. 158 (1967) .......................................................11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)............................................................. 4

United States ex rel. Witkin v. Medtronic, Inc., 2025 WL 928777 (D. Mass. Mar. 27, 2025) ............................................................................................................................ 21

*United States v. AVX Corp.*, 962 F.2d 113 (1st Cir. 1992) ................................................. 4

*Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009)............................ 32

*Verizon Md., Inc. v. Pub. Serv. Comm'n*, 545 U.S. 635 (2002)......................................... 13

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7 (1st Cir. 1990)............ 18, 19

*Whitman v. Am. Trucking Ass'n*, 531 U.S. 457 (2001) ..................................................... 23

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) .................................................. 13, 14, 15

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ......................................... 22, 33

*Wyeth v. Levine*, 555 U.S. 555 (2009) .............................................................................. 30

**Statutes**

15 U.S.C. § 3001 (a) .................................................................................................... 25, 30

18 U.S.C. § 1084 .......................................................................................................... 24, 25

28 U.S.C. § 3701 *et seq.* .................................................................................................... 24

31 U.S.C. § 5363 ................................................................................................................ 24

7 U.S.C. § 13a-2(1) ............................................................................................................ 28

7 U.S.C. § 7a-2(5)(C)(i)(V) ............................................................................................... 28

7 U.S.C. §§ 2(e) .................................................................................................................. 24

7 U.S.C. §§ 6(a)(1) ............................................................................................................. 24

G.L. c. 23K *et seq.* ............................................................................................................. 34

G.L. c. 23N *et seq.* ............................................................................................................. 34

U.S. Const., Art. III, § 2, cl. 1 ............................................................................................. 4

**Other Authorities**

10B Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure*§
    2759 (4th ed. 2022) ................................................................................................... 14

E. Borchard, DECLARATORY JUDGMENTS 299 (2d rev. ed. 1941) .................................... 14

**Regulations**

17 C.F.R. § 40.11(a)(1) ........................................................................................... 25, 28, 31

Provisions Common to Registered Entities, 76 Fed. Reg. 44776 (July 27, 2011) ............ 26

## PRELIMINARY STATEMENT

Plaintiff Robinhood Derivatives, LLC ("Robinhood") filed this action for declaratory and injunctive relief against the Massachusetts Attorney General and the Commonwealth's Gaming Commissioners (collectively, the "Commonwealth"[1]) after the Commonwealth sued KalshiEX, LLC ("Kalshi") in Massachusetts state court for violating state sports wagering law. The case against Kalshi has now been removed to this Court, and is subject to a pending motion to remand. *See Commonwealth of Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595-RGS, (Stearns, J. presiding). Robinhood's suit, and its corresponding preliminary injunction motion, are purportedly brought to forestall future state enforcement. In Robinhood's pleadings, the basis of the alleged "credible threat" of enforcement is identified as the Commonwealth's separate lawsuit against Kalshi, a prediction market that Robinhood allows its users to access on its digital platform.

But there is no actual case or controversy between Robinhood and the Commonwealth that is properly before the Court. Robinhood's complaint arises exclusively from the Kalshi offerings it makes available on its platform. In Robinhood's own telling, "while Robinhood customers are placing orders for event contract trades in their Robinhood accounts, the *trades* themselves are taking place on Kalshi's CFTC-designated exchange." Complaint ("Compl.") ¶ 24 (emphasis in original). This action seeks to end-run the Commonwealth's preexisting

---

[1] For simplicity, the term "Commonwealth" is used interchangeably to represent the various Massachusetts officials or government entities involved in both cases, even though the formal parties involved in both actions differ. In this case (the Robinhood matter), the defendants consist of the Massachusetts Attorney General and all of the Massachusetts Gaming Commissioners sued in their official capacities. In the Kalshi case, the plaintiff is the Commonwealth of Massachusetts, represented by and through the Massachusetts Attorney General.

enforcement action against Kalshi, which (unlike this action) includes the requisite parties to decide the legality and classification of Kalshi's contracts under Massachusetts law.

This action is improper for several reasons.  First, Robinhood lacks standing.  Second, the case is unripe.  Third, Robinhood has no private right of action to enforce the Supremacy Clause; instead it seeks a declaratory action over which this Court should not assert jurisdiction.  Fourth, even if Robinhood's claim for injunctive relief were proper, which it is not, other abstention doctrines provide that this action should be dismissed or stayed.  Fifth, irrespective of any of the foregoing, this Court has the inherent authority to stay this action pending the resolution of the *Kalshi* matter, which it should exercise.

Even were the Court to decline to dismiss or stay this action, Robinhood's preliminary injunction is not warranted.  As explained below, Robinhood faces no harm, let alone the imminent and irreparable harm required for preliminary relief.  The substance of its motion is also far wide of the mark. Federal courts have long recognized the fundamental state police power to govern casino and sports gambling.  Robinhood's argument that the Commodity Exchange Act ("CEA"), as amended in 2010, silently displaced that authority by requiring that *all* sports wagering operations fall *only* under the CFTC's purview—unbeknownst to the Supreme Court, state gambling regulators, and the dozens of state legislatures that have since enacted detailed state regulatory regimes—fails.  The claim is refuted by fundamental rules of statutory interpretation and legislative history; it simply defies common sense.

## BACKGROUND

On September 12, 2025, the Commonwealth filed a civil enforcement action in the Suffolk Superior Court Business Litigation Session concerning sports wagering offered on the Kalshi exchange.  *Commonwealth of Massachusetts v. KalshiEX LLC*, No. 2584CV02525-BLS1.

Kalshi subsequently attempted to remove that lawsuit to the District of Massachusetts, where it is now subject to a pending motion to remand. *Commonwealth of Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass.) (Stearns, J. presiding); *id*. at ECF No. 21, at pp. 7–16.

On the first business day after the Commonwealth filed the Kalshi action, Robinhood attempted to collaterally attack the Commonwealth's enforcement by filing the present lawsuit in federal court. Compl., ECF. No. 1. In its Complaint, Robinhood states that the Kalshi exchange on which sports wagers are offered may be accessed through the Robinhood platform[2]; and, accordingly, Robinhood fears the Commonwealth might "file a similar complaint" against Robinhood. Compl., ECF. No. 1, at ¶¶ 5–6, 21–24. On this basis, Robinhood seeks a declaration that enforcing said laws would violate the Supremacy Clause of the United States Constitution, and Robinhood further requests this Court enjoin the Commonwealth from enforcing Massachusetts gaming laws against Robinhood. Compl., ECF. No. 1, at ¶¶ 21–24, 26–27. Robinhood also moved for a preliminary injunction. ECF No. 10-1.

It is perhaps pellucid that, if the Commonwealth's enforcement action against Kalshi is successful, the Kalshi exchange will no longer offer sports wagering; those wagers accordingly will not be available via any access to Kalshi's exchange that Robinhood may provide; and the Commonwealth will have no need to bring any action against Robinhood. But to eliminate any doubt about the Commonwealth's intent, the Commonwealth filed a non-enforcement stipulation under which the Commonwealth will not enforce against Robinhood until (1) a court reaches a decision on the pending motion for preliminary injunction in the Kalshi enforcement

---

[2] Robinhood clarifies that Kalshi is a designated contract market that lists and executes the event contract at issue; Robinhood, by contrast, is a "futures commission merchant" that facilitates customer access and routes orders for execution on Kalshi's exchange. Compl., ECF. No. 1, at ¶¶ 1, 5, 7, 21–24

proceedings, and (2) a court reaches a decision on the pending motion for preliminary injunction in this action.  Commonwealth's Stipulation of Non-Enforcement, ECF No. 29, ¶ 4.

In support of its claims, Robinhood's complaint invokes the existence of the Kalshi enforcement action and references to Robinhood made in that context, but it alleges no concrete step by the Attorney General directed toward enforcement against Robinhood.  Robinhood similarly identifies no action by the Massachusetts Gaming Commission ("MGC") directed at Robinhood, nor do they allege that the MGC regulates Robinhood.  *See* Compl., ECF. No. 1, ¶¶ 1–2, 21–24.

## MOTION TO DISMISS ARGUMENT

## I.    ROBINHOOD'S SUIT SHOULD BE DISMISSED FOR LACK OF STANDING.

"The Constitution limits the judicial power of the federal courts to actual cases and controversies."  *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (citing U.S. Const., Art. III, § 2, cl. 1).  The "cases and controversies" limitation on the federal court's exercise of jurisdiction is fundamental on the federal judiciary's role within the constitutional separation of powers.  *Reddy v. Foster*, 845 F.3d 493, 498–99 (1st Cir. 2017).  Accordingly, jurisdictional questions, like standing, must be answered before a federal court may weigh in on the underlying merits of the case.  *See United States v. AVX Corp.*, 962 F.2d 113, 116 (1st Cir. 1992); *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016).  To establish standing, a plaintiff must show a concrete and particularized injury that is actual or imminent, fairly traceable to the defendant, and redressable by the court.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–26 (2021).  A plaintiff must sufficiently allege an "injury in fact" that threatens "his own legal rights (as opposed to those of a third party)."  *Katz*, 672 F.3d at 71–72.

In the context of pre-enforcement cases, such as this one, the plaintiff must show a "credible threat" of prosecution that is "real and immediate," not conjectural or hypothetical.  *See*

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–61 (2014) ("*SBA List*").  Speculative chains of possibility do not suffice, and self-inflicted costs cannot manufacture standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–16 (2013).  An allegation of future injury may suffice if the threatened future injury is "certainly impending *or* if there is a substantial risk that harm will occur."  *Reddy*, F.3d 493 at 500 (emphasis in original).  But if a future injury is too speculative and no enforcement is even contemplated, as here, then there is no standing to sue. *Id*.

Robinhood's pre-enforcement claim is simply an attempt to circumvent state court enforcement against Kalshi.  The issues Robinhood alleges here will be completely decided in the Kalshi case.  Indeed, without the Kalshi case, this case would not exist.  Compl., ECF No. 1, ¶¶ 5–6, 37, 57, 63.  Robinhood asserts no other conduct indicating that the Commonwealth intends to file an action against it.  Because the Commonwealth has stipulated to not enforcing against Robinhood during the pendency of the Kalshi preliminary injunction motion, Robinhood's case rests on speculative future enforcement.

**A.    Robinhood Alleges No Commonwealth Action Directed at Robinhood, Undercutting Any Credible Threat of Imminent Enforcement.**

Robinhood's standing rests on conclusory assertions of a "real and imminent threat" of enforcement, but identifies nothing more than the Commonwealth's separate enforcement action against Kalshi as a predicate.  Compl., ECF No. 1, ¶¶ 5–6, 37, 57, 63.  A pre-enforcement plaintiff must demonstrate a credible threat of prosecution, not a speculative fear.  *SBA List*, 573 U.S. at 159–61.  As *SBA List* makes clear, a credible threat must be plaintiff-focused; it is not enough to infer peril from proceedings against a third party.  *See SBA List*, 573 U.S. at 162–67. Indeed, Robinhood is not similarly-situated to Kalshi in these cases.  As Robinhood notes, it merely a merchant of Kalshi's contracts. Robinhood does not set odds, pricing, or the types of

offerings in the way that Kalshi does. Compl., ECF No. 1, ¶¶ 1, 7, 22, 24.  Asserting that the

Commonwealth will take enforcement action against Robinhood simply because it did so against

Kalshi involves one speculation after another and is too attenuated to establish an immediate

threat of injury.  *Brito v. Garland*, 22 F.4th 240, 254 (1st Cir. 2021) ("Court has expressed

'reluctan[ce] to endorse standing theories that require guesswork as to how independent

decision-makers will exercise their judgment.'" (citing *Clapper*, 568 U.S. at 413–14)).

Robinhood's allegations do no more than infer risk from a separate action against a

different party who is differently situated.  That is insufficient to establish a "realistic danger of

sustaining a direct injury" at the hands of the Commonwealth.  *Reddy*, 845 F.3d at 500–01 (no

standing where enforcement threat was speculative and not directed at plaintiffs).  Robinhood's

claim of "threatened enforcement must also be sufficiently specific."  *O'Neil v. Canton Police

Dep't*, 116 F.4th 25, 31 (1st Cir. 2024).

Similarly, the types of harms Robinhood asserts it will suffer here are not sufficiently

concrete or particularized because of the speculative nature of Robinhood's injury.  Robinhood

suggests that reputational and goodwill harms flow from the anticipated risk of enforcement

against it.  Compl., ECF No. 1, ¶ 58.[3]  But the Supreme Court has repeatedly held that self-

---

[3] Robinhood's cites to this Court's decision in *Get In Shape Franchise, Inc. v. TFL Fishers, LLC* 167 F. Supp. 3d 173, 202–03 (D. Mass. 2016) to support the proposition that the potential reputational harm entitles them to injunctive relief.  Comp. ¶ 58.  But *Get In Shape* only addressed the equitable preliminary injunction factor of irreparable harm *after* this Court found a likelihood of success on breach of a non-compete agreement.  *Get In Shape*, 167 F. Supp. at 200.  The case does not hold that reputation/goodwill concerns themselves confer *standing* in a pre-enforcement suit.  Furthermore, the *Get In Shape* record featured a former franchisee actively operating a competing business in the same location, diverting customers and eroding the brand—harm this Court deemed imminent and not compensable in damages.  *Id.* at 203.  Here, Robinhood identifies *no* plaintiff-directed enforcement step and relies on fears tied to a separate enforcement case against Kalshi; thus any "reputational" harms are conjectural or self-imposed precautions, which do not create Article III injury.

imposed costs taken to guard against hypothetical risks do not constitute injury-in-fact. *Clapper*, 568 U.S. at 415–16; *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).

As to the MGC specifically, nowhere does Robinhood allege sufficient facts to establish a causal nexus for standing. Robinhood cites to its fear of future enforcement by the MGC (*see* Compl., ECF No. 1, ¶ 57), but this fear rest on conjecture, not any notice, investigation, or enforcement aimed at Robinhood. Their licensing argument fares no better. *See* Compl., ECF No. 1, ¶ 59. Having asserted that Chapter 23N does not apply to it, Robinhood cannot manufacture Article III injury by positing that it "could not avoid harm" because the MGC *might* exercise discretion to deny a license Robinhood says it does not need. That is both self-inflicted (arising from Robinhood's own strategic choice) and contingent (turning on hypothetical future licensing decisions), and does not establish standing. *See Katz*, 672 F.3d at 71–79; *Clapper*, 568 U.S. at 416.

**B.    The Commonwealth's Non-Enforcement Stipulation Eliminates Imminence of Any Alleged Threat of Prosecution.**

In fact, the Commonwealth has taken the *opposite* position of Robinhood's speculative, subjective fear: it has entered a non-enforcement stipulation in this case, ECF No. 29. Even if Robinhood's pleading substantiated a credible threat (which it does not), the Commonwealth's Stipulation eliminates any "substantial risk" of prosecution during this case. The First Circuit treats such disavowals as dispositive on imminence. *Reddy*, 845 F.3d at 498–501 (no standing where the State "disavowed" interference); *Blum v. Holder*, 744 F.3d 790 at 798–99 (1st Cir. 2014) (similar); *Penobscot Nation v. Frey*, 3 F.4th 484, 507–09 (1st Cir. 2021),

*cert. denied*, 142 S. Ct. 1669 (2022) (same).  Accordingly, Robinhood cannot show actual or imminent harm.

Two recent First Circuit cases regarding pre-enforcement standing rest on circumstances that are not present here; by describing when a party has standing, they illustrate the absence of Robinhood's standing.  *New Hampshire Lottery Commission v. Rosen*, 986 F.3d 38 (1st Cir. 2021) turned on a concrete, imminent threat driven by the Department of Justice's ("DOJ") formal adoption of a legal position that (i) expressly condemned the plaintiffs' ongoing business as criminal under the Wire Act, and (ii) was coupled with only a short, non-binding "forbearance" window and a refusal to disavow prosecution.  *Id*. at 44–48, 50–54.  The DOJ had affirmatively warned states about selling lottery tickets online as a violation of the Wire Act.  *Id*. at 51.  On those facts, the First Circuit found a "credible threat of prosecution" and a present hardship; lotteries, the court held, "should not have to operate under a dangling sword of indictment" while the DOJ delayed.  *Id*. at 51.

This case lacks the features that made *Rosen* justiciable.  *Rosen* does not confer standing to a third-party facilitator like Robinhood.  *Rosen* turned on a government position that directly outlawed the plaintiff's *own* business. The plaintiffs in *Rosen* were "affirmatively warned" that internet lottery sales violated the Wire Act and the First Circuit relied on those warnings in finding a credible threat.  *Id*. at 51.  But Robinhood is differently situated from Kalshi. The Commonwealth has taken action to prevent illegal sports books like Kalshi from masquerading as contract markets, but has not addressed companies like Robinhood that provide access to those sports books.  Here, the Commonwealth has not announced any rule, guidance, interpretation, or suit alleging that "futures commission merchant" activity (as Robinhood describes its role, *see* Compl., ECF No. 1, ¶¶ 7, 22) violates Massachusetts sports-wagering

laws—or even that such intermediaries require licensure.  The Commonwealth's enforcement action targets different conduct, and treating an exchange operator the same as a merchant would collapse distinct roles the Commonwealth has not equated.

In fact, the only statements Robinhood points as a "specific threat" against it are passing mentions of Robinhood in the Kalshi complaint.  This is simply not the type of comprehensive, uniform position that was expressly applied to the plaintiffs by the DOJ in *Rosen*.  *See Rosen*, 845 F.3d at 44–48.  The absence of any adopted, across-the-board position aimed at contract merchants like Robinhood makes this case more akin to pre-enforcement decisions denying standing where the government had not singled out the plaintiff with a concrete threat.  *See Clapper*, 568 U.S. 389 at 409–14 (no standing based on speculative contingent fears of future enforcement); *Blum*, 744 F.3d at 798–804 (affirming dismissal where plaintiffs failed to show objectively reasonable threat of prosecution); *Reddy*, 845 F.3d 493 at 500–03 (no pre-enforcement standing/ripeness where operative trigger for enforcement had not occurred and plaintiffs faced no immediate sanction).

*Rosen* also emphasized that the DOJ would not disavow prosecution and offered only a 90-day "internal" forbearance that could start running whenever the DOJ chose—hardly an assurance of non-prosecution.  *Rosen*, 986 F.3d 38 at 52.  That temporizing, the court held, *exacerbated* the credible threat and the hardship.  *Id*.  Here, there is no comparable combination of (1) an announced legal view condemning Robinhood's *current* operations as a facilitator of Kalshi's bets, (2) a short fuse to unwind those operations, and (3) an express refusal to disavow enforcement against Robinhood.  Without such, the core *Rosen* rationale is missing.

The First Circuit's recent decision in *Public Interest Legal Foundation v. Bellows*, 92 F.4th 36 (1st Cir. 2024) similarly illustrates Robinhood's lack of standing here.  That case, unlike

this one, involved a concrete injury caused by the state, i.e., Maine denying the plaintiff's statutory request for the statewide voter file under the National Voter Registration Act ["NVRA"]). *Id*. at 43. The case also involved a pre-enforcement conflict where Maine law restricting the use of the state voter file forbade the plaintiff's routine practice and carried significant fines. *Id*. at 43–44. The First Circuit held that Maine's assurances of lenient enforcement were nonbinding and could not defeat standing. *Id*. at 51. The court further held that there was at least a "substantial risk" the plaintiff would face enforcement if it used the voter data as planned. *Id*. at 50–51.

Robinhood's circumstances are different in every material respect from the plaintiffs in *Bellows*. First, the plaintiffs in *Bellows* had suffered a present, tangible injury: concrete denial of an alleged statutory right to information (the voter file). *Id*. at 54. Robinhood points to no comparable right that the Commonwealth has refused to provide. Second, the agency "assurances" present in *Bellows* cut the other way here. *Bellows* held that Maine's nonbinding interpretations of its election statute could not erase standing because the statute's text clearly forbade plaintiff's planned use of voter data and officials' statements did not bind future decision makers. *Id*. at 50. Here, the Commonwealth has issued a publicly docketed stipulation of non-enforcement—in contrast to nonbinding interpretations–and eliminates any credible threat while it is in effect.

## II. ROBINHOOD'S CLAIMS ARE UNRIPE BECAUSE THEY TURN ON CONTINGENT EVENTS AND THERE IS NO HARDSHIP FROM WITHOLDING REVIEW.

Not only does Robinhood lack standing, but its claims are unripe. To be ripe for adjudication, a claim must satisfy both prongs of the ripeness analysis: "fitness" and "hardship." *Texas v. United States*, 523 U.S. 296, 300–01 (1998).

10

Fitness for review is lacking where the dispute depends on later factual development and judicial intervention would inappropriately entangle the courts in abstract disagreements over policy. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149 (1967); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163–64 (1967) (pre-enforcement review of a regulation was denied where any sanction depended on how the agency might act in future circumstances and there were no "irremediable adverse consequences" from awaiting enforcement).

Here, any dispute turns on if the Commonwealth might pursue enforcement against Robinhood, even though Robinhood has failed to present any allegations that the Commonwealth is poised to pursue an action against it, and the Commonwealth has expressly disavowed a plan to do so. The ultimate resolution of Robinhood's claims depends on the underlying Kalshi action which is still awaiting adjudication. Robinhood's request for judicial intervention, consequently, is unripe. *See City of Fall River, Mass. v. F.E.R.C.*, 507 F.3d 1, 6 (1st Cir. 2007) (claims resting on speculative injuries or contingent future events are generally unripe under both Article III and prudential requirements); *see also R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 30–31 (1st Cir. 1999) (in pre-enforcement challenges, plaintiffs required to demonstrate concrete plans to engage immediately or nearly so in the arguably proscribed activity; without such, claims unlikely to meet ripeness threshold).

Robinhood's claims are also unripe because it faces no present or imminent harm. Robinhood has made no allegations about being required to alter its conduct and the claimed injuries are all speculative. *See Penobscot*, 3 F.4th at 509 (hardship prong not met where plaintiffs were not required to engage in or refrain from any conduct until actual state action occurs); *see also Reddy*, 845 F.3d at 505 (no apparent prejudice in delaying adjudication because of contingent nature of claimed injury (citing *Labor Rels. Div. v. Healey*, 844 F.3d 318, 330 (1st

Cir. 2016)).  Withholding review also imposes no cognizable hardship on Robinhood because the

non-enforcement stipulation removes any risk of immediate penalties or alleged reputational

harm as a result of an enforcement action against Robinhood.  *See Penobscot*, 3 F.4th at 507–09;

*Blum*, 744 F.3d at 798–99.

### III.    EVEN IF ROBINHOOD HAD STANDING, THE COURT SHOULD REFRAIN FROM ENTERTAINING ROBINHOOD'S CLAIMS.

#### A.    Robinhood's Claim Under the Supremacy Clause is Not Actionable and is a Veiled Declaratory Judgment Act Claim Which the Court Should Not Entertain.

A declaratory judgment plaintiff must identify a substantive, independently cognizable

federal claim; the Declaratory Judgment Act 'enlarge[s] the range of remedies available," but

"does not extend the jurisdiction" of the federal courts and does not itself create a cause of

action.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 575 U.S. 320, 324–26 (1950).

The only cause of action identified by Robinhood is the "Supremacy Clause." Compl. at

¶¶ 66–67.  However, "the Supremacy Clause is not the 'source of any federal rights' . . . and

certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S.

320, 324 (2015) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989))

(internal quotation marks omitted).  Despite Robinhood's superficial reliance on the Supremacy

Clause, then, this case is a *de facto* claim under the Declaratory Judgment Act, 28 USC §§

2201–2202.

Where, as here, a private party seeks a federal declaration to head off a state enforcement

proceeding, the Supreme Court directs courts to look at the "character of the threatened action":

if the natural coercive suit would be a state case and the federal question would arise only as a

defense (preemption), a declaratory action does not lie. *Public Service Comm'n of Utah v.

Wycoff Co., Inc.*, 344 U.S. 237, 248 (1952); *Franchise Tax Bd. of State of Cal. v. Constr.*

*Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19; 27–28 (1983).  The First Circuit follows *Wycoff*:  "It is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction."  *Colonial Penn Grp., Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 233–37 (1st Cir. 1987) (adopting *Wycoff*; declaratory judgment cannot be a "preemptive strike"); *Nashoba Commc'ns Ltd. P'ship No. 7 v. Town of Danvers*, 893 F.2d 435, 437–38 (1st Cir.1990); *Greenfield & Montague Transp. Area v. Donovan*, 758 F.2d 22, 26–27 (1st Cir. 1985).  That rule fits here: Robinhood's claims are derivative of the Commonwealth's Kalshi enforcement, and any preemption theory is at most a defense to that state proceeding.  The Declaratory Judgment Act cannot and does not convert that defense into a standalone federal cause of action.  *See also DHL Assocs., Inc. v. O'Gorman*, 6 F.Supp. 2d 70, 80 (D. Mass. 1998) (Declaratory Judgment Act adds a remedy it does not create a right).[4]

Robinhood's declaratory judgment count, to the extent it rests on an asserted "Supremacy Clause right" to a federal declaration immunizing their business model from state enforcement, fails to clear this threshold bar.  The Court should dismiss or, at a minimum, treat the absence of a substantive federal claims as a strong reason to decline declaratory judgment jurisdiction.

### B.    Even if Actionable, the Court Should Decline Declaratory Judgment Jurisdiction Under *Wilton*/*Brillhart*.

The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–90 (1995) (quotation

---

[4] To the extent Robinhood invokes the *Shaw/Verizon* line (allowing suits against state officials to enjoin ongoing application of a state regulatory scheme), that is a different animal. *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 545 U.S. 635, 645 (2002); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).  *Shaw/Verizon* do not contemplate a Declaratory Judgment Act-based cause of action, but rather a limited *Ex parte Young* route, which the First Circuit has treated as distinct and carefully cabined.  *Local Union No. 12004 v. MCAD*, 330 F.3d 12, 16–18 (1st Cir. 2004).  It does not help where, as here, the declaratory plaintiff is not the "natural defendant" to a federal cause of action and seeks only to front-run a state enforcement with a federal defense.

omitted); *see also Lichoulas v. City of Lowell*, 555 F.3d 10, 13 (1st Cir. 2009) ("In general, declaratory and injunctive relief are both matters of judicial discretion."); *Rossi v. Gemma*, 489 F.3d 26, 38 (1st Cir. 2007) (same); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) ("district courts have broad discretion to … make determinations regarding the propriety of injunctive relief") (internal quotation marks omitted).  As such, a district court is authorized, in sound exercise of its discretion, to stay or to dismiss such an action.  *Wilton,* 515 U.S. at 288.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Id.*  "The two principal criteria guiding the policy in favor of rendering declaratory judgements are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  10B Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2759 (4th ed. 2022 (quoting E. Borchard, DECLARATORY JUDGMENTS 299 (2d rev. ed. 1941)).  Because of the pending Kalshi action, neither is present here.

  Robinhood's claim turns entirely on matters of fact and law present in the Kalshi case—specifically, whether Kalshi's "sports-event contracts" are unlicensed wagering under Massachusetts statutes and regulations.  By Robinhood's own allegations, Robinhood does not originate or structure these contracts; Robinhood simply provides access to Kalshi's exchange and the opportunity for its customers to accept wagers listed there.  *See* Compl., ECF. No. 1, ¶¶ 1–2, 5, 21–24.  The pending Kalshi enforcement proceeding will squarely adjudicate the classification and legality of those contracts.  Should the Court decline to consider Robinhood's action in favor of the Kalshi case, Robinhood will be no worse off as the Kalshi matter will

completely resolve the very issues Robinhood complains of in this case.  In contrast, by exercising declaratory judgment jurisdiction here, the Court risks expending additional resources when unnecessary; reaching inconsistent rulings; adjudicating on an incomplete record (as Kalshi is not a party to this action, *see Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111 (1962) ("So fragile a record is an unsatisfactory basis on which to entertain [an] action for declaratory relief")); and entangling the federal court in questions of state law central to an ongoing sovereign enforcement action.  *See Wilton*, 515 U.S. 277 at 286–90; *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942); *see also Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 41 (1st Cir. 2006) (a court's "discretion to grant declaratory relief is to be exercised with great circumspection when matters of public moment are involved" (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995))).

In reality, Robinhood is pursuing a declaratory judgment here in an attempt to have the issues resolved in its preferred forum so that the issues in the Kalshi case are not resolved first in state court.  Such forum shopping is a misuse of the Declaratory Judgment Act.  *See, e.g. Am. Home Assurance Co. v. Insular Underwriters Corp.*, 494 F.2d 317, 320 (1st Cir. 1974) ("Nor should declaratory relief be used as a means to winning the res judicata race"); *Ponchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (A "'race to the courthouse' represent[s] a misuse of the Declaratory Judgment Act that attempted to preempt the proper plaintiff's forum choice.").

As to the named MGC Commissioners specifically, this Court has significant discretion to dismiss under *Wilton/Brillhart* because nothing in Robinhood's filings allege any MGC regulation of Robinhood or any MGC action against it.  *See* Compl., ECF. No. 1, at ¶¶ 1, 5, 7, 21–24.  The declaratory relief sought would thus operate as an abstract advisory pronouncement

about the Commonwealth's regulatory architecture, rather than resolve any concrete controversy with the MGC itself.

### C. Even Were this Case Actionable, The Court Should Abstain under *Younger*, which Favors Dismissal.

Under the *Younger* doctrine, federal intervention is unwarranted where a state agency is actively prosecuting alleged violations of public law in a proceeding with investigative and sanctioning hallmarks of a quasi-criminal case. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–78 (2013). *Younger* abstention applies to three narrow categories of state court proceedings. Of most importance here is when a case involves a state civil enforcement proceeding. *See, e.g., Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015); *Sprint*, 571 U.S. at 72–78. When a case fits one of the *Younger* categories, a court asks whether the *Middlesex* comity factors are met—(i) an ongoing state proceeding, (ii) implicating important state interests, and (iii) offering an adequate opportunity to raise federal defenses—and whether any recognized exception (bad faith, harassment, flagrant unconstitutional statute) applies. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The First Circuit has expressly held that administrative and civil enforcement actions brought by state agencies to vindicate public norms are the kind of "quasi-criminal" proceedings that trigger *Younger*. *Sirva*, 794 F.3d at 200–05.

The Commonwealth's action against Kalshi is a paradigmatic civil-enforcement proceeding brought by the sovereign to halt alleged violations of Massachusetts's gaming and consumer protection laws—a core police-power function within *Younger's* "quasi-criminal" enforcement category. *Id.*, at 200–05. Robinhood's federal complaint is derivative of that enforcement: by its own telling, Robinhood is a facilitator that merely lists Kalshi-originated contracts, and it seeks declarations that would insulate that listing from the same state-law predicates the Commonwealth is actively litigating against Kalshi. Granting declaratory or

injunctive relief here would, in practical effect, declare unlawful or enjoin the legal foundation of the state enforcement, the very interference *Younger* forbids.

The First Circuit's decision in *Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 49 (1st Cir. 2012) provides an instructive distinguishment.  In that case, the First Circuit reversed a *Younger* dismissal where (1) there was no pending, state-initiated enforcement action by the Attorney General—the only proceedings were private civil suits among private parties; and (2) the requested federal declaratory and injunctive relief would not interfere with those private actions (any persuasive effect of a federal ruling would not "interfere" with the state proceedings in the *Younger* sense).  *Id*. at 42–49.

This case is the opposite.  Here, Robinhood's claims and alleged harms are derivative of Kalshi's ability to list and execute the very contracts at issue; Robinhood intermediates access and routes orders for execution on Kalshi's exchange.  *See* Compl., ECF No. 1, ¶¶ 5–6, 37, 57, 63.  Furthermore, in this case the Commonwealth *has* filed and is pursuing a civil-enforcement action against Kalshi in court to enforce Chapter 23N, and Robinhood's role as Kalshi's facilitator makes the two sufficiently aligned to be treated the as the same person for abstention purposes.  *See Hicks v. Miranda*, 42 U.S. 332, 348–50 (1975) (finding business whose two employees were prosecuted in state court had a "substantial stake in the state court proceedings" for *Younger* purposes).

All *Middlesex* factors are satisfied.  The enforcement proceeding is ongoing (subject to remand); the Commonwealth's interests in regulating gambling-adjacent markets, consumer protection, and the integrity of its licensing regime are weighty; and the state forum affords a full and fair opportunity to present legal defenses—including any federal preemption theory—subject to state appellate review.  *See Sirva*,794 F.3d at 205–08 (rejecting a freestanding "preemption

exception" to *Younger*). No exception to *Younger* is alleged or plausible. The proper course is to dismiss Robinhood's tangential equitable claims to avoid trenching the Commonwealth's ongoing Kalshi enforcement action.

### D. Colorado River Provides an Additional, Independent Basis for Dismissal.

Abstention is also supported by *Colorado River*, which provides that federal courts can and should stay or dismiss proceedings that are "parallel" to a pending state action and present substantially the same issues, such that the state case will be an adequate vehicle for the complete and prompt resolution of those issues. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–20 (1976); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16–28 (1983). The First Circuit considers familiar, non-mechanical factors, including, *inter alia*: (1) the risk of piecemeal litigation; (2) the order in which the forums assumed jurisdiction and their relative progress; (3) whether state law predominates; (4) the adequacy of the state forum; (5) the convenience of the forums; and (6) any reactive or forum-shopping indicia. *See Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27–30 (1st Cir. 2010); *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 10–11 (1st Cir. 2003). Critically, exact identity of the parties is not required; inquiring whether the proceedings are "parallel in substance" and whether the state case is an adequate vehicle for the complete and prompt resolution of the issues animating the federal suit. *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 115–16 (1st Cir. 2012); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 12–13 (1st Cir. 1990).

The threshold parallelism requirement is met. Robinhood's federal complaint is expressly derivative of the Kalshi enforcement and turns on the same dispositive state-law questions—how the Kalshi-originated contracts are classified under Massachusetts law and whether their listing is unlawful. Robinhood's interest, by its own description, is its facilitation

of Kalshi's contracts.  Compl., ECF No. 1, ¶¶ 1, 7, 22.  It seeks declarations that ride entirely on the fate of those contracts in the state case.  A state-court ruling on those questions will resolve or moot the requested federal declarations and injunction.

Collectively, the relevant *Colorado River* factors counsel abstention.  Proceeding in both courts creates a serious risk of piecemeal and conflicting rulings on the legality of the same (Kalshi) product and the scope of the Commonwealth's regulatory authority, the paradigmatic hazard the *Colorado River* doctrine is designed to avert.  *See KPS*, 318 F.3d at 10–11; *Jimenez*, 597 F.3d at 29–30.  The state enforcement was filed first and is the Commonwealth's chosen vehicle for vindicating sovereign regulatory interests.  Respect for the first-filed enforcement, and the relative progress of that matter, weigh in favor of abstention.  *Jimenez*, 597 F.3d at 27– 30.  Moreover, state law questions are considerable.  The dispositive issues—classification and legality of the contracts under Massachusetts statues and regulations—are questions of state law at the heart of the Commonwealth's regulatory scheme.  *Villa Marina*, 915 F.2d at 15 (state-law predominance is a meaningful factor when combined with others). Further, the state forum is fully adequate to decide the controlling legal questions, a decision which will necessarily resolve the legality of the Kalshi contracts Robinhood facilitates.  *Nazario-Lugo*, 670 F.3d at 115–16 (focus on adequacy of state vehicle).

While the fifth *Colorado River* factor, convenience of the forum, is neutral because either is convenient; the sixth factor—reactive litigation or forum shopping—favors abstention. Robinhood's suit is a reactive attempt to obtain a preemptive federal ruling on issues already (and better) addressed in the Commonwealth's Kalshi enforcement action.  The First Circuit recognizes that such reactive filings (especially those to evade the state forum) count against retaining federal jurisdiction.  *See Villa Marina*, 947 F.2d at 534 (affirming abstention where the

19

decision to switch to federal court stemmed from the plaintiff's unsuccessful efforts to obtain a preliminary injunction in the [Puerto Rico] court and holding the district court "legitimately counted the motivation factor against retaining jurisdiction").  Applied here, Robinhood's federal complaint is derivative and reactive: it seeks a federal declaration about Kalshi-originated contracts that are already the subject of the Commonwealth's state enforcement.  That is precisely the sort of tactical, forum-shifting maneuver *Villa Marina* treats as a weighty factor militating in favor of *Colorado River* abstention.

### E.    At a Minimum, an Equitable Stay is Appropriate

Even if the Court declines to dismiss or to abstain from adjudicating Robinhood's declaratory judgment claim, it should exercise its inherent authority to stay proceedings briefly to preserve its resources and those of the parties while the Kalshi litigation resolves preliminary issues.  A court has broad discretion to stay proceedings as incident "to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also Microfinancial, Inc. v. Premier Holidays Intern., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (stay decisions discretionary).  A stay prevents duplication and inconsistent rulings while conserving resources. *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995); *Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 382–83 (1st Cir. 1982); *Tauton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977).

Decisions in this Court confirm that stays are appropriate where a related matter will streamline or resolve overlapping issues.  For example, in *Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, Chief Judge Saylor granted a stay to avoid duplicative litigation between a private action and a government enforcement case arising from the same nucleus of

facts.  633 F.Supp 3d 385, 392–93 (D. Mass. 2022) (order granting stay entered Sept. 27, 2022).

In *United States ex rel. Witkin v. Medtronic, Inc.*, Judge Talwani granted a stay, quoting

*Microfinancial*'s statement that it is "apodictic" federal courts may stay proceedings and finding

a short stay would conserve party and judicial resources.  2025 WL 928777, at *2 (D. Mass. Mar.

27, 2025) (granting motion to stay).  Targeted, efficiency-promoting stays are not uncommon in

this District.  *See, e.g., New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35, 37

(D. Mass. 2015) (staying to avoid a "headlong race" with a parallel agency matter).

      At minimum here, a *Landis* stay is warranted.  Robinhood's suit is derivative of, and

turns on, the same predicate questions the Commonwealth is litigating against Kalshi.  Forcing

the Commonwealth and this Court to litigate a second matter here—while an imminent remand

decision in Kalshi will determine the proper forum and may streamline or moot overlapping

issues—creates a clear case of hardship.  *Hewlett-Packard* and *Acton* endorse a stay precisely to

forestall the risk of duplication and inconsistent rulings with overlapping cases such as these.

      The equities also favor a stay.  First, the Commonwealth has already provided a non-

enforcement stipulation, so there is no immediate enforcement risk to Robinhood.  Second, the

Kalshi enforcement action is positioned to adjudicate the threshold predicate more efficiently, as

in *Blue Cross*, where a time- and resource-saving stay was granted to permit the more

dispositive, earlier-filed proceeding to run its course.  Third, the requested stay is short and

tethered to concrete milestones in the Kalshi litigation.  A limited stay through resolution of the

Kalshi remand motion—and, if remanded, through the initial scheduling of preliminary

injunction proceedings there—will avoid unnecessary duplication and the possibility of

conflicting orders without depriving Robinhood of meaningful relief.  *See, e.g., Providence J.*

*Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1979) (balance of hardships favored

issuing a stay because the failure to grant it would entirely destroy the defendants' and intervenor's right to a meaningful review, while the harm to the plaintiff was limited to a delay in disclosure).

## OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Should the court proceed in this matter, Robinhood's request for a preliminary injunction should be denied as Robinhood cannot make the requisite showing to warrant such extraordinary relief and has no prospect of success on the merits.

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, Robinhood "must make a clear showing that '[it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.'" *Env't Def. Fund, Inc. v. Wright*, No. CV 25-12249-WGY, 2025 WL 2663068, at *1 (D. Mass. Sept. 17, 2025) (quoting *Starbucks Corp.*, 602 U.S. at 346); *see also Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) ("Importantly, the movant bears the burden of showing that these factors weigh in [its] favor"). Where the party opposing injunctive relief is a government entity, the potential hardship and the public interest considerations merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). "If the movant 'cannot demonstrate that he is likely to succeed . . . the remaining factors become matters of idle curiosity.'" *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020) (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)).

## I.     ROBINHOOD IS UNLIKELY TO SUCCEED ON THE MERITS.

"With respect to the first element, 'the district court is required only to make an estimation of likelihood of success and need not predict the eventual outcome on the merits with

absolute assurance.'" *Harris as next friend of RNH v. Adams*, 757 F. Supp. 3d 111, 128 (D.

Mass. 2024) (quoting *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013)). "This

element is of 'primary importance' and the 'sine qua non for obtaining a preliminary

injunction.'" *Harris as next friend of RNH*, 757 F. Supp. 3d at 128 (quoting *Baptiste v.

Kennealy*, 490 F. Supp. 3d 353, 380 (D. Mass. 2020)); *see Ryan*, 974 F.3d at 18 ("The movant's

likelihood of success on the merits weighs most heavily in the preliminary injunction calculus.").

Robinhood will not succeed on the merits because its preemption claim fails in two,

fundamental respects. First, Robinhood is incorrect, as a matter of law, that the Commodities

Exchange Act ("CEA"), as amended in 2010, legalized sports gaming nationwide. Second,

Robinhood cannot meet its burden to establish preemption, because the CEA does not clearly and

palpably displace longstanding state police power over sports gambling. Robinhood's smoke-

and-mirrors arguments otherwise fail upon inspection, as two federal district courts have recently

held. *See KalshiEX LLC v. Martin*, No. 25-cv-1283-ABA, 2025 WL 2194908 (D. Md. Aug. 1,

2025) (denying Kalshi's motion for preliminary injunction).[5] Ultimately, Robinhood's argument

ignores that Congress "does not alter the fundamental details of a regulatory scheme in vague

terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."

*Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

---

[5] The second court is the District of Nevada in *North American Derivatives Exchange Inc. d/b/a Crypto.com v. Hendrick*, No. 2:25-cv-00978-APG-DJA (D. Nev.). After a lengthy oral argument, that Court denied Crypto.com's motion for a preliminary injunction, with a written order to follow. Notably, the judge in that matter was the same judge who had previously granted preliminary relief to Kalshi in a related case, but who expressed that further analysis had changed the court's mind on preemption. *See KalshiEX LLC v. Hendrick*, No. 25-cv-575, 2025 WL 1073495 (D. Nev. Apr. 9, 2025). The Court has not issued the order as of the time of filing this brief. Accordingly, the Commonwealth will file a supplemental authority with the order upon its distribution.

A.    **Federal Law Continues to Bar Interstate Sports Wagering, Irrespective of the CEA.**

In Robinhood and Kalshi's telling, unbeknownst to everyone, Congress authorized sports wagering on CFTC-registered exchanges in the 2010 Dodd-Frank Act.[6]  The assertion relies on a breathtakingly overbroad construction of the CEA.  Either Robinhood is wrong, or 38 states and the Supreme Court itself have missed entirely a sea change in the law.  In 2010, when Congress was considering the Dodd-Frank Act, sports gaming had been illegal in 47 states for the previous 18 years due to the Professional Amateur Sports Protection Act of 1992 ("PASPA"),[7] *see* 28 U.S.C. § 3701 *et seq.*; the use of the internet to wager on sports was barred by the Wire Act (as it still is to this day), *see* 18 U.S.C. § 1084; and just four years earlier, Congress had adopted the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA") to stem illicit gambling payments on wagers, like sports wagers, barred by state law.  31 U.S.C. § 5363.  Not one word in the text of the 2010 Dodd-Frank amendments altered the federal landscape of sports wagering.[8]

Instead, numerous federal laws, dating back decades, codify the national understanding that "States should have the primary responsibility for determining what forms of gambling may

---

[6] Though Robinhood and Kalshi shy away from acknowledging the consequence of this argument, it is worth recognizing it expressly:  if sports wagers are "swaps," as they claim, the *only* place sports wagers may be made is on CFTC-regulated exchanges, such that the existing sports gaming economy now in place in dozens of states would violate federal law.  *See* 7 U.S.C. §§ 2(e), 6(a)(1).

[7] In fact, PASPA remained in effect until 2018 when it was ultimately overturned in *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018), which opened the floodgates to the legalization of sports wagering across the country.

[8] Indeed, since then, the Department of Justice has issued multiple opinions affirming that the Wire Act bars interstate sports wagering.  *See Whether the Wire Act Applies to Non-Sports Gambling*, 35 Op. O.L.C. 134 (Sept. 20, 2011), https://www.justice.gov/olc/file/2011-09-20-wire-act-non-sports-gambling/dl, *superseded by*, *Reconsidering Whether the Wire Act Applies to Non-Sports Gambling*, 42 Op. O.L.C. 158, 159 (Nov. 2, 2018), https://www.justice.gov/olc/file/1121531/dl (finding that "the 2006 enactment of UIGEA did not alter the scope of the Wire Act").

legally take place within their borders."  15 U.S.C. § 3001 (a) (Interstate Horseracing Act of 1978); *see* 18 U.S.C. § 1084(a) (criminalizing interstate transmission of wagers on sporting events under the Federal Wire Act).  Congress did not sweep all of that aside, without comment or fanfare, in its quest to bring oversight to formerly opaque derivative markets when it amended Dodd-Frank in 2010.  *See Martin*, 2025 WL 2194908, at *10 ("Therefore, when Congress enacted and amended the CEA, it was highly unlikely to have intended to override state laws . . .because at those times it was already largely illegal federally to engage in sports gambling (under the Wire Act in 1974 or PASPA in 2010)").  Robinhood argues that these laws were impliedly repealed when, under its narrative, Congress expanded the CEA to include swaps in 2010.  But this Court does not imply repeal of a federal law, let alone multiple federal laws.[9] "The Supreme Court has made clear there is a 'strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute.'"  *Martin*, 2025 WL 2194908, at *10 (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)).  This is particularly true where federal law would significantly alter the balance of state and national authority in subject matter.  *E.g.*, *Bond v. United States*, 572 U.S. 844, 858 (2014).

The CFTC's own regulations reflect this reality.  17 C.F.R. § 40.11(a)(1) (prohibiting registered entities from offering products involving or relating to, in pertinent part, "gaming") .  In promulgating the regulation, the CFTC explained that "its prohibition of certain 'gaming' contracts is consistent with Congress's intent to 'prevent gambling through the futures markets' and to 'protect the public interest from gaming and other events contracts.'"  Provisions

---

[9] At minimum, Robinhood's proposed statutory interpretation implies at least a partial repeal of the Wire Act, as well as the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq. Martin*, 2025 WL 2194908, at *10.

Common to Registered Entities, 76 Fed. Reg. 44776, 44786 & n. 35 (July 27, 2011) ("[T]he Commission 'needs the power to, and should, prevent derivative contracts that are contrary to the public interest because they exist predominantly to enable gambling through supposed event contracts.").

### B. The CEA's Express Preemption Provisions Indicate that State Gaming Law is Not Preempted.

Even were Robinhood to prevail on its incredible claim that 2010 amendments to the CEA allowed sports wagering on CFTC-registered exchanges, that would not be enough; Robinhood would next need to establish that the CEA also preempts all state regulation of sports wagering. In its papers, Robinhood presses both express preemption and implied preemption arguments. Both fail for reasons addressed in turn.

In addressing a claim of express preemption, "the starting point for [the Court's] analysis is the 'language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 92 (1st Cir. 2013) (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57 (1990)). As part of this analysis, the Court must consider "the preemption clause's statutory context and the statute's overall purpose." *Nw. Selecta, Inc. v. Gonzalez-Beiro*, 145 F.4th 9, 15 (1st Cir. 2025) (citing *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 96 (2017)). Language that purportedly preempts state law is to be interpreted narrowly, especially where, as here, federal legislation touches an area traditionally governed by the States. *CTS Corp. v. Waldburger*, 573 U.S. 1, 19 (2014). Accordingly, ambiguity must be construed to "disfavor preemption." *Altria Grp. v. Good*, 555 U.S. 70, 77 (2008).

Congress knows well how to expressly preempt state law and has so demonstrated *in the CEA* itself. For example, 7 U.S.C. § 16(e)(2) adopts expressly preemptive language—"this

chapter shall supersede and preempt the application of any State or local law that prohibits or regulates" certain transactions not applicable here. Congress's decision to expressly preempt state laws in one area indicates "that matters beyond that reach [like sports wagering] are not preempted." *Martin*, 2025 WL 2194908, at *9 (citing *Cipollone v. Liggett Grp., Inc.*, 50 U.S. 504, 517 (1992); *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995)).

So, Robinhood's express preemption argument relies not on the CEA's avowedly preemptive provisions, but instead on a phrase defining the CFTC's jurisdiction in 7 U.S.C. § 2(a)(1)(A). That provision defines the CFTC's jurisdiction as "exclusive" over certain financial products because, absent that exclusivity, other federal regulatory agencies (like the CFTC) would have overlapping oversight. *See, e.g., Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 548 (7th Cir. 1989). But this language does not reference, let alone displace, state law concerning sports wagering; it serves instead to define CFTC's jurisdiction as compared to peer federal agencies. *See, e.g., FTC v. Ken Roberts Co.*, 276 F.3d 583, 591 (D.C. Cir. 2001) (discussing § 2(a)(1)(A) to determine CFTC jurisdiction as compared to FTC jurisdiction); *see also Martin*, 2025 WL 2194908, at *7 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 386–87 (1982)) ("As the Supreme Court has explained, the exclusive-jurisdiction provision was intended to "consolidate federal regulation of commodity futures trading in the Commission" and to "separate the functions of the [CFTC] from those of the [SEC] and other regulatory agencies."). In fact, the CEA expressly recognizes existing state jurisdiction: "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." 7 U.S.C. § 2 (a)(1)(A). And, though this provision is remarkably omitted from Robinhood's briefing, the CEA expressly recognizes state enforcement authority, empowering state attorneys general to bring suit to enforce the CEA; this plain

27

language deflates entirely any contention that the CFTC has sole enforcement authority.  7 U.S.C. § 13a-2(1).[10]

Moreover, quite apart from displacing state law, the CEA instead expressly envisions that state law will impact what type of swaps may be listed on registered exchanges.  CFTC regulations prohibit the listing on a market of contracts that "involve[], relate[] to, or reference[] . . . gaming, or an activity that is unlawful under any State or Federal law," 17 C.F.R. § 40.11(a)(1), and these regulations were adopted as part of the implementation of Dodd-Frank. *See* 7 U.S.C. § 7a-2(5)(C)(i)(V).  As the Maryland federal court concluded, where, as here, "'a federal statute expressly incorporates state law,' a 'preemption analysis is inappropriate.'" *Martin*, 2025 WL 2194908, at *9 (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 864 (4th Cir. 1994)).

Robinhood's express preemption argument relies on references to *other statutes* in cases decided by other circuits that are wholly inapplicable here.  For example, whereas the use of the term "exclusive jurisdiction" may be preemptive when read in the context of a detailed federal statutory scheme on a topic of longstanding federal concern (interstate railroad commerce), a Ninth Circuit decision to that effect sheds no light on the plain text of the CEA here.  Besides, much of that decision actually rejects Robinhood's argument.  *See, e.g.*, *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 766 (9th Cir. 2018) ("Congress knew that § 5125(f)(1) provided protection from preemption by federal law . . . . That is, Congress knew that

---

[10] Contrary to Robinhood's assertion, the inclusion of "except as hereinabove provided" immediately prior to this provision is not further independent evidence that Congress intended to preempt state law.  *See* Memorandum of Points & Authorities in Support of Plaintiff Robinhood's Motion for a Preliminary Injunction, ECF No. 11 at 10 n.5 ("Robinhood Memo").  "A savings clause generally 'negates the inference that Congress left no room for state causes of action.'" *Martin*, 2025 WL 2194908, at *20 (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987)).

§ 5125(f)(1) permitted States to impose fees related to the transportation of hazardous materials by rail, and to do so despite the FRSA.  If Congress intended in the ICCTA to reverse course and no longer to permit States to impose such fees, one would expect Congress to have said so. But Congress said nothing.").

### C.    Congress Has Not Impliedly Preempted State Regulation of Sports Wagering.

Robinhood further suggests that the CEA impliedly preempts state sports wagering law, either because the CEA purportedly "covers the field" or otherwise conflicts with the purpose of federal law.  Because state law is presumed to remain intact, and Robinhood points to no detailed scheme of federal sports wagering regulation,[11] Robinhood fails to demonstrate implied preemption, either field or conflict.

#### 1.    There is No Field Preemption and Robinhood Fails to Overcome the Presumption Against Preemption.

The Court may infer congressional intent to preempt a field only "from [1] a framework of regulation 'so pervasive ... that'" it leaves "'no room for the States to supplement it' or [2] where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"  *Capron v. Off. of Att'y Gen. of Mass.*, 944 F.3d 9, 21-22 (1st Cir. 2019) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)..

On this issue, Robinhood faces a strong presumption against preemption that it cannot overco; me.  To establish "field preemption," Robinhood must first describe with particularity the "field" from which Congress purportedly intended to exclude the states.  *E.g., Kansas v. Garcia*, 589 U.S. 191, 208 (2020).  "Field preemption is a high standard, and the presumption against

---

[11] Of course, there is no such scheme.  In 2018, the Supreme Court expressly recognized the federal policy of leaving sports wagering regulation up to the states.  *Murphy*, 584 U.S. at 484 (recognizing the "coherent federal policy" of "respect[ing] the policy choices of the people of each State on the controversial issue of [sports] gambling.").

federal preemption is especially strong 'when Congress has legislated in a field traditionally occupied by the States.'" *Martin*, 2025 WL 2194908, at *11 (quoting *Altria Grp. v. Good*, 555 U.S. 70, 77 (2008)). Specifically, in "all preemption cases, and particularly those in which Congress has 'legislated … in a field in which States have traditionally occupied,' … we 'start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 567 (2009); *Mass. Ass'n of Priv. Career Schs. v. Healey*, 159 F. Supp. 3d 173, 217 (D. Mass. 2016) (same). The question is not whether the "the federal statute can be framed as pertaining to an area of existing federal regulation, but rather whether the state law [claimed to be preempted] governs conduct that has historically been subject to state regulation." *Martin,* 2025 WL 2194908 at *11. The presumption applies with particular force here because the regulation of gambling has long been a core state police power. *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a state"); *Abdow v. Att'y Gen.*, 468 Mass. 478, 489 (2014) (citing *Stone v. Mississippi*, 101 U.S. 814, 821 (1879)).

"[T]o define the field," the Supreme Court has instructed courts to "proceed cautiously" and "consider[] the *target* at which the state law *aims*." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 385 (2015) (emphasis in original). Here, of course, the Commonwealth's target is sports wagering, and in that field, Congress has evinced an intent to *preserve* rather than preclude state authority. *See, e.g.*, 15 U.S.C. § 3001 (a) ("States should have the primary responsibility for determining what forms of gambling may legally take place within their borders"); *see Capron*, 944 F.3d at 23 (where "state law measures . . . concern[] a quintessentially local area of regulation," inference is against Congressional intent to occupy the field). Indeed, Robinhood

has identified no federal regulation of sports wagering, because none exists. This is hardly a scheme that is so pervasive "that it leaves no room for state and local supplementation." *LCM Enters, Inc. v. Town of Dartmouth*, 14 F.3d 675, 684 (1st Cir. 1994); *see Martin*, 2025 WL 2194908 at *9.

### 2.    Robinhood Further Fails to Establish Conflict Preemption.

Robinhood's assertion of implied conflict preemption is weaker still. To demonstrate an implied conflict, Robinhood must show that Massachusetts gaming law clearly and manifestly poses an obstacle "to the accomplishment and execution of the full purposes and objectives" of federal law. *Capron*, 944 F.3d at 36. But federal law bars forms of interstate sports wagering. *See supra* I.A. Even the CEA anticipates that regulated exchanges will not be used to offer contracts that constitute gaming or violate state law, 7 U.S.C. § 7a-2(c)(5)(C)(I), (V), (VI), and the CFTC has prohibited such contracts by regulation. 17 C.F.R. § 40.11(a)(1). This is in accord with numerous other federal statutes, including the Wire Act (which prohibits interstate sports wagers over the internet), and the UIGEA (which prohibits facilitating payments due from such wagers).

Accordingly, that Massachusetts law prohibits Kalshi from offering sports wagers without licensure is entirely consistent with the federal structure. In actuality, Robinhood's argument is that because the CFTC has chosen not to enforce against the sports wagering occurring on its exchange, Massachusetts must stand aside, too,[12] and let its illegal conduct continue. But "[i]n the end, . . . the possibility that federal enforcement priorities might be upset is not enough to

---

[12] Robinhood's reliance on the agency's inaction on sports-related event contracts to support their legality, *see* Robinhood Memo, at 16, is undermined by the CFTC's recent issuance of an advisory that clarifies that it has yet to take a stance on whether it can regulate sports-related event contracts. *See* CFTC Letter No. 25-36 (Sept. 30, 2025), https://www.cftc.gov/csl/25-36/download.

provide a basis for preemption.  The Supremacy Clause gives priority to 'the Laws of the United States,' not the . . . law enforcement priorities or preferences of federal officers." *Kansas*, 589 U.S. at 212.

## II. ROBINHOOD WILL NOT SUFFER IRREPERABLE HARM ABSENT A PRELIMINARY INJUNCTION.

Irreparable harm is measured "on 'a sliding scale, working in conjunction with a moving party's likelihood of success on the merits', . . . such that '[t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Braintree Labs., Inc. v. Citigroup Glob. Mkts., Inc.*, 622 F.3d 36, 42–43 (1st Cir. 2010) (quoting *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009)); *Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness of Mass.,* 649 F.2d 71, 75 (1st Cir. 1981). "'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Harris as next friend of RNH v. Adams*, 757 F. Supp. 3d 111, 129 (D. Mass. 2024) (quoting *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005)).  An irreparable harm finding "must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Harris,* 757 F. Supp. 3d at 129 (quoting *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 381 (D. Mass. 2020)).

Robinhood's bases for "irreparable harm" do not go beyond mere conjecture to warrant issuance of a preliminary injunction because Robinhood relies on an uncertain chain of contingent events to establish impending harm, namely the fear of an enforcement action against itself in light of the Commonwealth's action against Kalshi, *see* Compl. ¶ 5; *see also supra* Motion to Dismiss Argument Parts I-II (showing lack of credible threat of imminent

enforcement).  As such, Robinhood fails to establish more than "a possibility of irreparable harm," which is "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (*per curiam*)).

Even were Robinhood's claims of pending enforcement credible, a risk of future injury associated with such an enforcement action is not irreparable harm that entitles it to a preliminary injunction.  The risks and costs of litigation are "'part of the social burden of living under government," even when the "burden of defending [a] proceeding" is "substantial." *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see also 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118*,* 123 (D.D.C. 2017).

## III.    THE EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR THE COMMONWEALTH.

"The final consideration in weighing the grant of a preliminary injunction is 'the effect of the court's action on the public interest.'" *Harris as next friend of RNH*, 757 F. Supp. 3d at 144 (quoting *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1st Cir. 2003)).  This element focuses on "the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does." *Santiago v. Municipality of Utuado*, 114 F.4th 25, 34 (1st Cir. 2024) (quoting ).  "The crux of the balance of equities inquiry is whether 'the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Grant v. Trial Ct.*, 784 F. Supp. 3d 475, 490 (D. Mass. 2025) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.* 640 F.2d 109, 113 (8th Cir. 1981)).

Here, the public interest favors the Commonwealth's enforcement of its sports wagering law; not Robinhood's attempt to use a specious preemption argument to forestall that

enforcement.  Mitigating the negative externalities of gambling "historically has been recognized as a matter that falls squarely within the [Commonwealth's] core police power."  *See Abdow v. Att'y Gen.*, 468 Mass. 478, 488–89 (2014); *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905).  "Gambling has been recognized as a potentially harmful 'vice activity,' such that states have a recognized interest in reducing 'the social costs associated with' it."  *Martin*, 2025 WL 2194908, at *6 (quoting *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 185 (1999)); *see also Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 at 458–59 (2018) (describing history of state gambling laws).  Gambling legalization "does not remove all of the many perils, pitfalls, temptations and traps for the unwary, nor the occasions for corruption for the participants, all of which are inherent in any gambling operation of such proportions."  *Colella v. State Racing Comm'n*, 360 Mass. 152, 159 (1971).  To address those "perils, pitfalls, temptations and traps," the Massachusetts Legislature has determined that the public interest requires comprehensive legal protections, including the "strict oversight of all gaming establishments"; a mandate that all licensed operators are "responsib[le for] identif[ying], address[ing] and minimiz[ing] any potential negative consequences of their business operations"; the exclusion of young people under the age of 21 from sports wagering; and protections meant to ensure the integrity of the sporting events wagered upon and the health and safety of the athletes who participate in them. *See, e.g.,* G.L. c. 23K, § 1 (1), (8); G.L. c. 23N, § 4. Accordingly, enjoining the Commonwealth from enforcing its own sports wagering laws would certainly harm the public interest, and Robinhood's request for a preliminary injunction should be denied.

**CONCLUSION**

The Court should dismiss the complaint without prejudice under Rule 12(b)(1) for lack of Article III standing and ripeness.  In the alternative, the Court should dismiss or decline jurisdiction over the declaratory judgment claim, or enter a short, tailored stay of proceeding to conserve resources and avoid inconsistent rulings while the Commonwealth's Kalshi enforcement case proceeds.  If the Court neither dismisses nor stays this matter, the Court should deny Robinhood's request for a preliminary injunction whereby Robinhood has failed to show a likelihood of success on the merits or irreparable harm in the absence of preliminary relief, that the balance of equities favors Robinhood, or that the injunctive relief sought is in the public interest.

Respectfully submitted,

ANDREA JOY CAMPBELL
MASSACHUSETTS ATTORNEY
GENERAL

COMMISSIONER JORDAN MAYNARD
COMMISSIONER EILEEN O'BRIEN
COMMISSIONER BRADFORD R. HILL
COMMISSIONER NAKISHA SKINNER
COMMISSIONER PAUL BRODEUR
MASSACHUSETTS GAMING
COMMISSION

Dated: October 9, 2025                    By:   /s/ Joshua Edlin
                                          Alda Chan, BBO # 705204
                                          Louisa E. Castrucci, BBO # 692208
                                          Joshua Edlin, BBO # 715110
                                          Jared Rinehimer, BBO # 684701
                                          M. Patrick Moore, BBO # 670323
                                          Assistant Attorneys General
                                          One Ashburton Place
                                          Boston, Massachusetts 02108

                                          617-963-2525 / alda.chan@mass.gov
                                          617-963-2848 / louisa.castrucci@mass.gov
                                          617-963-2905 / joshua.edlin@mass.gov
                                          617-963-2594 / jared.rinehimer@mass.gov
                                          617-963-7491 / pat.moore@mass.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system on October 9, 2025, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Joshua Edlin*

Joshua Edlin