THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBINHOOD DERIVATIVES, LLC<br><br>        *Plaintiff*,<br><br>v.<br><br>ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, et al.,<br><br><br>        *Defendants*. | Civil Action No. 1:25-cv-12578-RGS |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ROBINHOOD'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND..............................................................................................2

OPPOSITION TO MOTION TO DISMISS.......................................................................3

I.     ROBINHOOD HAS DEMONSTRATED ARTICLE III STANDING..............................3

     A.     Robinhood Has a Credible Threat of Imminent Enforcement Against It. ...............3

     B.     The Commonwealth's Non-Enforcement Stipulation Does Not Eliminate the Imminence of Robinhood's Injury...................................................................7

II.     ROBINHOOD'S CLAIM IS RIPE.........................................................................9

III.     THE COURT HAS JURISDICTION TO ADJUDICATE ROBINHOOD'S CLAIM. ....11

IV.     THE COURT SHOULD NOT ABSTAIN FROM ADJUDICATING ROBINHOOD'S CLAIM OR OTHERWISE DISMISS OR STAY THE CASE............13

     A.     *Wilton/Brillhart* Is Inapplicable. ...........................................................................13

     B.     The Court Should Not Abstain Under *Younger.* ....................................................15

     C.     The Court Should Not Abstain Under *Colorado River.* .........................................16

     D.     An Equitable Stay Under *Landis* Is Inappropriate.................................................17

PRELIMINARY INJUNCTION ARGUMENT..................................................................20

I.     ROBINHOOD IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM............20

     A.     Futures and Derivatives Trading on DCMs is the Only Relevant Field of Regulation to the Court's Preemption Analysis.....................................................20

     B.     The CEA Preempts Gambling Law as Applied to DCM Trading. ........................22

     C.     Applying Massachusetts Laws to Transactions on DCMs Conflicts with the Special Rule. ...................................................................................................24

     D.     Interstate Sports-Gambling Laws Are Irrelevant to Robinhood's Claims.............26

II.     ROBINHOOD WILL BE IRREPARABLY HARMED IF DEFENDANTS ARE PERMITTED TO ENFORCE PREEMPTED STATE GAMBLING LAWS..................28

III.     DEFENDANTS AND THE PUBLIC HAVE NO INTEREST IN THE ENFORCEMENT OF PREEMPTED STATE LAWS....................................................30

CONCLUSION ................................................................................................................30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118 (D.D.C. 2017) ........................................................................................................................29

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967).......................................................................11

*Acton Corp. v. Borden, Inc.*, 670 F.2d 377 (1st Cir. 1982).......................................................20

*AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586 (D. Md. 2007) ..........................23

*Alden v. Maine*, 527 U.S. 706 (1999) ......................................................................................29

*Arizona v. United States*, 567 U.S. 387 (2012).........................................................................21

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015).......................................11, 12

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979)..........................................................................8

*Bankart v. Ho*, 60 F. Supp. 3d 242 (D. Mass. 2014).................................................................16

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385 (D. Mass. 2022)...........................................................................................................19

*Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014) .......................................................................7, 11

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 48 U.S. 141 (1989) ......................................21

*Bos. & Me. Corp. v. Town of Ayer*, 330 F.3d 12 (1st Cir. 2004) ...............................................13

*Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001) ...................................................12, 14

*Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942)..................................13

*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) ..........................................................................7

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)..................................................24

*Canna Provisions, Inc. v. Garland*, 738 F. Supp. 3d 111 (D. Mass. 2024)..................................6

*Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9 (1st Cir. 2019)................................25

*City of Fall River, Mass. v. FERC*, 507 F.3d 1 (1st Cir. 2007)....................................................10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .....................................................................6

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................................................6

*CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618 (1st Cir. 1995) .......................30

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)...................................................................................................14, 16, 17

*Colonial Penn Grp., Inc. v. Colonial Deposit Co.*, 834 F.2d 229
    (1st Cir. 1987)............................................................................................................................12

*Commonwealth of Massachusetts v. KalshiEx LLC*, No. 1:25-cv-12595
    (D. Mass.)....................................................................................................................................2

*Commonwealth of Massachusetts v. KalshiEx LLC*, No. 2584-CV-02525
    (Mass. Super. Ct.) ......................................................................................................................2

*Commonwealth of Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115 (2016) ..............23

*Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012)............................................3

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) .....................................................26

*DGM Invs., Inc. v. New York Futures Exch., Inc.*, No. 01 Civ. 11602 (RWS), 2002
    WL 31356362 (S.D.N.Y. Oct. 17, 2002)................................................................................25

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ...........................................................................15

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018)............................................................................28

*Ex parte Young*, 209 U.S. 123 (1908)................................................................................. passim

*Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995)......................................................................24

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) ...............................................................29

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) .....................................................25

*Hewlett-Packard Co. v. Berg*, 61 F.3d 101 (1st Cir. 1995) ..........................................................20

*Hicks v. Miranda*, 422 U.S. 332 (1975)........................................................................................16

*Hines v. Davidowitz*, 312 U.S. 52 (1941) .....................................................................................21

*Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*, 133 F.3d 1087 (8th Cir. 1998) .....................27

*Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010)...........................................................17

*KalshiEx LLC v. Flaherty*, No. 25-CV-02152-ESK-MJS, 2025 WL 1218313 (D.N.J.
    Apr. 28, 2025)...............................................................................................................20, 22, 23

*KalshiEx, LLC v. Hendrick*, No. 2:25-CV-00575-APG-BNW, 2025
    WL 1073495 (D. Nev. Apr. 9, 2025)........................................................20, 22, 25, 30

*Kansas v. Garcia*, 589 U.S. 191 (2020)........................................................22

*Katz v. Pershing LLC*, 672 F.3d 64 (1st Cir. 2012) ........................................................4

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ........................................................18, 19

*Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980)........................................................23

*Lichoulas v. City of Lowell*, 555 F.3d 10 (1st Cir. 2009)........................................................14

*Loc. Union No. 12004 v. Massachusetts*, 377 F.3d 64 (1st Cir. 2004) ........................................12, 13

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ........................................................18

*Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33 (1st Cir. 2012)........................................................15

*Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014) ........................................................28

*Microfin., Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72 (1st Cir. 2004) ........................................20

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ........................................15

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)........................................................29

*Morton v. Mancari*, 417 U.S. 535 (1974) ........................................................26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)........................................17

*Murphy v. NCAA*, 584 U.S. 453 (2018) ........................................................21

*N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) ........................................................ passim

*Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109
    (1st Cir. 2012) ........................................................10, 14, 16, 18

*New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35 (D. Mass. 2015)...............19

*O'Neil v. Canton Police Dep't*, 116 F.4th 25 (1st Cir. 2024)........................................................6

*One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, 716 F.3d 218 (1st Cir. 2013)...............15

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015)........................................................22

*Padgett v. Surface Transp. Bd.*, 804 F.3d 103 (1st Cir. 2015)........................................................23

*Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F. Supp. 202 (N.D. Ala. 1981) ............23

iv

*Penobscot Nation v. Frey*, 3 F.4th 484 (1st Cir. 2021) .........................................................8, 10, 11

*Philip Morris Inc. v. Harshbarger*, 122 F.3d 58 (1st Cir. 1997) ....................................................24

*Pop Warner Little Scholars, Inc. v. N.H. Youth Football & Spirit Conf.*, 2006
    WL 2728593 (D.N.H. Sept. 25, 2006) ...................................................................................16

*Powell v. City of Pittsfield*, No. 18-30146-MGM, 2019 WL 13368956 (D. Mass. July 31,
    2019) ...................................................................................................................................3, 19

*Providence J. Co. v. Fed. Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979) .................18, 19

*Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ........................................................8

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ...................................................13

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ..............................................................28

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) ...................................................................8, 10, 11

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999) ................7, 9, 10

*Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793 (1996) .................................................................10

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8 (1st Cir. 2000) ...............................14

*Rossi v. Gemma*, 489 F.3d 26 (1st Cir. 2007) .................................................................................14

*Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008) .............................................................21

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983).........................................................................13

*Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. of P.R.*, 437 F. Supp. 3d 119
    (D.P.R. 2020) ..........................................................................................................................30

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015) .....................................................15

*Somyk v. City Pers., Inc.*, No. 18-164-JJM-PAS, 2018 WL 4936004 (D.R.I. Oct. 11,
    2018) ........................................................................................................................................17

*Spark Energy Gas, LP v. Toxikon Corp.*, 864 F. Supp. 2d 210 (D. Mass. 2012) ..........................17

*State of California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018) .....................27

*Steffel v. Thompson*, 415 U.S. 452 (1974) ........................................................................................4

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)....................................................... passim

*Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977)...................................................18, 19

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)................................................29

*Toilet Goods Ass'n v. Gardner*, 387 U.S. 158 (1967)..................................................11

*Town of Milton, Mass. v. Fed. Aviation Admin.*, 87 F.4th 91 (1st Cir. 2023)................................6

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................3, 6

*United States v. Estate of Romani*, 533 U.S. 517 (1998). .................................................28

*United States ex rel. Witkin v. Medtronic, Inc.*, No. 1:11-CV-10790-IT, 2025 WL 928777
     (D. Mass. Mar. 27, 2025)................................................20

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ................................12, 13

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7 (1st Cir. 1990) ....................16, 17

*Wilton v. Seven Falls Company*, 515 U.S. 277 (1995) ................................................13, 14

*Younger v. Harris*, 401 U.S. 37 (1971)................................................15

**Statutes & Rules**

17 C.F.R. § 40.11 ................................................24, 26, 28

77 Fed. Reg. 48,208 (Aug. 13, 2012)................................................27

7 U.S.C. § 1a(13) ................................................26

7 U.S.C. § 2(a)(1)................................................22, 23

7 U.S.C. § 5(b) ................................................27

7 U.S.C. § 7a-2(c)(5)(C)(i) ................................................24, 26, 28

7 U.S.C. § 16(e) ................................................24, 27

15 U.S.C. § 3001(b) ................................................27

15 U.S.C. § 3002(3) ................................................27

18 U.S.C. § 1084(a) ................................................27

25 U.S.C. § 2701 *et seq.*................................................27

28 U.S.C. § 1331................................................13

31 U.S.C. § 5362................................................28

Commodity Futures Modernization Act of 2000, Pub. L. 106-554 App. E,
  § 101, 114 Stat. 2763A-365 (2000) ........................................................................26

**Other Authorities**

President John F. Kennedy, *Remarks Upon Signing Bills to Combat Organized Crime
  and Racketeering* (Sept. 13, 1961) ......................................................................27

Commodity Futures Trading Comm'n, *Provisions Common to Registered Entities*, 76
  Fed. Reg. 44,776 (July 27, 2011) .........................................................................24

## PRELIMINARY STATEMENT

Robinhood Derivatives, LLC ("Robinhood") submits this combined brief in support of its Motion for Preliminary Injunction (ECF No. 11) ("Motion" or "Mot.") and in opposition to Defendants' Motion to Dismiss (ECF No. 36) ("MTD" or "Opp.").

Rather than focus on the merits of Robinhood's federal preemption claims, Defendants raise a catalog of meritless arguments about why this Court lacks jurisdiction or should otherwise dismiss or stay this case. *First*, Robinhood has suffered an injury in fact sufficient to confer Article III standing because there is a credible threat of prosecution against it. KalshiEX LLC ("Kalshi")—which offers the same event contracts as Robinhood—has already been sued, and the threat of prosecution against Robinhood looms large. *Second*, Defendants' attempt to moot the case with the promise of temporary non-enforcement is as transparent as it is futile. The First Circuit has made clear that a temporary forbearance of enforcement does not displace the Court's jurisdiction. *Third*, Robinhood's claim is ripe because Robinhood is currently offering sports-related event contracts to Massachusetts residents. *Fourth*, Robinhood has a right of action under *Ex parte Young*, as it seeks declaratory and injunctive relief against state officers in their official capacities to enjoin them from enforcing against Robinhood state law that is federally preempted. *Fifth*, the various doctrines Defendants invoke to delay this case are inapposite: (1) *Wilton/Brillhart* is inapplicable; (2) *Younger* abstention is inappropriate because there is no state court proceeding involving the same parties; (3) *Colorado River* abstention is inapplicable because there is no parallel state court proceeding involving substantially the same parties and substantially identical issues; and (4) a *Landis* stay is unjustified because Defendants have not articulated hardship, an "extraordinary public moment," or judicial efficiencies that would warrant sidelining Robinhood.

With these meritless jurisdictional arguments cleared away, Robinhood requests the Court

1

grant its Motion for Preliminary Injunction. *First*, Robinhood is likely to succeed on the merits of its claim that Massachusetts sports-wagering laws, as applied to swaps and regulated derivatives traded on DCMs, are preempted by the CEA. Despite Defendants' contrary suggestion, federal sports-gambling statutes are both irrelevant to this case and easily reconciled with the CEA. Defendants' remaining arguments do not defeat the conclusion that Massachusetts' proposed enforcement of state law is barred by the CEA under any relevant preemption doctrine (express, field, or conflict). *Second*, Robinhood will be irreparably harmed by the enforcement of preempted state laws, and the public can have no interest in their enforcement. *Third*, because Defendants cannot be harmed by the inability to enforce preempted state law, the balance of the equities tips sharply in Robinhood's favor, and the preliminary injunction should issue.

## FACTUAL BACKGROUND

Robinhood incorporates by reference the factual background in its Motion. To clarify the relevant procedural timeline, on September 12, 2025, the Commonwealth of Massachusetts filed a lawsuit in state court against Kalshi for allegedly "offering sports wagering without a license in violation of [state sports-wagering laws]." *Commonwealth of Massachusetts v. KalshiEx LLC*, No. 2584-CV-02525 ("*Kalshi*") (Mass. Super. Ct.), Dkt. 1 ¶ 1.

On September 15, 2025, Robinhood filed the instant federal complaint. ECF No. 1 ("Compl."). The next day, September 16, Kalshi filed a notice of removal in *Kalshi*. No. 2584-CV-02525, Dkt. 14. After meeting and conferring with the Massachusetts Attorney General, Robinhood moved for a preliminary injunction in this action on September 18, 2025. ECF No. 10.

On September 24, 2025, Massachusetts moved to remand *Kalshi* to state court. *Commonwealth of Massachusetts v. KalshiEx LLC*, No. 1:25-cv-12595 (D. Mass.), ECF No. 20.[1]

---

[1] In opposing the motion to remand, Kalshi has made clear it relies on a "complete preemption"

## OPPOSITION TO MOTION TO DISMISS

## I.    ROBINHOOD HAS DEMONSTRATED ARTICLE III STANDING.

Defendants claim that Robinhood's suit should be dismissed for lack of standing.  (MTD at 4.)  The parties agree that standing requires injury in fact, causation, and redressability.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Defendants do not meaningfully dispute that Robinhood has satisfied causation and redressability.[2]  *Cf. Powell v. City of Pittsfield*, No. 18-30146-MGM, 2019 WL 13368956, at *1 (D. Mass. July 31, 2019) (defendant waived argument by failing to raise in motion to dismiss).  Defendants argue, however, that Robinhood cannot satisfy the injury-in-fact requirement because there is no "real and imminent" threat of prosecution.  (MTD at 5-6 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("*SBA List*")).)  Defendants are wrong.

In the context of a pre-enforcement challenge, "the existence of a statute implies the threat of its enforcement," and a plaintiff is "entitled to bring a pre-enforcement challenge based on the probability of future injury."  *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012).  Here, the statute at issue does not merely "exist."  Robinhood is offering sports-related events contracts in Massachusetts, and Massachusetts is currently enforcing its state statute against Kalshi for the same conduct—and identified Robinhood in that action.  A credible threat of enforcement exists, and Defendants' standing argument should therefore be rejected.

### A.    Robinhood Has a Credible Threat of Imminent Enforcement Against It.

Contrary to Defendants' assertion, Robinhood's injury—a credible threat of enforcement

---

basis for removal, distinct from substantive preemption of state law.  *Id.* ECF No. 31, at 9.

[2] Defendants contend that "[a]s to the MGC specifically, nowhere does Robinhood allege sufficient facts to establish a causal nexus for standing" (MTD at 7), but they acknowledge that Robinhood has alleged fear of future enforcement by the MGC (*id.*).  Defendants are causing Robinhood's injury, as either Massachusetts or the MGC could pursue an enforcement action.

against it—is imminent, concrete, and particularized. *First*, Defendants argue that Robinhood's injury lacks imminence because any threat of enforcement rests on Defendants' case against Kalshi and "a credible threat must be plaintiff-focused; it is not enough to infer peril from proceedings against a third party." (MTD at 5.) That is not the law. A credible threat of imminent enforcement *is* established by enforcement against a similarly situated party. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (holding petitioner had alleged credible threat of imminent enforcement where fellow protestor was prosecuted for same conduct).

Defendants rely on *SBA List*, but that case actually undermines their position.[3] In *SBA List*, an anti-abortion advocacy organization (SBA) made public statements against a candidate running for re-election (Driehaus) that allegedly violated an Ohio statute prohibiting false statements during a political campaign. 573 U.S. at 153-54. Driehaus filed a complaint against SBA with the Ohio Elections Commission, and SBA sought declaratory and injunctive relief in federal district court. Driehaus withdrew his complaint after losing the election, but SBA continued its federal suit because it alleged an intent "to engage in substantially similar activity in the future." *Id.* at 154-55. The district court consolidated SBA's case with a case brought by the Coalition Opposed to Additional Spending and Taxes ("COAST"), which allegedly intended to disseminate materials criticizing Driehaus but refrained in light of the SBA proceedings. *Id.* at 155-56. The Supreme Court held that *both* SBA List and COAST had standing based on the threat of future enforcement because "there is a history of past enforcement . . . [and] SBA was the subject of a [recent]

---

[3] Defendants cite *Katz v. Pershing LLC*, 672 F.3d 64, 71-72 (1st Cir. 2012), for the notion that an injury must threaten a plaintiff's "own legal rights (as opposed to those of a third party)." (MTD at 4.) But Robinhood's injury is not based on any injury Kalshi may suffer; rather, the enforcement action against Kalshi has created a threat of enforcement against *Robinhood*. In any event, *Katz* is inapposite. In *Katz*, the court determined the plaintiff lacked standing because she brought a contract breach claim against an entity with which she did not have a contract and the contractual language made clear it was "not intended to confer any benefits on third-parties." 672 F.3d at 73.

4

complaint." *Id.* at 164.  Here, Robinhood's position is akin to COAST's.  There is a credible threat of future  enforcement against Robinhood based on past enforcement proceedings brought against Kalshi for similar conduct.  Robinhood has plainly alleged a "substantial risk" that the harm against it will occur.  *SBA List*, 573 U.S. at 158 (citation omitted).

Defendants' contention that "Robinhood is not similarly-situated to Kalshi" because Robinhood "is merely a merchant of Kalshi's contracts" is a red herring.  (MTD at 5.)  In its Complaint against Kalshi, the Commonwealth seeks to enjoin Kalshi from "offering" event contracts to Massachusetts residents.  *Kalshi*, No. 2584-CV-02525, Dkt. 1, Compl. ¶ 6.  That is the exact conduct in which Robinhood is engaged and which it seeks to enjoin Defendants from prosecuting.  (Compl. ¶ 64.)  Indeed, the Commonwealth referred to Robinhood in its complaint against Kalshi, alleging that "[t]he availability of Kalshi's contracts are not limited to Kalshi's platform, but are also available on Robinhood" and "[a]pproximately $1 billion worth of Kalshi wagers were traded on Robinhood during the second quarter of the year." (*Kalshi* Compl. ¶ 130.)[4] *Kalshi* unequivocally reveals the Commonwealth's position that an FCM offering event contracts on a DCM is prohibited under its state gambling laws.  (*Kalshi*, No. 2584-CV-02525, Dkt. 5, Mot. at 10-11 ("The central question is whether the offering of Kalshi's "yes"/"no" event contracts . . . constitutes the offering [sic] sports wagering under state law.  The answer is yes.").)

*Second*, Defendants' argument that "the types of harms Robinhood asserts it will suffer" are "not sufficiently concrete or particularized" also lacks merit.  (MTD at 6.)  As an initial matter, Defendants' contention that Robinhood's injury is insufficient because it alleges harm to its

---

[4] Defendants also accuse Robinhood of "manufactur[ing] Article III injury" by claiming it cannot reasonably obtain a sports-wagering license in Massachusetts.  (MTD at 7.)  But Robinhood does not contend that its potential inability to procure a sports-wagering license provides it with standing.  Rather, in its Complaint, Robinhood is merely explaining why it cannot avoid irreparable harm by seeking and obtaining a license.  (Compl. ¶ 59.)

reputation and loss of goodwill (*id.*) ignores the myriad other types of harm Robinhood pleaded in its Complaint, such as the threat of civil penalties, potential criminal penalties, and loss of revenue. (Compl. ¶¶ 5, 57, 60.)  These are all cognizable injuries.  *See SBA List*, 573 U.S. at 166; *Canna Provisions, Inc. v. Garland*, 738 F. Supp. 3d 111, 121 (D. Mass. 2024).  In any event, the Supreme Court and First Circuit have recognized that reputational harm may constitute concrete injury.  *TransUnion*, 594 U.S. at 417 (noting concreteness turns on whether alleged harm has relationship to "traditional[] harm," "including . . . reputational harm"); *Town of Milton, Mass. v. Fed. Aviation Admin.*, 87 F.4th 91, 95 (1st Cir. 2023) (referring to reputational harm as injury).

Moreover, Defendants' contention that "self-imposed costs taken to guard against hypothetical risks do not constitute injury-in-fact" (MTD at 6-7) is of no moment because the injury in fact Robinhood alleges is the threat of an enforcement proceeding against it.  Regardless, Defendants are wrong.  In the cases on which Defendants rely, the courts concluded the plaintiffs lacked standing because they could not establish their injuries were imminent, not because it was always the case that "self-imposed costs . . . do not constitute injury-in-fact."  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) (plaintiffs could not show imminent harm, so self-imposed costs incurred could not constitute injury in fact); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (determining it was unlikely plaintiff would "suffer future injury from the use of chokeholds by police officers," thus no standing); *O'Neil v. Canton Police Dep't*, 116 F.4th 25, 31 (1st Cir. 2024) (plaintiffs who protested outside a witness's business lacked standing because no threat of prosecution where charges against them had been dropped).  Unlike these plaintiffs' injuries, Robinhood's injury is not hypothetical or contingent upon speculative future events; it is suffering a credible threat of enforcement now because Robinhood continues to offer event

contracts as part of its business.[5]  (Compl. ¶ 60; Mackenzie Decl., ECF No. 13 ¶¶ 4, 12.)

**B.    The Commonwealth's Non-Enforcement Stipulation Does Not Eliminate the Imminence of Robinhood's Injury.**

Defendants next take the extraordinary position that Massachusetts has eliminated any credible threat of enforcement by stipulating to non-enforcement while the Commonwealth's and Robinhood's motions for preliminary injunction are pending.  (MTD at 7.)  First Circuit precedent, however, directly forecloses this position.  In *Rhode Island Association of Realtors, Inc. v. Whitehouse*, which Defendants cite, the First Circuit held that the Massachusetts AG's promises not to enforce a challenged statute were insufficient to defeat standing.  199 F.3d 26, 32-33, 36 (1st Cir. 1999).  "Even were these representations unequivocal (and they are not), to allow the government to render a pre-enforcement challenge to an unambiguous state statute moot simply by declaring a case-specific amnesty would effectively insulate unconstitutional state statutes from pre-enforcement review.  This is simply not the law."  *Id.* at 36.

Further, the First Circuit does not treat disavowals to prosecute as "dispositive on imminence" (MTD at 7), and in cases where standing was lacking on this basis, the relevant disavowals constituted "unambiguous disclaimer[s] of coverage."  *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 52 (1st Cir. 2021); *see Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014) (no reasonable threat of enforcement as government represented that it did not believe plaintiff's

---

[5] Defendants argue that Robinhood's belief of imminent enforcement proceedings is "too attenuated to establish an immediate threat of injury."  (MTD at 6 (citing *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021)).)  *Brito* is inapposite, as the court determined that plaintiff noncitizens previously detained by ICE did not have standing to challenge pre-detention bond-setting procedures because it was uncertain that they would be detained again, ordered released and unable to pay bond.  *Id.* at 253-54.  Here, Robinhood is not alleging a "multi-step theory of standing predicated on possible future developments."  *Id*. at 254.  Instead, Robinhood is bringing a straightforward pre-enforcement challenge to determine its rights in light of the substantial risk of enforcement against it.  *See SBA List*, 573 U.S. at 158.

conduct was prohibited); *Penobscot Nation v. Frey*, 3 F.4th 484, 508 (1st Cir. 2021) (no reasonable threat of enforcement regarding sustenance fishing rights as AG's letter did not mention such rights and AG had "no intention" of interfering with such rights); *Reddy v. Foster*, 845 F.3d 493, 502 (1st Cir. 2017) (no reasonable threat of enforcement as no statutory "buffer zone" had been established and thus statute at issue had never been enforced); *but see Babbitt v. Farm Workers*, 442 U.S. 289, 302 (1979) (finding reasonable threat of enforcement where "State [had] *not* disavowed any intention of invoking the [statute]").

Here, Massachusetts has not disavowed that Robinhood's conduct is covered by the statute or promised not to enforce.  (*See Kalshi*, No. 2584-CV-02525, Dkt. 5, Mot. at 10-11 (describing conduct that is common to Robinhood and Kalshi as prohibited under state law).)  Rather, the Commonwealth is actively enforcing the statute against Kalshi for conduct in which Robinhood also engages and has granted Robinhood only a temporary forbearance of enforcement—a transparent and improper attempt to moot the case.  (*See* MTD at 10 (the "stipulation of non-enforcement . . . eliminates any credible threat *while it is in effect*") (emphasis added).)  This does not negate the imminence or concreteness of Robinhood's injury.[6]  *See Rosen*, 986 F.3d at 51-52 (plaintiffs had standing, even though DOJ had signaled it would not enforce statute until certain preconditions were met and had not enforced against similarly situated parties); *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 51 (1st Cir. 2024) (plaintiffs had standing despite "state officials' nonbinding representations" they would not enforce law against them).  Massachusetts has not disclaimed that Robinhood's conduct is covered by its sports-wagering laws, instead offering only

---

[6] Defendants' attempt to distinguish between Kalshi and Robinhood is not credible.  (MTD at 8-9.)  As discussed above, Kalshi and Robinhood are similarly situated because they each offer sports-related event contracts, and it is the *offer* of such event contracts that the Commonwealth seeks to prohibit.  (*Kalshi* Compl. ¶¶ 129-130.)

temporary assurances of delay contingent on the resolution of pending motions. This credible threat of enforcement is an injury in fact. *See Rosen*, 986 F.3d at 50.

## II.    ROBINHOOD'S CLAIM IS RIPE.

Defendants next argue Robinhood's suit should be dismissed as unripe. (MTD at 10.) The two prongs of the ripeness analysis are fitness and hardship. *Rosen*, 986 F.3d at 52. Fitness concerns "whether the factual record [is] sufficiently developed," while hardship concerns "whether hardship to the parties would result if judicial relief is denied at this stage in the proceedings." *SBA List*, 573 U.S. at 167. "In the pre-enforcement context . . . the doctrines of standing and ripeness tend to overlap." *Rosen*, 986 F.3d at 52. Hence, Robinhood's claim is ripe for reasons similar to why it has Article III standing.

*First*, Defendants argue fitness is lacking because "any dispute turns on if the Commonwealth might pursue enforcement against Robinhood." (MTD at 11.) They claim that the existence of *Kalshi* (a separate enforcement action) and the lack of current enforcement against Robinhood are somehow dispositive on fitness. By this logic, however, no pre-enforcement challenge would ever be fit for adjudication, which is plainly not the law. *See, e.g.*, *Whitehouse*, 199 F.3d at 33-34.

Further, Robinhood has a justiciable legal question about whether federal law preempts state laws that purportedly govern the event contracts it offers, which is "fit" for adjudication now regardless of whether Massachusetts ultimately files an enforcement action. This is in contrast to cases which find that the legal question may not be relevant depending on future facts. *Compare id.* at 34 ("[Plaintiff] has described a concrete plan to [engage in an activity] . . . plainly proscribed by [the statute]—and no one has suggested any valid reason why resolution of the apparent conflict should await further factual development."), *with City of Fall River, Mass. v. FERC*, 507 F.3d 1, 7 (1st Cir. 2007) ("Plainly stated, [the challenged project] may well never go forward" as regulators

9

"expressed serious reservations."). Here, Robinhood has not demonstrated a mere *plan* to offer event contracts in Massachusetts, it is actively doing so. (Compl. ¶ 60; Mackenzie Decl., ECF No. 13 ¶¶ 4, 12.) Thus, the dispute is fit for adjudication to resolve the "purely legal question" of whether federal law preempts Massachusetts sports-wagering law.[7] *Whitehouse*, 199 F.3d at 34.

Defendants also argue the dispute is unfit because "[t]he ultimate resolution of Robinhood's claims depends on the underlying Kalshi action which is still awaiting adjudication." (MTD at 11.) This makes no sense. There is no "underlying" Kalshi action, as Robinhood is not party to *Kalshi*. Robinhood itself offers sports-related event contracts to Massachusetts residents (Compl. ¶ 60), and has a right to have a court adjudicate its own claim. *See Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996) ("one is not bound by a judgment" if "he is not designated as a party"; "[t]his rule is part of our deep-rooted historical tradition that everyone should have his own day in court"). Moreover, Robinhood's claims do not "depend" on what happens in *Kalshi*. For example, if there is a determination in *Kalshi* that Massachusetts sports-wagering law is not preempted, that would not preclude Robinhood from arguing in this case that state law is preempted and the *Kalshi* decision was wrong. A claim is not unfit merely because the same statute may be at issue between different parties in another forum. *Cf. Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 114 (1st Cir. 2012) ("[T]here is nothing unusual about parallel litigation resolving similar controversies in both state and federal court.").

*Second*, Defendants claim that Robinhood "faces no present or imminent harm." (MTD at 11.) Not so. (*See infra* PI Arg., Section II.) The First Circuit has deemed cases ripe where a

---

[7] Other cases that Defendants cite in their fitness argument are easily distinguishable. *See Reddy*, 845 F.3d at 505 (fitness prong not satisfied because "buffer zone" had yet to be created, so no enforcement was currently possible); *Penobscot*, 3 F.4th at 508-09 (fitness prong not satisfied for sustenance fishing rights claim because state had a longstanding policy of not interfering with such rights and had unambiguously disavowed any intent to interfere).

plaintiff must operate under a "dangling sword of indictment" absent court intervention. *Rosen*, 986 F.3d at 53. Courts deem disputes unripe when plaintiffs will not be sufficiently harmed if the court delays. *Compare Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149, 152 (1967) (finding dispute ripe where "issue tendered [was] a purely legal one" and government's "authoritative interpretation of a statutory provision [had] a direct effect on the day-to-day business of [the plaintiffs]"), *with Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164-66 (1967) (finding dispute not ripe because how challenged regulation would be enforced was unclear and no hardship would result because disobedience could be "promptly challenged through an administrative procedure").[8] As in *Abbott Labs*, the uncertainty of the law's application and enforceability is currently impacting Robinhood's ability to run its business, and delaying adjudication prolongs that uncertainty and its attendant harms.

## III. THE COURT HAS JURISDICTION TO ADJUDICATE ROBINHOOD'S CLAIM.

Defendants argue that even if Robinhood has standing, the Court "should not entertain" Robinhood's claim because it is purportedly a claim for a declaratory judgment and Robinhood cannot identify "a substantive, independently cognizable federal claim." (MTD at 12.) Defendants principally rely on the Supreme Court's holding in *Armstrong v. Exceptional Child Center, Inc.* that the Supremacy Clause does not confer a right of action. (*Id.* (citing 575 U.S. 320 (2015)).) In *Armstrong*, the Court held that plaintiffs seeking to enforce compliance with federal law (*i.e.*, seeking a *mandatory* injunction) could not do so under the Supremacy Clause because the Constitution does not "*require*[] Congress to permit the enforcement of its laws by private actors."

---

[8] The hardship prongs in *Penobscot* and *Reddy* were not satisfied because it was unclear that the alleged harms would ever materialize. *Penobscot*, 3 F.4th at 509; *Reddy*, 845 F.3d at 505. These cases are readily distinguishable because Massachusetts clearly intends to enforce its state sports wagering law against companies offering event contracts. Defendants also cite *Blum*, but *Blum* does not discuss ripeness. *See generally* 744 F.3d at 798-99.

*Id.* at 326.

*Armstrong* is inapposite because Robinhood seeks a *prohibitory* injunction against enforcement of preempted state law. *Armstrong* did not disturb the long-standing *Ex parte Young* doctrine, 209 U.S. 123 (1908), which confirms federal jurisdiction exists where, as here, a plaintiff "seek[s] to declare the state statutory regulations invalid on the basis of federal pre-emption." *Colonial Penn Grp., Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 237 (1st Cir. 1987); *see Armstrong*, 575 U.S. at 326 (noting Court has "long recognized" *Ex parte Young*). The *Ex parte Young* basis for jurisdiction applies even when "no particular jurisdictional statute applie[s] other than the Declaratory Judgment Act." *Colonial Penn*, 834 F.2d at 237; *see also Loc. Union No. 12004 v. Massachusetts*, 377 F.3d 64, 75 (1st Cir. 2004). Such jurisdiction is "necessary to 'give[] life to the Supremacy Clause.'" *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001).

Robinhood is suing state officials in their official capacities because the CEA preempts state sports-wagering laws, which is an ongoing violation of federal law. (Compl. ¶¶ 64, 69.) The requested declaration and injunction prohibiting Defendants from enforcing preempted state law are prospective. (*Id.* at 27.) These facts satisfy the jurisdictional requirements under *Ex parte Young* and demonstrate why *Armstrong* is not a bar to Robinhood's suit. *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002). Although Defendants confusingly contend that the First Circuit treats *Ex parte Young* jurisdiction as "distinct [from a Declaratory Judgment-based cause of action] and carefully cabined" (MTD at 13 n.4),[9] they provide no

---

[9] Defendants cite to *Loc. Union No. 12004 v. MCAD*, 330 F.3d 12 (1st Cir. 2004) (MTD at 13 n.4), but that citation does not exist as the case name and reporter citation do not match. In any event, neither case supports Defendants' argument. *See Loc. Union No. 12004 v. Massachusetts*, 377 F.3d 64, 74-75 (1st Cir. 2004) (reversing district court's finding that it lacked jurisdiction and holding jurisdiction existed under *Ex parte Young*); *Bos. & Me. Corp. v. Town of Ayer*, 330 F.3d 12, 16-17 (1st Cir. 2004) (underlying dispute concerned whether local regulations were federally preempted; jurisdiction not discussed but implicitly supported by adjudication). *Local Union* is

explanation as to why *Ex parte Young* does not confer jurisdiction here.

Because the *Ex parte Young* doctrine applies here, the *Wycoff* rule does not. (*See* MTD at 12-13.) The *Wycoff* rule instructs that a declaratory plaintiff cannot establish federal jurisdiction under 28 U.S.C § 1331 if the "coercive" suit (*i.e.*, the inverse of the declaratory suit, in which the declaratory defendant sued the declaratory plaintiff) would not raise a federal law issue.[10] *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). The Supreme Court and First Circuit have held that federal courts have jurisdiction in cases where a preemption claim is asserted under *Ex parte Young*, notwithstanding *Wycoff*. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983); *Verizon*, 535 U.S. at 642; *Loc. Union*, 377 F.3d at 75 (in cases where *Ex Parte Young* and *Wycoff* may conflict, *Ex parte Young* confers jurisdiction).

## IV. THE COURT SHOULD NOT ABSTAIN FROM ADJUDICATING ROBINHOOD'S CLAIM OR OTHERWISE DISMISS OR STAY THE CASE.

### A. *Wilton/Brillhart* Is Inapplicable.

Defendants next argue that the Court should decline to exercise jurisdiction under the *Wilton/Brillhart* doctrine. (MTD at 13.) In both *Wilton v. Seven Falls Company*, 515 U.S. 277 (1995), and *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), the Supreme Court held that the federal jurisdiction conferred by the Declaratory Judgment Act ("DJA") is discretionary. This is a narrow exception to the general rule that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Defendants' invocation of *Wilton/Brillhart* fails, as it

---

an example of the First Circuit endorsing *Ex parte Young* jurisdiction and provides no basis or support for Defendants' "distinct and carefully cabined" argument. *See* 377 F.3d at 74-75.

[10] Defendants cite five cases in support of their *Wycoff* argument (MTD at 12-13), none of which is relevant because *Wycoff* does not apply. And none stand for the proposition that *Wycoff* strips federal jurisdiction when a party brings a claim for federal preemption pursuant to *Ex parte Young*.

13

rests on the erroneous assumption that the only basis for federal jurisdiction here is the DJA.[11]

Here, as discussed above, there is federal jurisdiction over Robinhood's suit under *Ex parte Young*, and *Ex parte Young* jurisdiction does not rely on the DJA.  Defendants cite no case suggesting that *Wilton/Brillhart* discretion applies to *Ex parte Young* actions, nor is Robinhood aware of any.  Exercising jurisdiction over Robinhood's suit is not discretionary.  To the contrary, the logic underlying the *Ex parte Young* doctrine is that such jurisdiction is "necessary to 'give[] life to the Supremacy Clause.'"  *Bragg*, 248 F.3d at 292.

Even applying *Wilton/Brillhart*, the factors courts consider support exercising jurisdiction.  *See Wilton*, 515 U.S. at 281-83 (factors include whether there is pending action in which all matters in controversy may be fully adjudicated, whether federal court might be "gratuitous[ly] interfer[ing]" with state law issues, and whether plaintiff forum shopped).  There is no adequate remedy available to Robinhood in *Kalshi* because Robinhood is not a party, and a related state court action between different parties is no reason to dismiss this case.  *See Nazario-Lugo*, 670 F.3d at 114.  And Defendants' accusation that Robinhood engaged in forum shopping is illogical and has no merit.  (MTD at 15.)  Robinhood did not file suit in federal court to circumvent *Kalshi* (to which Robinhood is not a party); it filed this suit to seek adjudication of a legal question hinging on federal law interpretation (which also demonstrates that there is no interference here in state law issues).[12]  *See One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, 716 F.3d 218, 224-25

---

[11] Defendants misleadingly cite cases to suggest that courts have discretion to exercise jurisdiction over injunctive relief claims.  (MTD at 14.)  But none of the cases they cite suggests that *Wilton/Brillhart* extends beyond jurisdiction conferred by the DJA.  *See Lichoulas v. City of Lowell*, 555 F.3d 10, 13 (1st Cir. 2009) (jurisdiction under the DJA is discretionary); *Rossi v. Gemma*, 489 F.3d 26, 38 (1st Cir. 2007) (mentioning discretion to exercise jurisdiction only over declaratory actions).  Defendants also cite *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, even though their own parenthetical makes clear that the court was discussing its discretion to *grant* injunctive relief.  217 F.3d 8, 13 (1st Cir. 2000).

[12] If anyone is forum shopping, it is Defendants.  Their attempts to moot this case with a

(1st Cir. 2013).

**B.    The Court Should Not Abstain Under *Younger.***

In yet another bid for abstention, Defendants argue that the Court should dismiss pursuant to the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), because there was a state court action against Kalshi.[13]    (MTD at 16-18.)    *Younger*, however, requires the same parties to be present in the federal and state suits, which is plainly lacking here.

"*Younger* does not typically apply where the federal-court plaintiff is not itself a party to the state-court proceedings" as "[d]istinct parties are typically treated separately for purposes of *Younger* abstention." *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 41-42 (1st Cir. 2012). *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) is instructive.    There, three bars were challenging an obscenity law prohibiting certain forms of entertainment.    *Id.* at 924.    One bar decided not to comply and faced a state prosecution; two bars complied and were not charged.    *Id.* at 924-25.    The Court held that *Younger* abstention applied to the non-compliant bar that had pending charges, but not the two bars that did not.    *Id.* at 928-29.[14]

The only case Defendants cite for the proposition that the parties need not be the same is *Hicks v. Miranda*, 422 U.S. 332 (1975).    However, *Hicks* is inapposite because there *were*

---

temporary non-enforcement stipulation and link Robinhood's fate to *Kalshi* despite its non-party status are clearly efforts to avoid a federal court adjudicating a federal question.

[13] For *Younger* abstention, there must be a pending state court action.    *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015).    Defendants point to *Kalshi* (MTD at 16), but technically that action has since been removed to federal court.    Regardless, *Younger* is not applicable here.

[14] In dicta, the *Doran* Court contemplated that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them."    422 U.S. at 928-29.    This requires common "ownership, control, and management"—more than the parties having "common counsel, and hav[ing] similar business activities and problems."    *Id.*; *see also Mass. Delivery Ass'n*, 671 F.3d at 45.    Here, Defendants do not suggest that Robinhood and Kalshi share such commonality, nor could they, as there is no common ownership, control, or management.

15

overlapping parties: the state action complaint was amended to include all federal plaintiffs, so the federal case ultimately did involve the same parties. *Id.* at 349-50.[15] Thus, *Younger* abstention is inappropriate.

### C.    The Court Should Not Abstain Under *Colorado River*.

Defendants' final plea for abstention is made pursuant to *Colorado River*, 424 U.S. 800. This argument should also be rejected, however, because *Kalshi* would not be a "parallel" case to this federal action. [16] *Colorado River* requires the concurrent cases to include substantially "the same parties and substantially identical claims and issues." *Bankart v. Ho*, 60 F. Supp. 3d 242, 248 (D. Mass. 2014). As discussed above, here the cases do not involve substantially the same parties, so *Colorado River* abstention is unavailable. *See Pop Warner Little Scholars, Inc. v. N.H. Youth Football & Spirit Conf.*, 2006 WL 2728593, at *3 (D.N.H. Sept. 25, 2006).[17]

Moreover, the issues are not substantially identical, as they involve "different operative facts, different causes of action, and require different elements to prove." *Somyk v. City Pers., Inc.*, 2018 WL 4936004, at *2 (D.R.I. Oct. 11, 2018) (declining to apply *Colorado River* abstention

---

[15] Defendants allude to out-of-circuit decisions suggesting that *Younger* abstention applies to non-parties where the party in the federal action has a claim derivative of a party in the state court action. (*See* MTD at 16.) However, even if the Court were inclined to adopt this derivative test, Robinhood's claim—a federal preemption claim concerning the legal question of whether the CEA preempts Massachusetts law—in no way derives from Massachusetts's state law claim about whether the offer of Kalshi's events contracts violates state law or from any claim Kalshi has.

[16] *Colorado River* "permit[s] the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." 424 U.S. at 818. Here, there technically is no state proceeding as the Kalshi action was removed to federal court.

[17] Defendants cite *Nazario-Lugo*, 670 F.3d 109, and *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7 (1st Cir. 1990), to support their assertion that "exact identity of the parties is not required," and what is required is only that "the proceedings are 'parallel in substance' and [] the state case is an adequate vehicle for the complete and prompt resolution of the issues animating the federal suit." (MTD at 18.) Neither case is on point. *See Nazario-Lugo*, 670 F.3d at 113 (no discussion of party identity because both suits involved same parties); *Villa Marina*, 915 F.2d at 14 (suggesting presence of different parties counsels against abstention on remand).

even where factual allegations were "virtually identical"). Here, Robinhood asserts a single claim of federal preemption by the CEA. In its state court action, Massachusetts asserts a claim against Kalshi under the Massachusetts Sports Wagering Act for conducting sports wagering without a license. These cases are not substantially similar claims as they involve "different causes of action" with "different elements to prove," and they may involve different legal issues (*e.g.*, "different operative facts" for varying theories of express, field, and conflict preemption).

Even if the Court applied *Colorado River*, the factors courts balance—which are heavily weighted against abstention—counsel against abstention. *Colo. River*, 424 U.S. at 820 ("heavy obligation to exercise jurisdiction"); *Villa Marina*, 915 F.2d at 13 (remanding where "the court neglected . . . to give due weight to the heavy presumption in favor of retaining jurisdiction"). The only claim this lawsuit raises is one of preemption, which is a "major consideration weighing against" abstention. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S 1, 26 (1983). Further, proceeding in both fora does not risk piecemeal adjudication, such as where the parties to a contract or transaction are not joined. *See Villa Marina*, 915 F.2d at 16; *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 30 (1st Cir. 2010).[18]

### D.    An Equitable Stay Under *Landis* Is Inappropriate.

Perhaps recognizing the weaknesses of their other arguments, Defendants' last-ditch effort is to argue that this Court should stay the proceeding under *Landis v. North American Co.*, 299 U.S. 248 (1936) to permit *Kalshi* to resolve "preliminary issues." (MTD at 20.) In deciding to

---

[18] Moreover, the cases are about equally far along, and Robinhood did not "rush[] over to the federal courthouse in the hope of obtaining a more favorable determination," *Villa Marina*, 915 F.2d at 15, but brought suit to alleviate the ongoing harm from the credible threat of enforcement.

The other *Colorado River* factors are neutral: (1) there is no res involved; (2) the fora are equally convenient (Boston); (3) the state court can consider preemption; and (4) the expressed policy underlying removal jurisdiction does not apply because the same plaintiff has not sued in two forums. *See Spark Energy Gas, LP v. Toxikon Corp.*, 864 F. Supp. 2d 210, 221 (D. Mass. 2012).

issue a *Landis* stay, courts consider: (1) hardship or inequity to the movant balanced against harm to other parties; (2) whether there is an "extraordinary public moment;" and (3) judicial economy given the relative progress of the cases. 299 U.S. at 254-56. None supports a stay.

*First*, Defendants have not "ma[de] out a clear case of hardship or inequity in being required to go forward" given a "fair possibility that the stay . . . will work damage to" Robinhood. *Id.* at 255. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* Here, Defendants' only hardship is having to litigate both this case and *Kalshi* (MTD at 21), which is insufficient to warrant a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). "[T]here is nothing unusual about parallel litigation resolving similar controversies in both state and federal court." *Nazario-Lugo*, 670 F.3d at 114. By contrast, a stay would "work damage" to Robinhood as the ongoing threat of enforcement looms. *Landis*, 299 U.S. at 255. Defendants suggest that the non-enforcement stipulation counteracts any harm. (MTD at 21.) However, because Defendants are offering only temporary case-specific forbearance (*see supra* Section I.B), the stipulation actually prolongs the threat against Robinhood, exacerbating not ameliorating the harm. *See Rosen*, 986 F.3d at 52-53. Thus, Defendants have not met their "heavy burden" of demonstrating hardship. *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977).[19]

*Second*, Defendants do not even address the second *Landis* factor that there be an "extraordinary public moment" such that "the public welfare or convenience will . . . be promoted"

---

[19] Defendants contend that the balance of hardships weighs in their favor because a stay will permit "meaningful review" while causing only "delay" to Robinhood. (MTD at 21-22 (citing *Providence J. Co. v. Fed. Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979)).) *Providence*, however, did not concern a *Landis* stay, but rather addressed whether a proceeding should be stayed pending appeal (a different standard). 595 F.2d at 889-90. There, the defendants sought a stay of the release of confidential materials obtained from an unlawful FBI wiretap to allow time for an appeal. *Id.* Here, no similar irrevocable harm would result by allowing this case to proceed.

18

by a stay. *Landis*, 299 U.S. at 256.  Defendants thus waived argument on this factor on reply.  *See Powell*, 2019 WL 13368956, at \*1.

*Third*, Defendants fail to show that a stay will promote "economy of time and effort for itself, for counsel, and for litigants."  *Id.* at 254.  Defendants again mischaracterize this action as "derivative" of *Kalshi*, but that is simply untrue.  (*See supra* n.12.)  Further, Defendants conclusorily state that *Kalshi* is somehow "positioned to adjudicate the threshold predicate more efficiently."  (MTD at 21.)  Given the two proceedings were filed days apart (and *Kalshi* is now subject to a motion to remand), Defendants offer no reason why that would be.  No matter which court in *Kalshi* ultimately addresses federal preemption, such a decision may not address all of the preemption theories Robinhood raises, and it would not divest this Court of its responsibility to address the claim Robinhood has raised in this forum.  Adjudication of *Kalshi* does not risk mooting this case.  *See, e.g.*, *Landis*, 299 U.S. at 251; *Taunton Gardens*, 557 F.2d at 879.

The authorities on which Defendants rely are inapposite.  *See Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 392-93 (D. Mass. 2022) (staying proceedings of private action while DOJ action against *same* defendant concerning *same* facts and which was "substantially farther along" and "likely to be resolved more quickly" proceeded); *New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35, 37 (D. Mass. 2015) (staying trademark suit in favor of ITC proceeding which would "adjudicate the validity and enforceability of" the trademark).[20]  Here, the parties and claims are different; the cases are equally far along;

---

[20] The other cases Defendants cite are plainly not analogous.  *See Microfin., Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77-79 (1st Cir. 2004) (affirming denial of stay in civil proceeding in deference to a parallel criminal proceeding against same party); *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995) (explaining district court had discretion to stay proceeding to confirm arbitration award when part of award was being contested in second arbitration); *Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 382 (1st Cir. 1982) (reasoning that "one of the two courts should defer to the other" where two cases were brought to compel arbitration); *United States ex*

19

and the resolution of *Kalshi* will not obviate this Court's need to address the preemption question.

## PRELIMINARY INJUNCTION ARGUMENT

### I.    ROBINHOOD IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM.

Robinhood is likely to succeed on the merits of its claim that the CEA preempts Massachusetts sports-wagering laws to the extent they seek to regulate sports-related event contracts traded on DCMs. Defendants' attempt to focus this Court on federal interstate gambling laws is misplaced. Those statutes are irrelevant to the issues presented here, and under every preemption framework (express, field, and conflict), Congress clearly intended for the CEA to preempt state regulation over commodity futures and derivatives transactions on DCMs.[21]

### A.    Futures and Derivatives Trading on DCMs is the Only Relevant Field of Regulation to the Court's Preemption Analysis.

Defendants invoke various federal sports-gambling statutes to deliberately obscure the only legal question that resolves this Motion, which is whether the CEA preempts Massachusetts sports-wagering laws. (ECF No. 37, Opp. at 24-26.) Specifically, Defendants claim that only a "detailed scheme of federal sports wagering regulation" could displace state sports-wagering law and that no such scheme exists because of *Murphy v. NCAA*, 584 U.S. 453 (2018) (Opp. at 29), before improperly inviting the Court to consider the target of Massachusetts sports-wagering laws to determine the relevant field of regulation. Defendants have it backward—the Court must identify

---

*rel. Witkin v. Medtronic, Inc.*, No. 1:11-CV-10790-IT, 2025 WL 928777 at *2 (D. Mass. Mar. 27, 2025) (granting stay of discovery in light of motion for reconsideration on case-dispositive issue).

[21] Defendants cite decisions from the U.S. District Courts for the Districts of Maryland and Nevada to suggest that Robinhood is unlikely to succeed on the merits. (Opp. 23 at n.5.) These opinions are flawed and lack persuasive value. Defendants also fail to acknowledge two other rulings in Robinhood's favor: *KalshiEx, LLC v. Hendrick*, No. 2:25-CV-00575-APG-BNW, 2025 WL 1073495 (D. Nev. Apr. 9, 2025) ("*Hendrick*"); and *KalshiEx LLC v. Flaherty*, No. 25-CV-02152-ESK-MJS, 2025 WL 1218313, at *5 (D.N.J. Apr. 28, 2025) ("*Flaherty*"). Indeed, the *Crypto.com* Order (Dkt. 39) reaffirms the core holding of *Hendrick*—the CEA preempts state law to the extent it purports to regulate. *Hendrick*, 2025 WL 1073495, at *3.

the field that *Congress* intended to occupy (which is transactions on DCMs), not the regulatory target of preempted state laws ("bets" and "wagers").

As the Supreme Court has noted, "[e]very Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution.  To discover the boundaries we look to the federal statute *itself*[.]*"  Hines v. Davidowitz*, 312 U.S. 52, 78-79 (1941) (emphasis added).  Any contrary argument "not only ignores the basic premise of field preemption—that States may not enter, in any respect, an area the Federal Government has reserved for itself—but also is unpersuasive on its own terms."  *Arizona v. United States*, 567 U.S. 387, 402 (2012).  Thus, the extent of preemption is set by the CEA, not by Massachusetts sports-wagering laws.

Any regulatory mismatch between Massachusetts sports-wagering laws and the CEA is irrelevant.  Because the scope of preemption is driven by congressional intent, federal laws often preempt state laws that target distinct areas of regulation.  *See, e.g.*, *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008) (Maine law concerning tobacco delivery to minors preempted by the Federal Aviation Administration Authorization Act); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) (state anti-"plug moulding" statute concerning duplication of boat hulls preempted by federal patent laws).  Moreover, the existence (or nonexistence) of federal gambling laws is simply irrelevant to Robinhood's claim that the CEA preempts Massachusetts law within the field of trading on DCMs.  *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) ("In order to determine whether Congress has implicitly ousted the States from regulating in a particular field, we must first identify the field in which this is said to have occurred.").

When the preemption analysis is conducted with the proper focus and in the proper order—by first determining the field that Congress intended *the CEA* to occupy—it is clear (for the reasons

21

below) that the only relevant field for preemption purposes is commodity futures and derivatives trading on DCMs.[22] (Mot. at 17-23.) Accordingly, district courts in Nevada and New Jersey have correctly decided that the plain text of 7 U.S.C. § 2(a)(1)(A) likely "reflects congressional intent to occupy the field of regulating CFTC-designated exchanges and the transactions conducted on those exchanges." *Hendrick*, 2025 WL 1073495, at *6; *see also Flaherty*, 2025 WL 1218313, at *5 ("The exclusive-jurisdiction language reflects an intent to occupy the field and the defendants cited no authority to the contrary.").

## B.   The CEA Preempts Gambling Law as Applied to DCM Trading.

Robinhood is likely to succeed on the merits because the CEA expressly preempts the operation of Massachusetts sports-wagering law through the "exclusive jurisdiction" provision. 7 U.S.C. § 2(a)(1). Defendants argue that: (1) the presumption against preemption applies here (Opp. at 25, 30), (2) express preemption provisions in other portions of the CEA preclude a finding of preemption here (*id.* at 27), and (3) the CEA expressly incorporates state law (*id.* at 28). Each of these arguments fails.[23]

---

[22]      Defendants overread *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 385 (2015), in support of their field-preemption analysis. (Opp. at 30.) Far from allowing state law to define the federal field, *Learjet* stands for the opposite approach. *See id.* at 384-85. In *Learjet*, buyers of natural gas attempted to bring state antitrust claims against an oil and gas company, but the Supreme Court held these claims were not preempted by the Natural Gas Act. *See id.* at 376. The *Learjet* analysis defined "the field" as the Federal Energy Regulatory Commission's authority over interstate transportation and wholesale gas-prices, while also recognizing that Congress preserved state authority over retail gas prices. *Id.* at 384-85. The Court's consideration of "the target at which the state law aims" helped answer whether the state antitrust suits at issue fell within the federally preempted field, but was not relevant to define the federal field. *Id.* at 385-86.

[23] Defendants also state that Robinhood needs to establish that "the CEA also preempts all state regulation of sports wagering." *(Id.* at 26.) This misstates Robinhood's position and is wrong. Robinhood argues that the CEA preempts state law *only* to the extent that such laws purport to regulate transactions on DCMs because that is the exclusive province of the CFTC.

*First*, the presumption against preemption has no place where "the statute contains an express pre-emption clause." *Commonwealth of Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016). The CEA's "exclusive jurisdiction" provision plainly reserves the relevant area of regulation—swaps and transactions in excluded commodities that are traded on DCMs— for the CFTC alone. 7 U.S.C. § 2(a)(1)(A). The "exclusive jurisdiction" provision's unequivocal language reflects Congress' purpose to preempt state laws to the extent they purport to regulate transactions on DCMs, including the sports-related event contracts at issue here.[24] Indeed, courts regularly find that state law is preempted where Congress confers "exclusive jurisdiction" on a federal agency. *See Padgett v. Surface Transp. Bd.*, 804 F.3d 103, 105 (1st Cir. 2015) (finding state law remedies preempted where agency "jurisdiction is exclusive"); *AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586, 598 (D. Md. 2007) (noting that agency's "*exclusive authority* to approve or deny an application" amounted to an "express preemption clause").

*Second*, despite Defendants' contrary suggestion, the use of different express preemption language in other parts of the CEA does not foreclose a finding of field or conflict preemption here. (Opp. at 26-27 (citing 7 U.S.C. § 16(e)(2)).) *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352 (2001) ("[N]either an express pre-emption provision nor a saving clause 'bar[s]

---

[24] Defendants note that the "exclusive jurisdiction" provision does not mention state gambling laws and thus cannot amount to express preemption. (Opp. at 27.) But the provision does not need to mention state laws to have a preemptive effect, because the relevant field of regulation is futures and derivatives, and courts have repeatedly held that the CEA preempts any state law within that field. *See Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F. Supp. 202, 205-06 (N.D. Ala. 1981) (holding that state gambling statute purporting to void all futures transactions in which delivery of the commodity was not intended was preempted by federal statutory scheme and would destroy the commodities market in Alabama); *Leist v. Simplot*, 638 F.2d 283, 304 (2d Cir. 1980) (reflecting that, despite attacks on "gambling" in the grain trade, Congress consistently recognized the benefits of legitimate speculation and trade). Further, it is also readily apparent from the savings clause in that same section that Congress intended the exclusive jurisdiction provision to preempt some state law. *See also Flaherty*, 2025 WL 1218313, at *5-6 (citing 7 U.S.C. § 2(a)(1)(A)).

the ordinary working of conflict pre-emption principles.'"); *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287-89 (1995) (same).  As the First Circuit has noted, "the fact that an express definition of the pre-emptive reach of a statute 'implies'—i.e., supports a reasonable inference—that Congress did not intend to pre-empt other matters does not mean that the express clause entirely forecloses any possibility of implied pre-emption." *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 78 (1st Cir. 1997).  Here, the language "exclusive jurisdiction" easily overcomes such an inference.

*Third*, neither the Special Rule nor 17 C.F.R. § 40.11 incorporates state gambling law. (Opp. at 28.)  The Special Rule expressly states that the CFTC "***may*** determine" that certain transactions proposed for trading on DCMs are "contrary to the public interest" if they involve "activity that is unlawful under any Federal or State law."  7 U.S.C. § 7a-2(c)(5)(C)(i) (emphasis added).  By using permissive "may" language, the Special Rule does not incorporate state gambling laws; instead, it gives the CFTC discretion to consider such laws in making its public interest determinations.  The same is true for 17 C.F.R. § 40.11, which sets out the CFTC's "case-by-case" review process for determining whether proposed transactions should be barred by the Special Rule.  Commodity Futures Trading Comm'n, *Provisions Common to Registered Entities*, 76 Fed. Reg. 44,776, 44,785-86 (July 27, 2011) (adopting 17 C.F.R. § 40.11).  Thus, the Special Rule and 17 C.F.R. § 40.11 are not categorical bars on transactions that may involve activity that violates state law; these provisions merely acknowledge that state law is a legitimate consideration in the CFTC's public interest determinations.

### C.    Applying Massachusetts Laws to Transactions on DCMs Conflicts with the Special Rule.

Because Massachusetts sports-wagering laws are field-preempted, the Court need not consider conflict preemption.  *See Hendrick*, 2025 WL 1073495, at *6 n.6 (reflecting that where state law is field-preempted, the Court "need not address conflict preemption").  Nevertheless,

Massachusetts sports-wagering laws are also conflict-preempted, despite Defendants' argument that such laws present no obstacle to the CEA's purpose. (Opp at 31.)

The essence of conflict preemption "is that the federal government would want a federal measure to be preemptive of any state law that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of that federal measure." *Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9, 26 (1st Cir. 2019) (internal quotations omitted). By granting the CFTC "exclusive jurisdiction" over transactions on DCMs, Congress expressly intended to exclude all other attempts to regulate transactions on those exchanges, including Defendants' threatened enforcement of Massachusetts sports-wagering laws. *See DGM Invs., Inc. v. New York Futures Exch., Inc.*, No. 01 Civ. 11602 (RWS), 2002 WL 31356362, at *5 (S.D.N.Y. Oct. 17, 2002) ("[T]he structure and history of the CEA indicate that the propriety of conflict preemption depends upon the particular context in which a plaintiff seeks to bring a state law action. When application of state law would directly affect trading on or the operation of a futures market, it . . . is preempted."). The statutory design and legislative history of the CEA also show that "Congress intended to subject" commodity futures and derivatives "to only one set of regulations." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 99 (1992). Thus, Congress has already determined that subjecting Robinhood to disparate regulations across all 50 states would present an obstacle to the CFTC's exclusive jurisdiction under the CEA.

Further, as noted above, the Special Rule gives the CFTC authority to prohibit event contracts that may violate state law, and it has not exercised that authority with respect to sports-related event contracts. 7 U.S.C. § 7a-2(c)(5)(C)(i); 17 C.F.R. § 40.11(a)(1). If Defendants are permitted to enforce Massachusetts sports-wagering laws against Robinhood for offering contracts permitted by the CFTC, there would be a direct conflict between federal and state regulation. *See*

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000) (conflict preemption exists where state law "undermines the congressional calibration of force" and is "at odds with achievement of the federal decision").

### D.    Interstate Sports-Gambling Laws Are Irrelevant to Robinhood's Claims.

Finally, Defendants set up a strawman mischaracterization of Robinhood's construction of the CEA as "overbroad." (Opp. at 24.) Not so. Robinhood does not argue that the CEA (or any of its amendments) legalized interstate sports gambling. (*Id.*) Indeed, federal sports-gambling laws are irrelevant to the claims presented here and are entirely compatible with the CEA.

*First*, federal sports-gambling statutes, such as the Interstate Wire Act ("the Wire Act"), the Interstate Horseracing Act, and the Indian Gaming Regulatory Act ("IGRA"), are irrelevant. The CEA does not concern sports wagers, and there is no evidence that Congress intended to disrupt the federal sports-gambling landscape by amending the CEA. *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("When two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."). In 1974, Congress amended the CEA to establish the CFTC's exclusive jurisdiction over commodity futures and derivatives trading to ensure a unified system of regulation over these transactions. (*See* Mot. at 10.) In 2000, the CEA was amended to include the term "excluded commodity." *See* Commodity Futures Modernization Act of 2000, Pub. L. No. 106-554, app. E, § 101, 114 Stat. 2763A-365, 2763A-371 (2000) (adding 7 U.S.C. § 1a(13)). In the 2010 Dodd-Frank Act amendments, Congress brought "swaps" within the CFTC's exclusive jurisdiction to restore its authority over swaps and require their trading on DCMs. (*See* Mot. 10-11.)

Unlike these CEA amendments, federal sports-gambling statutes regulate non-tradeable interstate sports bets or wagers that take place *outside* DCMs.[25]  For example, the Wire Act, 18 U.S.C. §§ 1081-1084, passed in 1961 as part of a broader effort to combat organized crime, and the Interstate Horseracing Act, 15 U.S.C. §§ 3001-3007, designed to protect struggling horseracing tracks, remain completely intact and have nothing to do with the conduct at issue here because federally regulated event contracts do not involve placing "bets or wagers."  18 U.S.C. § 1084(a); *see also* 15 U.S.C. § 3002(3) (defining "interstate off-track wager").[26]  Similarly, IGRA, 25 U.S.C. §§ 2701-2721, regulates conduct on Indian lands only; online conduct is covered by separate federal statutes like the Unlawful Internet Gambling Enforcement Act ("UIGEA").[27]  *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 (2014) ("Everything—literally

---

[25] Robinhood is also not arguing, and no one in the industry believes, that sports bets are regulated derivatives. (Opp. at 24 n.6.)  Defendants fail to identify any CFTC enforcement action arising from bets taken at a sports book or any statement by the CFTC suggesting it would view such bets as within its regulatory authority.  It is not the case that if sports-related event contracts are swaps or contracts in excluded commodities, then so too are sports wagers.  The CEA's purpose is to create "a system of effective self-regulation of trading facilities, clearing systems, market participants and market professionals under the oversight of the [CFTC]".  7 U.S.C. § 5(b).  Because the CEA concerns market integrity, the CEA covers *tradeable* products.  *See* 77 Fed. Reg. 48,208, 48,217, 48,248 (Aug. 13, 2012) (describing swaps as instruments "traded on organized markets and over the counter" and distinguishing swaps from consumer and commercial arrangements on the basis that the latter are not traded).  Sports bets are not regulated derivatives because they are not tradeable.  Moreover, 7 U.S.C. § 16(e)(1)(B) confirms that the CEA does not displace states' regulatory power over transactions that are not conducted on DCMs.

[26] *See* President John F. Kennedy, *Remarks Upon Signing Bills to Combat Organized Crime and Racketeering*, Sept. 13, 1961 (referring to S. 1656, PL 87-216) ("It is a pleasure to sign these three important bills which we hope will aid . . . in the fight against organized crime."); 15 U.S.C. § 3001(b) ("[T]he policy of Congress in this chapter is . . . to further the horseracing and legal off-track betting industries in the United States.").

[27] IGRA's territorial focus is evident from the statute's text, including the phrase "on Indian lands," which appears in nearly every section. 25 U.S.C. § 2701 *et seq.*; *see also State of California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 967 (9th Cir. 2018) (finding that "bet or wager initiated through the internet" is subject to UIGEA, not IGRA); *Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*, 133 F.3d 1087, 1093 (8th Cir. 1998) (online advertising outside of tribal land "cannot be said to constitute non-Indian use of Indian land").

everything—in IGRA affords tools (for either state or federal officials) to regulate gaming on Indian lands, *and nowhere else*." (emphasis added)).

*Second*, UIGEA, 31 U.S.C. §§ 5361-5367, is easily harmonized with the CEA.  UIGEA covers online gaming between states and on tribal lands that is unlawful in one location (where the bet is made or received) but not another, 31 U.S.C. § 5362(10), and expressly carves out from its regulation "any transaction conducted on" a CFTC-designated exchange, *id.* § 5362(1)(E)(ii). With the UIGEA carveout, Congress expressly reconciled federal gambling statutes with the CEA.

Accordingly, none of the federal laws cited by Defendants—the Wire Act, UIGEA, the Interstate Horseracing Act, or IGRA—were impliedly repealed by the CEA.  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow" (internal citation omitted)).[28] Defendants' invocation of the Special Rule does not change this fact.  (Opp. at 25.)  Rather, the Special Rule allows the CFTC to prohibit certain transactions proposed for trading on DCMs as "contrary to the public interest," including because they involve "activity that is unlawful under any Federal or State law."  7 U.S.C. § 7a-2(c)(5)(C)(i); 17 C.F.R. § 40.11(a)(1).  Thus, the CEA does not undermine or override federal sports-gambling laws; the statutes plainly operate together.

## II.    ROBINHOOD WILL BE IRREPARABLY HARMED IF DEFENDANTS ARE PERMITTED TO ENFORCE PREEMPTED STATE GAMBLING LAWS.

Given the threat that Defendants will act to enforce preempted state law, Robinhood cannot avoid irreparable harm without a preliminary injunction.  The threatened enforcement action

---

[28] Moreover, even if they were in conflict (and they are not), the CEA, as amended by the Dodd-Frank Act in 2010, is both the later-enacted and more specific statute and therefore would control. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976); *see also United States v. Estate of Romani*, 533 U.S. 517, 518 (1998).

creates a Catch-22: If Robinhood continues offering access to event contracts in Massachusetts, it will likely face prosecution. If Robinhood stops offering access to event contracts, it will lose the confidence, business, and goodwill of customers in Massachusetts who rely on Robinhood's services. Such losses cannot readily be remedied with damages and, even if they could, sovereign immunity bars Robinhood from collecting lost profits from Massachusetts under any circumstances. *See Alden v. Maine*, 527 U.S. 706, 712-13 (1999); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs.").

It is not the case, as Defendants suggest, that future enforcement of preempted state laws cannot be irreparable harm and is merely part of the "social burden of living under government." (Opp. at 32 (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980), and *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118 (D.D.C. 2017)).)[29] Being compelled to comply with a preempted law constitutes irreparable harm. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses—there is no

---

[29] In *Standard Oil*, which is not a preemption case, an oil company argued that it would be irreparably harmed by having to defend itself in "protracted adjudicatory proceedings" unless the action was subject to judicial review. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980). The Supreme Court explained that "the expense and annoyance of litigation is part of the social burden of living under government." *Id.* Defendants use this to argue that the *risks* of litigation are part of this social burden, but that is not the holding of *Standard Oil.* Further, unlike the injunction in *12 Percent Logistics*, where there was the "mere possibility of some future enforcement action" for violations "yet to occur," the alleged violation here has already occurred, and Massachusetts will almost certainly enforce its laws absent an injunction—indeed, the need to do so is the thrust of its public interest argument. 280 F. Supp. 3d at 122.

adequate remedy at law."). An injunction is the only means of avoiding imminent, irreparable harm to Robinhood.

## III.    DEFENDANTS AND THE PUBLIC HAVE NO INTEREST IN THE ENFORCEMENT OF PREEMPTED STATE LAWS.

Finally, the equities tip sharply in Robinhood's favor. Massachusetts and the public can have no interest in enforcing preempted state laws. *See Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. of P.R.*, 437 F. Supp. 3d 119, 137 (D.P.R. 2020) ("Just as a government has no interest in enforcing an unconstitutional law, the public interest is harmed by the enforcement of laws repugnant to the United States Constitution"). Moreover, the public interest weighs in favor of maintaining the status quo. *See CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995).

As it stands, Robinhood's customers in Massachusetts, and throughout the United States, access, via Robinhood, event contacts on DCMs. Robinhood's customers' trading activity is conducted pursuant to (and in reliance on) the centralized regulatory regime Congress enacted in the CEA. Through that framework, Congress brought event contracts under a unified set of regulations to avoid "the possibility that another State would have different rules than not only [] the CFTC, but other States." *Hendrick*, 2025 WL 1073495, at *7. By enacting the CEA, Congress has decided that the public interest is best served by centralized, exclusive regulation of transactions on DCMs.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion to dismiss and grant Plaintiff Robinhood's motion for a preliminary injunction.

DATED: October 23, 2025

Respectfully submitted,

By:   */s/ Nicholas J. Schneider*

**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**

Craig Waksler (BBO No. 566087)
cwaksler@eckertseamans.com
Nicholas J. Schneider (BBO No. 688498)
nschneider@eckertseamans.com

2 International Place #1600
Boston, Massachusetts 02110
Telephone: (617) 342-6800
Facsimile: (617) 342-6899

**CRAVATH, SWAINE & MOORE LLP**

Kevin J. Orsini (*pro hac vice*)
korsini@cravath.com
Antony L. Ryan (BBO No. 629971)
aryan@cravath.com
Brittany L. Sukiennik (*pro hac vice*)
bsukiennik@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

***Counsel for Plaintiff***
***Robinhood Derivatives, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that, on October 23, 2025, I electronically filed the foregoing Memorandum Of Points And Authorities In Support Of Plaintiff Robinhood's Opposition To Defendants' Motion To Dismiss Or Stay Proceedings And Reply In Support Of Plaintiff's Motion For Preliminary Injunction, with the Clerk of the Court by using the Court's CM/ECF system, and accordingly served the parties who receive notice of the filing via the Court's CM/ECF system.


*/s/ Nicholas J. Schneider*

Nicholas J. Schneider