THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBINHOOD DERIVATIVES, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, et al.,<br><br>*Defendants*. | Civil Action No. 1:25-cv-12578-RGS |

## PLAINTIFF ROBINHOOD'S RESPONSE TO BRIEF OF AMICI CURIAE

Plaintiff Robinhood Derivatives, LLC ("Robinhood") respectfully submits this response to the brief of Amici Curiae Indian Gaming Association et al.[1] (ECF No. 54 (the "Tribal Amici Brief").) If the Court considers Tribal Amici's brief, Robinhood respectfully requests that the Court consider the following points in response, which respond to issues that Robinhood does not address in its Memorandum of Points and Authorities in Support of Plaintiff Robinhood's Opposition to Defendants' Motion To Dismiss or Stay Proceedings and Reply in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 62 (the "Reply")) or its Notice of Responsive Supplemental Authority (ECF No. 63 (the "Notice")).[2]

---

[1] "Tribal Amici" has the same meaning here as assigned to it by Amici. (*See* Tribal Amici Brief at 1.) Capitalized terms not defined here have the same meaning as in Robinhood's Motion for a Preliminary Injunction. (ECF No. 10.)

[2] The sections of the Amici Brief that are addressed in the Reply and the Notice are Sections I.A.1, I.A.4, I.B, I.C, and II.

Simply put, the Indian law issues raised in the Tribal Amici Brief are irrelevant to the issues in this case. Neither Robinhood nor Defendants have raised Indian law issues in their claims or defenses or in their briefs. "Among the concerns with allowing the participation of amici are . . . creating side issues not generated directly by the parties . . . ." *Portland Pipe Line Co. v. City of South Portland*, No. 2:15-cv-00054-JAW, 2017 WL 79948, at *5 (D. Me. Jan. 9, 2017); *Doe v. Trump*, 766 F. Supp. 266, 271 n.2 (D. Mass. 2025) ("The Court has considered [amicus curiae briefs] only insofar as they concern legal issues and positions advanced by the parties."); *United States v. Richmond Joseph*, No. 19-CR-10141-LTS, 2020 WL 4288425, at *2 n.2 (D. Mass. July 27, 2020) ("[T]he Court has disregarded any challenges articulated by amici but not advanced by either defendant."); *see also United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 6 (1st Cir. 1996) ("[A]n amicus cannot introduce a new argument into a case."); 4 Am. Jur. 2d, Amicus Curiae § 12 ("[A]n amicus curiae ordinarily cannot inject new issues into a case which have not been presented by the parties."). And the Tribal Amici Brief is further untethered from this case because Tribal Amici make no reference to any Massachusetts interest or property.

Accordingly, the Court should disregard the Indian law issues raised in the Tribal Amici Brief. In the event that the Court does wish to consider those Indian law issues, Robinhood provides this short response to show that they are without merit.

## I. IGRA IS NOT RELEVANT TO THE ISSUES IN THIS ACTION

Tribal Amici argue that the Indian Gaming Regulatory Act ("IGRA") governs Robinhood's conduct on Indian lands. (Amici Brief at 3-20.) However, IGRA is irrelevant to the issues presented in the above-captioned action. Robinhood seeks to enjoin Defendants' enforcement of Massachusetts sports wagering laws, which attempts in effect to regulate Robinhood's involvement in transactions involving event contracts on a CFTC-designated contract market. (ECF No. 1 at 26-27.) The issue in this action is whether Defendants'

threatened enforcement of Massachusetts law is preempted by the CEA and the CFTC's regulations. (*Id.* ¶¶ 65-71.) IGRA has no bearing on this issue because (i) IGRA regulates gaming on Indian lands only, (ii) Robinhood's conduct does not take place on Indian lands and therefore also is not "Class III gaming activities" under IGRA, and (iii) the Massachusetts gaming laws that Defendants seek to enforce do not apply on Indian lands.

*First*, IGRA regulates the conduct of gaming activity on Indian lands only. *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 (2014) ("Everything—literally everything—in IGRA affords tools (for either state or federal officials) to regulate gaming on Indian lands, *and nowhere else*." (emphasis added)). Its territorial focus is evident from the language of the statute, including the use of the phrase "on Indian lands" in nearly every section. 25 U.S.C. § 2701 *et seq.*

*Second*, Robinhood's activities are not covered by IGRA because these activities do not take place "on Indian lands." Congress's concern in IGRA was the operation of gaming businesses occurring on tribes' physical territory, such as casinos and bingo halls. *See, e.g.*, *id.* § 2710(b)(3) (referring to revenues from gaming "conducted or licensed by any Indian tribe"). Tribal Amici argue that "when an individual that is physically located on Indian lands places or initiates a bet or wager, even if that bet or wager is placed via the internet, that bet or wager takes place on Indian lands," so "offering and trading contracts to those physically located on Indian lands is activity that occurs on Indian lands for purposes of IGRA." (Amici Brief at 20 n.18.) Tribal Amici are wrong. Robinhood does not operate any business on any tribe's physical territory, and conduct physically occurring off-reservation does not become activity "on Indian lands" when, as here, a commercial service is simply accessible to tribal members and non-Indians, even when on Indian lands, over the Internet. *See California v. Iipay Nation of Santa*

*Ysabel*, 898 F.3d 960, 964 n.6 (9th Cir. 2018) ("We note that Congress passed IGRA in 1988—a few years before the internet became publicly available. . . . [T]he statute nowhere referenced the internet, or other networking capabilities that reach beyond Indian lands."); *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087, 1093 (8th Cir. 1998) (online advertising outside of tribal lands "cannot be said to constitute non-Indian use of Indian land"). As explained below, it is the Unlawful Internet Gaming Enforcement Act of 2006 ("UIGEA"), and not IGRA, that addresses where allegedly unlawful internet gaming is deemed to occur. *See infra* Section II; 31 U.S.C. § 5362(10) (defining "unlawful internet gambling" to mean "plac[ing], receiv[ing], or otherwise knowingly transmit[ting] a bet or wager by any means which involves the use, at least in part, or the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made"). Robinhood's activities therefore are not "Class III gaming activities" under IGRA. *See* 25 U.S.C. § 2710(d)(1) (listing conditions for when "Class III gaming activities" are lawful "on Indian lands").

*Third*, the Massachusetts sports wagering law at issue does not apply on Indian lands. *See Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1031 (9th Cir. 2022) ("[S]tates generally lack the power to regulate tribes . . . ."); *see also McClanahan v. State Tax Commission of Ariz.*, 411 U.S. 164, 170-71 (1973) ("State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply."). Therefore, Defendants, in seeking to enforce Massachusetts sport wagering law, cannot intend to reach conduct covered by IGRA, and Robinhood's request for an injunction to prevent such enforcement necessarily has nothing to do with IGRA.

4

Robinhood's conduct takes place, and Massachusetts sports wagering laws operate, only *outside* Indian lands, while IGRA only has application *on* Indian lands. Tribal Amici therefore address a legal regime that is irrelevant to the issues in this action.

## II.     THERE IS NO CONFLICT BETWEEN IGRA AND THE CEA.

Tribal Amici purport to identify a conflict between IGRA and the CEA, but the CEA does not "repeal the applicability of," "supersede," or "impliedly repeal" IGRA. (Amici Brief at 3-18.) On the one hand, the CEA provides that the CFTC has "exclusive jurisdiction" over transactions involving event contracts, which are swaps or contracts in excluded commodities, "traded or executed on a [CFTC-designated] contract market." 7 U.S.C. § 2(a)(1)(A); (*see also* ECF No. 11 at 2-6.) On the other hand, IGRA regulates the conduct of gaming activity on Indian lands. *See* 25 U.S.C. § 2702(1) (declaring IGRA's purpose to be, among others, "to provide a statutory basis for the operating of gaming by Indian tribes    "). IGRA generally gives tribes regulatory authority over gaming on "Indian lands," subject to a defined interaction between tribes, the states, the Secretary of the Interior, and the National Indian Gaming Commission. But Congress's grant to the CFTC of "exclusive jurisdiction" over commodity futures and swap trading on CFTC-designated exchanges, 7 U.S.C. § 2(a)(1)(A), precludes an extension of IGRA to cover the same trading. IGRA and the CEA can be readily harmonized because trading on CFTC-designated exchanges is subject to the CFTC's exclusive jurisdiction and therefore cannot be covered by IGRA.

Tribal Amici mention the UIGEA. (Amici Brief at 19 & n.17 (quoting UIGEA's definition of "bet or wager").) It is UIGEA, not IGRA, that controls whether online gaming that crosses state or tribal borders is unlawful when the activity is lawful in one location (where the bet is made or received) but not the other, 31 U.S.C. § 5362(10), and UIGEA expressly carves out CFTC-regulated transactions, including those at issue here, *id.* § 5362(1)(E)(ii) (defining "bet

5

or wager" to exclude "any transaction conducted on or subject to the rules of a registered entity or exempt board of trade under the [CEA]"). With the UIGEA carveout, Congress made clear how to reconcile all three statutes (the CEA, IGRA and UIGEA) by carving out CEA-regulated transactions from the federal prohibition on online gaming crossing into a state or Indian lands where the gaming activity is unlawful. Interpreting IGRA to encroach on event contract trading on CFTC-designated exchanges would impermissibly override the UIGEA carveout.

### III.    NEITHER THE CEA NOR THE CFTC'S REGULATIONS VIOLATE THE NONDELEGATION DOCTRINE.

*First*, Tribal Amici misunderstand Robinhood's role as an FCM and its relationship with Kalshi; they argue that the CEA's self-certification provisions "violate[] the nondelegation doctrine, which guards precisely the type of unchecked, privately exercised regulatory power that Robinhood relies on to list and trade its sports event contracts on Kalshi's exchange." (Amici Brief at 10-11.) Robinhood does not list or trade sports-related event contracts on Kalshi's DCM. Robinhood, as an FCM, intermediates its customers' event contract trades on Kalshi's exchange, and only Kalshi self-certifies the contracts it lists on its DCM with the CFTC. (*See* ECF No. 13 ¶¶ 3-6.)

*Second*, the CEA's self-certification provisions and the CFTC's regulations do not violate any nondelegation doctrine. (Amici Brief at 10-13.) The CEA's self-certification provisions involve some delegation of regulatory authority to DCMs as private entities; however, DCMs are highly regulated and heavily supervised by the CFTC. *See Alpine Secs. Corp. v. Fin. Indus. Reg. Auth.*, 121 F.4th 1314, 1325 (D.C. Cir. 2024) ("[T]he private nondelegation doctrine . . . requires that a private entity statutorily delegated a regulatory role be supervised by a government actor."); *KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575, ECF No. 18 at 5-7 (D. Nev. filed March 28, 2025) (explaining comprehensive regulations Kalshi must comply with as a DCM).

6

With respect to the self-certification and listing process, DCMs, as private entities, submit to the CFTC the information required for self-certification, 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2(a), but it is the CFTC that regulates by deciding whether a new self-certified contract may be listed for trading on a DCM, 7 U.S.C. § 7a-2(c)(5)(B).

## IV.  FEDERAL INDIAN POLICY IS SET BY CONGRESS.

Tribal Amici make several policy arguments concerning the potential impact of Robinhood's actions on Indian tribes and tribal governments.  (Amici Brief at 21-23.)  However, these policy arguments are best addressed to Congress, which legislated in this area in IGRA, UIGEA and the CEA and which can amend these statutes to address policy concerns if it deems necessary.  *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) ("[W]e possess neither the expertise nor the prerogative to make policy judgments.  Those decisions are entrusted to our Nation's elected leaders . . . .").  Downstream implications notwithstanding, Congress, through the CEA, granted the CFTC exclusive jurisdiction to regulate transactions involving sports-related event contracts traded on a DCM and thereby preempted enforcement of state law that purports to regulate such transactions.  7 U.S.C. § 2(a)(1)(A).

DATED:  October 24, 2025

        Respectfully submitted,

        By:  */s/ Nicholas J. Schneider*

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

Craig Waksler (BBO No. 566087)
cwaksler@eckertseamans.com
Nicholas J. Schneider (BBO No. 688498)
nschneider@eckertseamans.com

2 International Place #1600
Boston, Massachusetts 02110
Telephone:  (617) 342-6800
Facsimile:  (617) 342-6899

**CRAVATH, SWAINE & MOORE LLP**

Kevin J. Orsini (*pro hac vice*)
korsini@cravath.com
Antony L. Ryan (BBO 629971)
aryan@cravath.com
Brittany L. Sukiennik (*pro hac vice*)
bsukiennik@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Counsel for Plaintiff*
*Robinhood Derivatives, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 24, 2025, I electronically filed the foregoing Proposed Response to Brief of Amici Curiae with the Clerk of the Court by using the Court's CM/ECF system, and accordingly served the parties who receive notice of the filing via the Court's CM/ECF system.

*/s/ Nicholas J. Schneider*

Nicholas J. Schneider