# THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBINHOOD DERIVATIVES, LLC<br><br>        *Plaintiff*,<br><br>v.<br><br>ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, et al.,<br><br>        *Defendants*. | Civil Action No. 1:25-cv-12578 |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ROBINHOOD'S MOTION FOR RECONSIDERATION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................3

LEGAL STANDARD..............................................................................................................4

ARGUMENT ........................................................................................................................5

I.      CONTROLLING AUTHORITY CONFIRMS ROBINHOOD'S CLAIM IS RIPE,
        AND THE COURT'S CONTRARY CONCLUSION WAS A CLEAR ERROR OF
        LAW. ...................................................................................................................5

        A.      Controlling Authority Clearly Establishes that Robinhood's
                Pre-Enforcement Challenge Is Ripe Because There is A Substantial Risk
                of Enforcement Against Robinhood. .......................................................5

        B.      Robinhood's Claim Is Not Contingent on the Outcome of the Kalshi State-
                Action and Is Ripe Notwithstanding the Temporary Stipulation of Non-
                Enforcement.......................................................................................11

II.     THE COURT SHOULD CONSIDER NEW EVIDENCE NOT PREVIOUSLY
        AVAILABLE...........................................................................................................15

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

*Abdelrasoul v. Trs. of Boston Univ.*,
791 F. Supp. 3d 256 (D. Mass. 2025) ......................................................................5

*Anderson v. City of Bessemer City*,
470 U.S. 564 (1985)..................................................................................................4

*Antony v. Duty Free Ams., Inc.*,
705 F. Supp. 2d 112 (D. Mass. 2010) ......................................................................4

*Aybar v. Crispin-Reyes*,
118 F.3d 10, 16 (1st Cir. 1997) ................................................................................4

*Babbitt v. Farm Workers*,
442 U.S. 289 (1979)..................................................................................................8

*Bennett v. Saint-Gobain Corp.*,
507 F.3d 23 (1st Cir. 2007)....................................................................................18

*Biltcliffe v. CitiMortgage, Inc.*,
772 F.3d 925 (1st Cir. 2014)....................................................................................4

*Commonwealth of Massachusetts v. KalshiEx LLC*,
No. 2584-CV-02525 (Mass. Super. Ct. filed Sept. 12, 2025)..............................1, 7

*Doe v. Bolton*,
410 U.S. 179 (1973)..................................................................................................8

*Geneva Coll. v. Sebelius*,
929 F. Supp. 2d 402 (W.D. Pa. 2013)...............................................................15, 17

*In re Neurontin Mktg. & Sales Practices Litig.*,
799 F. Supp. 2d 110 (D. Mass. 2011) ......................................................................5

*Jensen v. R.I. Cannabis Control Comm'n*,
No. 25-1132, 2025 WL 3280840, at *4-6 (1st Cir. Nov. 25, 2025) ..........................7

*Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v, Healey*,
844 F.3d 318 (1st Cir. 2016)...............................................................................12, 13

*Love v. Pence*,
47 F. Supp. 3d 806 (S.D. Ind. 2014) ......................................................................18

*McInnis-Misenor v. Me. Med. Ctr.*,
319 F.3d 63 (1st Cir. 2003)....................................................................................15

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)................................................................................................6

*N.H. Lottery Comm'n v. Rosen*,
   986 F.3d 38 (1st Cir. 2021) ............................................................... passim

*Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*,
   490 F. Supp. 2d 184 (D.N.H. 2007)......................................................4

*Parker Waichman LP v. Salas LC*,
   322 F.R.D. 436 (D.P.R. 2017) ...............................................................5

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024)................................................................. passim

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*,
   199 F.3d 26 (1st Cir. 1999) ................................................................. passim

*Raymond v. Raymond Corp.*,
   938 F.2d 1518 (1st Cir. 1991)................................................................5

*Reddy v. Foster*,
   845 F.3d 493 (1st Cir. 2017)...............................................................9, 10

*Richards v. Jefferson County*,
   517 U.S. 793 (1996)..............................................................................11

*S. Cal. Alliance of Publicly Owned Treatment Works v. EPA*,
   No. 2:14-cv-01513, 2015 WL 5435910 (E.D. Cal. Sept. 15, 2015) ......................18

*Sanchez Rodriguez v. Departamento de Correccion y Rehabilitacion*,
   537 F. Supp. 2d 295 (D.P.R. 2008)........................................................4

*Steffel v. Thompson*,
   415 U.S. 452 (1974)................................................................................8

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)......................................................................... passim

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985)................................................................................6

*Younger v. Harris*,
   401 U.S. 37 (1971)................................................................................13

**Statutes & Rules**

Commodity Exchange Act ...............................................................................................7

Fed. R. Civ. P. 15(d) ............................................................................................................2

Fed. R. Civ. P. 59(e) ...........................................................................................................4

Massachusetts General Laws Chapter 23N..........................................................................9

## PRELIMINARY STATEMENT

On November 13, 2025, the Court granted Massachusetts's motion to dismiss, holding that Robinhood's action was not ripe and dismissing Rf15obinhood's complaint without prejudice. (ECF No. 69 ("Order").)  Robinhood respectfully submits that the Court should reconsider its Order on two separate grounds—to correct clear errors of law and to account for new evidence that was unavailable at the time of its issuance.

*First*, the Court failed to consider controlling Supreme Court and First Circuit authority that establishes that pre-enforcement challenges are ripe for adjudication where, as here, there is a credible threat of prosecution.  Indeed, given that the Commonwealth is currently prosecuting Kalshi for the same conduct in which Robinhood is engaged (*i.e.*, the offer of sports-related event contracts), Robinhood's claim is even stronger than those of plaintiffs whose claims were found ripe where there had not yet been an enforcement proceeding against anyone for the relevant conduct, and where in many of the cases the federal court plaintiff had not yet even undertaken the conduct that could lead to state enforcement.  The Court's failure to consider this binding precedent was a clear error of law.  (*See infra* Section I.A.)

The ongoing state court litigation against Kalshi, along with the temporary stipulation of non-enforcement the Commonwealth has offered here, do nothing to change this analysis.  The Stipulation of Non-Enforcement at issue here, which forestalls enforcement pending the state court's resolution of the Commonwealth's motion for preliminary injunction in *Commonwealth of Massachusetts v. KalshiEx LLC*, No. 2584-CV-02525 (Mass. Super. Ct. filed Sept. 12, 2025) (the "Kalshi State-Court Action"), is only temporary.  By its express terms, it does not bar any enforcement proceeding the Commonwealth may bring against Robinhood.  If the Commonwealth loses its PI motion against Kalshi, nothing prevents the Commonwealth from bringing an enforcement action against Robinhood.  And if the Commonwealth wins the PI motion against

Kalshi, Robinhood still faces an imminent risk of enforcement for past conduct and/or its offer of sports-related event contracts on other exchanges (described below).  Robinhood's harm is thus not "contingent" on the Kalshi State-Court Action, and under binding First Circuit precedent the Court erred in considering that separate proceeding (to which Robinhood is not a party) in its ripeness analysis.  (*See infra* Section I.B.)

*Second*, newly developed facts additionally establish that the Court's conclusion that the risk of enforcement against Robinhood is contingent on the outcome of the Kalshi State-Court Action is incorrect, and Robinhood's action is therefore indisputably ripe.  As of November 17, 2025, Robinhood began offering sports-related event contract trading to its customers through another designated contract market ("DCM"), ForecastEx LLC ("ForecastEx"), in addition to Kalshi.  Moreover, the Massachusetts Gaming Commission ("Commission") recently confirmed in a November 13, 2025 letter to its sports-wagering licensees that it intends to enforce state sports-wagering laws against entities that "offer sports-related event contracts in Massachusetts or direct patrons to such event contracts being offered in Massachusetts." (Declaration of Kevin J. Orsini in Support of Plaintiff Robinhood's Motion for Reconsideration ("Orsini Decl."), Ex. A, Letter from D. Serpa to Sports Wagering Licensees (Nov. 13, 2025) (the " November 13 Letter") at 1 (licensees are "prohibited from offering sports-related event contracts in Massachusetts" and "the Commission may take steps up to and including revocation of [their] license" for violations).) These new pieces of evidence further require reconsideration of the Court's Order and a finding that Robinhood's claim is ripe for adjudication.  Should the Court grant Robinhood's Motion, Robinhood will move for leave to supplement its Complaint to include this new evidence.  *See* Fed. R. Civ. P. 15(d).  (*See infra* Section II.)

**BACKGROUND**

The relevant procedural history in (i) the above-captioned action (the "Robinhood Action") and (ii) the Kalshi State-Court Action is as follows:

- On September 12, 2025, Massachusetts filed its complaint against Kalshi for allegedly "offering sports wagering without a license in violation of [state sports-wagering laws]." (*Robinhood Action*, ECF No. 1, Ex. 1 ¶ 1.) That same day, Massachusetts moved for a preliminary injunction in the Kalshi State-Court Action. (*Id.*, ECF No. 1, Ex. 2.)

- On September 15, 2025, Robinhood filed its Complaint in the Robinhood Action. (*Id.*, ECF No. 1.)

- On September 18, 2025, Robinhood moved for a preliminary injunction in the Robinhood Action (*Id.*, ECF Nos. 10-14), which was briefed simultaneously with Defendants' motion to dismiss (*id.*, ECF No. 32).

- On September 26, 2025, Massachusetts filed a Stipulation of Non-Enforcement in the Robinhood Action. (*Id.*, ECF No. 29.)

- On November 12, 2025, the Court heard argument on Robinhood's preliminary injunction motion and Defendants' motion to dismiss the Robinhood Action. (*Id.*, ECF No. 68.)

- On November 13, 2025, the Court granted Massachusetts's motion to dismiss, holding that Robinhood's action was not ripe and dismissing Robinhood's complaint without prejudice, and denied Robinhood's motion for preliminary injunction as moot. (ECF No. 69, "Order.")

The facts relevant to the instant motion can be summarized briefly. As the Court is aware, Robinhood offers its customers the opportunity to trade sports-related event contracts through the Robinhood platform. While Robinhood facilitates the placement and liquidation of event contracts for its customers, the contracts themselves are traded on a DCM. Prior to November 17, the sports-related event contracts Robinhood made available to its customers were traded solely on Kalshi's DCM. As of November 17, however, Robinhood also offers trading of sports-related event contracts on another DCM, ForecastEx. (Declaration of Adam Hickerson in Support of Plaintiff

Robinhood's Motion for Reconsideration ("Hickerson Decl.") ¶ 6.)  Like Kalshi, ForecastEx is a CFTC-designated contract market.  (*Id.*)

The temporary stipulation of non-enforcement, which Defendants have offered Robinhood while the Commonwealth's motion for preliminary injunction is pending in the Kalshi State-Court Action, covers only event contract transactions that Robinhood executes on Kalshi's DCM and does ***not*** apply to event contract transactions that Robinhood executes on other DCMs, such as ForecastEx.[1]

## LEGAL STANDARD

Rule 59(e) governs motions for reconsideration of appealable orders.  *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) (citation omitted).  Under a Rule 59(e) motion for reconsideration, "a district court may . . . grant a party's motion for reconsideration in any of three situations:  (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice."  *Sanchez Rodriguez v. Departamento de Correccion y Rehabilitacion*, 537 F. Supp. 2d 295, 297 (D.P.R. 2008); *see also Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014).

A court's decision is a clear error of law if it is not "plausible in light of the record viewed in its entirety."  *Antony v. Duty Free Ams., Inc.*, 705 F. Supp. 2d 112, 114 (D. Mass. 2010) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).  Failing to apply binding authority is a clear error of law.  *See Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 490 F. Supp.

---

[1] The non-enforcement stipulation provides:  "The Commonwealth shall not initiate or maintain any civil or criminal enforcement action against Robinhood based on Robinhood's facilitation of Massachusetts customers' orders in sports-related event contracts ***listed and executed on Kalshi's designated contract market*** until after (1) a court reaches a decision on the pending motion for preliminary injunction in the Kalshi enforcement proceedings, and (2) a court reaches a decision on the pending motion for preliminary injunction in this action."  (ECF No. 29 ¶ 4 (emphasis added).)

2d 184, 190-91 (D.N.H. 2007) (denying motion for reconsideration but acknowledging that failing to apply correct legal standard is a proper basis for granting a motion for reconsideration).

When new evidence is presented in a Rule 59(e) motion, a Court should consider whether it is "of such nature that it would probably change the result." *In re Neurontin Mktg. & Sales Pracs. Litig.*, 799 F. Supp. 2d 110, 113 (D. Mass. 2011) (quoting *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1527 (1st Cir. 1991)). Moving parties may present such newly available evidence through declarations and exhibits. *See, e.g.*, *Parker Waichman LP v. Salas LC*, 322 F.R.D. 436, 439 (D.P.R. 2017); *Abdelrasoul v. Trs. of Boston Univ.*, 791 F. Supp. 3d 256, 259 (D. Mass. 2025).

## ARGUMENT

### I.     CONTROLLING AUTHORITY CONFIRMS ROBINHOOD'S CLAIM IS RIPE, AND THE COURT'S CONTRARY CONCLUSION WAS A CLEAR ERROR OF LAW.

The Court found that Robinhood "has not shown that its sole federal claim (under *Ex Parte Young*) is ripe for judicial review." (Order at 4.) Robinhood respectfully submits that the Court's holding is contrary to binding Supreme Court and First Circuit precedent, and is therefore a clear error of law. *First*, the Court's decision cannot be reconciled with controlling law holding that a pre-enforcement challenge is ripe where, as here, there is a substantial risk of enforcement against the plaintiff. *Second*, the Court's holding that Robinhood's claims are not ripe in light of the pending state court litigation against Kalshi ignores this controlling law, and binding First Circuit law also makes clear that a temporary promise of non-enforcement cannot defeat ripeness. The Court should therefore reconsider its Order.

### A.     Controlling Authority Clearly Establishes that Robinhood's Pre-Enforcement Challenge Is Ripe Because There is A Substantial Risk of Enforcement Against Robinhood.

In determining Robinhood's claim was unripe for adjudication, the Court failed to consider binding Supreme Court and First Circuit case law establishing that a pre-enforcement challenge is

ripe when there is a substantial risk of future enforcement against the plaintiff. For this reason alone, the Court should reconsider its Order dismissing Robinhood's claim.

*First*, although the Court correctly acknowledged that ripeness "has its roots in [Article III's case-or-controversy] requirement" (Order at 2), it nevertheless did not take into account binding precedent on the case-or-controversy requirement under Article III in the context of a pre-enforcement challenge such as this that renders the Court's order a clear error of law. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ("*SBA List*"); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024); *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021); *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999).

In *SBA List*, an anti-abortion advocacy organization, SBA List, brought a First Amendment challenge against an Ohio statute prohibiting false statements about political candidates that the state had enforced against SBA List in a prior election cycle. 573 U.S. at 153-55. Another organization, the Coalition Opposed to Additional Spending and Taxes ("COAST"), also filed a pre-enforcement suit challenging the same statute on the ground that it intended to engage in the same conduct the state had contended was prohibited in the SBA List enforcement action. *Id.* at 155-56. The two cases were consolidated, *id.* at 155, and the Court concluded that SBA List and COAST *each* independently had standing based on the threat of future enforcement, *id.* at 166-67. The enforcement against SBA List in the prior election cycle provided a basis for the threat of future enforcement as to *both* SBA List and COAST. *Id.* at 166-67. The Court recognized that in such a pre-enforcement challenge, "the Article III standing and ripeness issues . . . 'boil down to the same question.'" *Id.* at 157 n.5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)). As to ripeness, the Court found both fitness and hardship "easily satisfied." *Id.* at 167. The Court found the case fit for adjudication because it "present[ed] an issue that [wa]s

'purely legal, and w[ould] not be clarified by further factual development.'" *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). And with respect to hardship, the Court concluded that absent adjudication, the plaintiffs would be forced to choose between refraining from the activity purportedly prohibited by the statute and the prospect of costly enforcement proceedings. *Id.* at 168.[2] Notably, the Court did not find that COAST's claim was unripe because the result of SBA List's action would moot COAST's concern about enforcement.

Here, Robinhood's position is plainly akin to COAST's—there is a credible threat of enforcement against Robinhood in light of the Commonwealth's enforcement proceeding against Kalshi for the same conduct (*i.e.*, offering sports-related event contracts). It does not matter that Robinhood is a futures commission merchant ("FCM") and Kalshi is a DCM, as those distinctions are irrelevant to the Massachusetts gambling statutes the Commonwealth seeks to enforce, and the conduct on which the Commonwealth bases its complaint against Kalshi is "offering sports wagering without a license" (Kalshi State-Court Action, Dkt. 1, Compl. ¶ 1), which applies equally to Robinhood. Indeed, Robinhood's position is even stronger than COAST's, as Robinhood is ***already engaged*** in the conduct that is purportedly prohibited. Like the plaintiffs in *SBA List*, Robinhood has asked the Court to decide a purely legal question: whether the Commodity Exchange Act ("CEA") preempts Massachusetts's sports-wagering laws as applied to event

---

[2] In Defendants' reply in support of their motion to dismiss, Defendants erroneously argued that the holding in *SBA List* is limited to the First Amendment context. (*See* ECF No. 67, at 3-5.) There is nothing in *SBA List* that limits its holding in that way, and Defendants' argument is undermined by the First Circuit cases citing *SBA List* in support of findings that pre-enforcement claims are ripe in circumstances that do not concern First Amendment challenges. (*See infra* pp. 8-9 (discussing *Rosen*, 986 F.3d at 49-53).) Indeed, as recently as November 25, 2025, the First Circuit cited *SBA List* in reversing a district court decision that had dismissed a non-First Amendment case on ripeness grounds. *Jensen v. R.I. Cannabis Control Comm'n*, No. 25-1132, 2025 WL 3280840, at *4-6 (1st Cir. Nov. 25, 2025) (reversing dismissal of a suit challenging a state statute based on the dormant Commerce Clause and the Equal Protection Clause and seeking declaratory and injunctive relief against state officials).

contracts traded on Commodity Futures Trading Commission ("CFTC")-registered exchanges. No further factual development is needed to answer this question, making the issue fit for adjudication. Moreover, much like the plaintiffs in *SBA List*, without the Court's adjudication, Robinhood is forced to choose between refraining from the challenged activity (as a result of the legal uncertainty), or facing the ongoing threat of enforcement proceedings. Notwithstanding the clear parallels between this case and *SBA List*, the Court did not consider this controlling precedent in concluding that Robinhood's claim was unripe. Had the Court followed the Supreme Court's holding in *SBA List*, it would have reached the opposite conclusion, and its failure to do so is a clear error of law.

     *Second*, the law is clear that even if Massachusetts had not yet enforced its sports-wagering law against *any* target, Robinhood's claim would be ripe because its conduct falls within the challenged statute's scope, as the Commonwealth has interpreted the statute, and thus there is a credible threat of enforcement.[3] Both the Supreme Court and the First Circuit have affirmed that the Article III case-or-controversy requirement can be satisfied by "pre-enforcement challenges to laws that ha[ve] never been enforced." *Whitehouse*, 199 F.3d at 33; *see Babbitt*, 442 U.S. at 302; *Doe v. Bolton*, 410 U.S. 179, 188 (1973). What is relevant for purposes of standing and ripeness is whether the challenged statute is reasonably interpreted to proscribe the plaintiff's current or

---

    [3] Although Robinhood already offers sports-related event contracts in Massachusetts, Robinhood need not even be actively engaged in the purportedly unlawful conduct to have a ripe claim. In the pre-enforcement context, an injury in fact requires "an *intention* to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [the existence of] a credible threat of prosecution thereunder." *SBA List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (emphasis added)); *see Rosen*, 986 F.3d at 53 (a "party's concrete plans to engage immediately (or nearly so) in an arguably proscribed activity" gives rise to a "specific legal question fit for judicial review" and "can demonstrate hardship") (internal quotations omitted). In other words, if anything, Robinhood's claim is stronger than the plaintiffs' claims in *SBA List* or *Rosen*.

planned conduct.[4]  *See Rosen*, 986 F.3d at 53 (holding dispute ripe where there was a "substantial controversy" over the meaning of the challenged statute and the government's interpretation thereof could not eliminate the "dangling sword of indictment" over the plaintiffs); *Bellows*, 92 F.4th at 50-51 (same); *Whitehouse*, 199 F.3d at 34 (same).

Here, there can be no dispute that under Massachusetts's interpretation of the relevant statutes, Robinhood's offer of sports-related event contracts violates state law.   Indeed, the Commonwealth has initiated an enforcement action against Kalshi, a DCM on which the contracts Robinhood offers its customers trade, on the ground that the offer of such sports-related event contracts—*i.e.*, the same conduct in which Robinhood is currently engaged—is a violation of state sports-wagering laws.  The Commonwealth recently reiterated its intention to imminently enforce state sports-wagering laws as applied to event contracts in its November 13 Letter to licensees, stating that "[i]n the event [a licensee] offer[s] sports-related event contracts in Massachusetts or direct[s] patrons to such event contracts being offered in Massachusetts, the Commission may take steps up to and including revocation of [their] license." (November 13 Letter at 1; *see infra* Section II.)  Because Robinhood submits that Massachusetts sports-wagering laws are federally preempted, there remains a "substantial controversy over the meaning of [Massachusetts General Laws Chapter 23N], as it applies to [Robinhood]."  *Rosen*, 986 F.3d at 53.  Until this Court answers the federal preemption question, Robinhood will have to operate under a "dangling sword of indictment."  *Id.*  Under binding First Circuit law, Robinhood's claim is therefore ripe.  *See id.*;

---

[4] Robinhood's claim is plainly ripe because the relevant statute ***already is being enforced*** against a similarly situated party, Kalshi, in precisely the same way it could be enforced against Robinhood.  *See, e.g.*, *SBA List*, 573 U.S. at 164-67; *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (holding petitioner had alleged credible threat of imminent enforcement where fellow protestor was prosecuted for same conduct).

*Bellows*, 92 F.4th at 50; *Whitehouse*, 199 F.3d at 34.   The Court's failure to consider this controlling precedent is a clear error of law.

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017), on which the Court relied, does not change this analysis.   In *Reddy*, the plaintiffs brought a pre-enforcement challenge to a New Hampshire statute "that ha[d] not been activated or enforced since its enactment" three years prior.   845 F.3d at 495.   The statute allowed (but did not require) reproductive health care facilities to demarcate 25-foot zones around their facilities through which the public could not "knowingly enter or remain."   *Id.*   Likely because the Supreme Court had held unconstitutional a similar buffer-zone statute shortly before the New Hampshire law was scheduled to take effect, no facility in New Hampshire had sought to demarcate a buffer zone in the two-and-a-half years since the law's passage.   *See id.* at 498, 502.   For this reason, the First Circuit held that the *Reddy* plaintiffs' constitutional challenge to the buffer zone statute was not ripe, as the demarcation of a zone was "both a precondition to enforcement and an event whose occurrence is speculative at present."   *Id.* at 502.

*Reddy* is not applicable here.   Robinhood has been offering sports-related event contract trading in Massachusetts on Kalshi's DCM (and is now offering the same on ForecastEx's DCM), and Massachusetts has repeatedly taken the position that offering such contracts violates state law. Unlike in *Reddy*, every "precondition to enforcement" has been met, and the threat of enforcement is not "speculative," as evidenced by the Kalshi State-Court Action and the November 13 Letter.[5]

---

[5] The non-enforcement stipulation may temporarily delay enforcement against Robinhood, but it does not defeat ripeness for the reasons set forth in Section I.B.

**B.    Robinhood's Claim Is Not Contingent on the Outcome of the Kalshi State-Action and Is Ripe Notwithstanding the Temporary Stipulation of Non-Enforcement.**

The Court's holding that Robinhood's claim is unripe because of the temporary stipulation of non-enforcement and that its hardship is "contingent" on the outcome of the Kalshi State-Court Action (Order at 4-5), is also a clear error of law.

As an initial matter, the premise underlying the Court's Order—that enforcement against Robinhood is "contingent" on the outcome of the Kalshi State-Court Action (Order at 4-5)—is incorrect.  The Court stated:  "Whether there is a risk that the Commonwealth will [enforce against Robinhood] after the state court rules on the [Kalshi preliminary injunction] motion depends entirely on what that decision proves to be."  (*Id.* at 4.)  This is because, in the Court's view, if the Commonwealth fails to obtain a preliminary injunction, it is "unlikely" that Robinhood would face a risk of enforcement, and if the Commonwealth does obtain a preliminary injunction, "Robinhood would lose its existing Massachusetts sports event platform" and thus there would purportedly no longer be any conduct to enforce against.  (*Id.*)

The Court's analysis was wrong regardless of the outcome in the Kalshi State-Court Action.  The adjudication of the preliminary injunction in the Kalshi State-Court Action has ***no*** necessary effect on Robinhood's claim.  Even if the Commonwealth loses its motion against Kalshi (a motion which is only preliminary, and does not resolve the merits of the case), there is nothing stopping the Commonwealth from filing an enforcement action against Robinhood.  No decision in the Kalshi State-Court Action is binding with respect to Robinhood, as Robinhood is not a party to that action.  *See Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) ("one is not bound by a judgment" if "he is not designated as a party"; "[t]his rule is part of our 'deep-rooted historical tradition that everyone should have his own day in court'").  Moreover, the Commonwealth has never agreed not to enforce against Robinhood if it loses the Kalshi State-Court Action.  Indeed,

the non-enforcement stipulation extends only until the state court resolves the Commonwealth's preliminary injunction motion, regardless of the outcome.  (ECF No. 29 ¶ 4.)  And if the Commonwealth does obtain a preliminary injunction against Kalshi, it could still pursue an enforcement action against Robinhood for Robinhood's past conduct and/or its offer of sports-related event contracts on other DCMs.  The Court's consideration of the Kalshi State-Court Action in its ripeness analysis was therefore based on a mistaken premise.  *See SBA List*, 573 U.S. at 164.

Because the Court found Robinhood's harm was "contingent," it concluded it was not ripe. (Order at 5 (relying on *Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v, Healey*, 844 F.3d 318 (1st Cir. 2016), for the proposition that the ripeness inquiry is "unconcerned with contingent harm")). But *Labor Relations* is readily distinguishable.  In that case, the First Circuit held that the plaintiffs' pre-enforcement federal preemption challenge to the Massachusetts Earned Sick Time Law ("ESTL") was not ripe because a claim of preemption under the relevant federal statute required an atypical, fact-specific inquiry into the provisions of a particular collective bargaining agreement.  844 F.3d at 329-30.  In doing so, the court was careful to note that a claim of preemption of the relevant federal statute in that case was "*unlike a typical claim of field preemption*" and "[did] not involve purely legal questions, where the matter c[ould] be resolved solely on the basis of the state and federal statutes at issue."  *Id.* at 327 (emphasis added).  For this unique reason, the pre-enforcement challenge in *Labor Relations* was not fit for adjudication, as the court could not "perform the requisite *claim-specific* preemption analysis as to any claim that may be brought."  *Id.* at 328 (emphasis added).  That unique reason is absent here.

Moreover, in ruling Robinhood's claim was unripe, the Court failed to consider binding First Circuit law clearly establishing that a defendant cannot moot a ripe dispute with a promise of

non-enforcement.  To begin, in *Rhode Island Association of Realtors v. Whitehouse*, an association of real estate agents brought a First Amendment challenge to a statute that prohibited the use of public records for commercial solicitation.  199 F.3d 26, 28 (1st Cir. 1999).  The state attorney general attempted to moot the case by construing the plaintiff's use of public records as "fall[ing] outside the scope" of the challenged statute, such that the attorney general would not enforce the statute against the plaintiff.  *Id.* at 34.  The First Circuit concluded the case was ripe, reasoning that "[b]ecause it ordinarily will be too late to obtain a federal forum once the state has initiated criminal proceedings . . . , persons who are confronted by criminal laws of questionable constitutionality should be afforded recourse to the federal courts as soon as state sanctions have been threatened."  *Id.* at 30 (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)).  The plaintiff's claim was ripe because the controversy—"a single, purely legal question" of whether the Rhode Island statute was unconstitutional—was "well-defined and amenable to complete and final resolution" without further factual development, and the plaintiff would suffer substantial hardship in the form of lost opportunities for expression if the controversy were not promptly adjudicated.  *Id.* at 34.  In response to the attorney general's mootness argument, the Court noted that "to allow the government to render a pre-enforcement challenge to an unambiguous state statute moot simply by declaring a case-specific amnesty would effectively insulate unconstitutional state statutes from pre-enforcement review."  *Id.* at 36.

    The First Circuit underscored the holding in *Whitehouse* approximately two decades later in *New Hampshire Lottery Commission v. Rosen*, 986 F.3d 38 (1st Cir. 2021).  In *Rosen*, a state lottery commission and its private partner filed suit to challenge a DOJ memorandum interpreting the Wire Act of 1961, the enforcement of which would arguably have prohibited selling lottery tickets online.  986 F.3d at 44.  After the lawsuit was filed, the DOJ issued a second memorandum

claiming that its prior interpretation "did not address whether the Wire Act applies to State lotteries and their vendors," and that once it did so, a 90-day forbearance period would begin so that state lotteries would have time to unwind their online operations before any enforcement occurred. *Id.* at 47.

Although the federal government had not yet applied the statute to state lotteries, the First Circuit held that the dispute in *Rosen* was ripe. There was a "'substantial controversy' over the meaning of the Wire Act, as it applies to the plaintiffs," and there was no plausible way to read the DOJ's interpretation of the statute to shield the plaintiffs from the risk of future enforcement. *Id.* at 53. The First Circuit rejected the DOJ's attempt to moot the plaintiffs' case by claiming it had not yet decided whether the Wire Act would apply to state lotteries, explaining that the temporary forbearance actually "exacerbate[d] the threat" of enforcement against the plaintiffs "by limiting its professed forbearance to ninety days from whatever date it decides to opine." *Id.* at 49, 52. The First Circuit concluded that the plaintiffs readily demonstrated hardship because they "should not have to operate under a dangling sword of indictment" while the defendant considered "the purely legal question it had apparently already answered and concerning which it offers no reason to expect an answer favorable to the plaintiffs." *Id.* at 53.

Most recently, in *Public Interest Legal Foundation v. Bellows*, a nonprofit brought a federal preemption challenge against a state statute related to use of the state voter file. 92 F.4th 36, 41, 43 (1st Cir. 2024). The statute allowed an organization to purchase the state voter file for the purpose of evaluating "the State's compliance with its voter list maintenance obligations" (the "Use Ban"), *id.* at 43-44, but the plaintiff wanted to use the file for "its regular programmatic activities," which went beyond monitoring the State's compliance, *id.* at 50. The government defendants argued the plaintiff lacked standing because "the Secretary of State and the Attorney

General ha[d] expressly . . . disclaimed any intent to enforce [the Use Ban] in the manner that [the plaintiff] claim[ed] to fear."  *Id.*  Nevertheless, the Court held that the plaintiff had standing and that the controversy was ripe because the intended activities "would contravene the plain language of the Use Ban" regardless of the disclaimer of non-enforcement.  *Id.*

Here, the Court's Order is contrary to this binding First Circuit precedent.  Defendants' promise of temporary non-enforcement does not moot Robinhood's hardship, as Robinhood is forced to "operate under a dangling sword of indictment," *Rosen*, 936 F.3d at 53, which will not go away regardless of how the preliminary injunction motion in the Kalshi State-Court Action turns out.  By reaching the contrary conclusion, the Court has essentially adopted Defendants' position that a state enforcement agency can immunize itself from federal judicial review by bringing an enforcement action against one target and offering a temporary promise not to enforce against others pending resolution of its chosen enforcement proceeding.  *Whitehouse*, *Rosen* and *Bellows* hold that is not the law, and the Court's contrary conclusion was a clear error.

## II.    THE COURT SHOULD CONSIDER NEW EVIDENCE NOT PREVIOUSLY AVAILABLE.

In addition to the clear errors of law shown above in Part I, the Court should reconsider the ripeness decision in its Order in light of the development of new facts since the Court issued the Order.  Ripeness is a question of timing.  *See McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003) ("Ripeness and mootness easily could be seen as the time dimensions of standing.").  Where a complaint is dismissed on ripeness grounds, a change in the underlying facts is a particularly compelling reason for reconsideration of the order granting dismissal.  *See Geneva Coll. v. Sebelius*, 929 F. Supp. 2d 402, 454-59 (W.D. Pa. 2013).  Here, there is new evidence demonstrating that the facts underlying the Court's Order have changed, and each is a ground for reconsideration:  (1)  Robinhood's launch on November 17, 2025 of sports-related event contract

trading through a different DCM, and (2) the Commission's November 13, 2025 letter to its licensees (the "Letter"). This newly available evidence confirms that Robinhood's action is ripe and is a separate basis for reconsideration.[6]

*First*, in dismissing Robinhood's Complaint, the Court relied on the fact that Robinhood was intermediating sports-related event contract trading only through Kalshi's DCM to conclude that in light of the temporary Non-Enforcement Stipulation, Robinhood's harm was "contingent" and therefore unripe for adjudication. (Order at 4.) As explained above, this conclusion was incorrect. (*See* Section I.B.) Regardless, new evidence requires reconsideration of these findings.

On November 17, 2025, Robinhood launched trading of certain sports-related event contracts on ForecastEx's DCM alongside trading in other sports-related event contracts on Kalshi's DCM. This is the first time Robinhood has used ForecastEx as the DCM to execute trades in sports-related event contracts. (Hickerson Decl. ¶ 6.) ForecastEx offers many types of event contracts relating to a variety of areas including economic indicators, elections, financial markets, government, sports and technology. (*Id.* ¶ 7.)

ForecastEx self-certified that its sports-related event contracts comply with the CEA's requirements and began listing them shortly thereafter. (*Id.*) Just as with Kalshi, Robinhood customers place buy and sell orders through their Robinhood accounts, and Robinhood submits those orders to ForecastEx's exchange for execution. (*Id.* ¶ 9.) As of the date of this filing, Robinhood currently lists five National Football League ForecastEx contracts. (*Id.* ¶ 11.) Robinhood's customers with Massachusetts residential addresses currently have approximately 1,000 sports-related ForecastEx event contracts open. (*Id.* ¶ 11.)

---

[6] Robinhood maintains that its claim is ripe absent this new evidence and the Court's contrary conclusion constitutes a clear error of law. *See supra* Section I.

Robinhood could not have presented evidence of its launch of sports-related event contract trading through ForecastEx any earlier in these proceedings. Robinhood's launch of sports-related event contract trading with ForecastEx ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████. (*Id.* ¶ 8.) ████████████████████████████████

████████████████████████████████████████. (*Id.*) Therefore, Robinhood did not know it would be able to launch sports-related event contract trading through ForecastEx until after this Court's November 13, 2025 Order.[7] Now that Robinhood has ████████████████████████████ and has contractual relationships in place with both DCMs, Robinhood may in the future decide to list additional sports-related event contracts from each DCM. Robinhood's launch of sports-related event contract trading through ForecastEx thus constitutes new evidence.

Because Robinhood offers sports-related event contracts on a DCM other than Kalshi's, even under the Court's own analysis, the Kalshi State-Court Action does not determine the ripeness of Robinhood's claim. The temporary Non-Enforcement Stipulation applies only to event contracts traded on Kalshi's DCM (ECF No. 29 ¶ 4 (stipulating to temporary non-enforcement related to "sports-related event contracts ***listed and executed on Kalshi's designated contract market***") (emphasis added)) and therefore does not serve as a bar to enforcement for sports-related

---

[7] At the November 12, 2025 hearing on Defendants' Motion to Dismiss (the "Hearing"), counsel for Robinhood explained that Robinhood could facilitate sports-related event contract trading through DCMs other than Kalshi's. (Hearing Tr. at 5:17-6:6 ("Robinhood does offer event contracts through other DCMs and could offer sporting event contracts through other DCMs."); *see also id.* at 6:14-17, 9:9-13, 17:13-16.) Robinhood thus presented as much information on this issue as was known at the time of the Hearing.

event contracts that Robinhood sends to ForecastEx for execution.  This puts Robinhood at immediate risk of an enforcement action, and its claim is ripe.  And even if the Commonwealth wins its preliminary injunction motion against Kalshi, Robinhood will be able to continue offering its customers sports-related event contract trading through ForecastEx.  This material change in facts plainly supports reconsideration of the Court's Order.  *See, e.g.*, *Geneva Coll.*, 929 F. Supp. 2d at 454-59 (granting motion for reconsideration where rules proposed after prior decision render the plaintiff's claim ripe); *see also Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 34 (1st Cir. 2007) ("Of course, newly discovered evidence sometimes may constitute a valid basis for a successful motion for reconsideration.").

*Second*, the same day the Court issued its Order, the Commission published the November 13 Letter stating that it "is aware that several Massachusetts sports wagering licensees are considering or have begun the process of partnering with entities in the prediction market space to begin offering event wagering contracts."  (Orsini Decl., Ex. A at 1.)  The November 13 Letter further states that licensees "are prohibited from offering sports-related event contracts in Massachusetts directly or via an affiliate, related business entity, or other association, or directing patrons to such event contracts being offered in Massachusetts."  (*Id.*)  If a licensee were to do so in contravention of the Letter, the Commission threatened to "take steps up to and including revocation" of the licensee's sports-wagering license.  (*Id.*)  The Commission also noted that "to the extent any other regulator takes action against your license due to your operation in the prediction market space, such action may inform decisions related to your suitability in Massachusetts."  (*Id.*)  The issuance of enforcement guidance constitutes "newly available evidence" sufficient to warrant reconsideration.  *See Love v. Pence*, 47 F. Supp. 3d 806, 807 (S.D. Ind. 2014) (granting motion for reconsideration where complaint was dismissed on standing

grounds because dismissal "was based on an inaccurate premise" that the governor was an improper defendant, and subsequent memoranda from the governor—*i.e.*, newly available evidence—confirmed that he was a proper defendant); *S. Cal. Alliance of Publicly Owned Treatment Works v. EPA*, No. 2:14-cv-01513, 2015 WL 5435910, at *4-6 (E.D. Cal. Sept. 15, 2015) (granting motion for reconsideration after the discovery of internal memorandum and documents, where earlier order determined that the case was moot, and where guidance document indicated that the EPA and regional authorities in fact used an allegedly improper methodology in granting permits for release of treated water).

The November 13 Letter is a warning to Massachusetts sports-wagering licensees that offering sports-related event contract trading puts them at risk of license revocation and other penalties. (Orsini Decl., Ex. A at 1.) This is the same conduct in which Robinhood engages. The November 13 Letter demonstrates that Defendants believe that offering sports-related event contracts without a Commission-issued license is a violation of Massachusetts law, including when offered by FCMs like Robinhood who work with event contract markets, such as Kalshi and ForecastEx. It also demonstrates that the Commonwealth remains focused on this area and has a present, continuing intention to bring actions to enforce what it views as violations of its laws by entities offering sports-related event contracts. This new evidence confirms that the risk of enforcement against Robinhood is real and imminent, and that Robinhood's action is ripe for adjudication.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff Robinhood's Motion For Reconsideration.

DATED:  December 8, 2025

Respectfully submitted,

By:   */s/ Nicholas J. Schneider*

**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**

Craig Waksler (BBO No. 566087)
cwaksler@eckertseamans.com
Nicholas J. Schneider (BBO No. 688498)
nschneider@eckertseamans.com

2 International Place #1600
Boston, Massachusetts 02110
Telephone: (617) 342-6800
Facsimile: (617) 342-6899

**CRAVATH, SWAINE & MOORE LLP**

Kevin J. Orsini (*pro hac vice*)
korsini@cravath.com
Antony L. Ryan (BBO No. 629971)
aryan@cravath.com
Brittany L. Sukiennik (*pro hac vice*)
bsukiennik@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff*
*Robinhood Derivatives, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 8, 2025, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Plaintiff Robinhood's Motion for Reconsideration with the Clerk of the Court by using the Court's CM/ECF system and accordingly served the parties who receive notice of the filing via the Court's CM/ECF system.

/ s/ Nicholas J. Schneider

Nicholas J. Schneider