THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBINHOOD DERIVATIVES, LLC, *Plaintiff*, v. ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, et al., *Defendants*. | Civil Action No. 1:25-cv-12578 LEAVE TO FILE REPLY GRANTED ON DECEMBER 23, 2025 (ECF NO. 83) |

**PLAINTIFF ROBINHOOD'S REPLY IN SUPPORT OF
ITS MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.  BINDING SUPREME COURT AND FIRST CIRCUIT PRECEDENTS REQUIRE RECONSIDERATION OF THE COURT'S ORDER. ........................................................1

    A.  Defendants' Attempt To Distinguish *SBA List*, *Whitehouse*, *Rosen*, and *Bellows* Fails. ...................................................................................................2

    B.  Defendants Do Not Explain Why *Reddy*, *Labor Relations*, or *Richards* Bar Reconsideration. ..........................................................................................4

II. NEW FACTS SATISFY RULE 59(e). ............................................................................6

    A.  Defendants Misrepresent *Alicea*, *Emmanuel*, *In re Neurontin*, and Wright & Miller. ...................................................................................................6

    B.  The November 13 Letter Chills Business Partnerships and Unequivocally Reveals Defendants' Aggressive Enforcement Intentions. ...........................9

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alicea v. Machete Music*, 744 F.3d 773 (1st Cir. 2014) ...................................................................7

*Commonwealth of Massachusetts v. KalshiEx LLC*, No. 2584-CV-02525
  (Mass. Super. Ct. filed Sept. 12, 2025)...................................................................................3

*Emmanuel v. Int'l Bhd. of Teamsters*, 426 F.3d 416 (1st Cir. 2005) ...........................................7, 8

*Fed. Ins. Co. v. MATEP, LLC*, No. 5-12391, 2008 WL 11511401 (D. Mass. Dec. 1, 2008) ..........6

*Geneva Coll. v. Sebelius*, 929 F. Supp. 2d 402 (W.D. Pa. 2013)...............................................6, 10

*In re Neurontin Mktg. & Sales Pracs. Litig.*, 799 F. Supp. 2d 110 (D. Mass. 2011)...................7, 8

*Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318 (1st Cir. 2016) ...........4, 5

*Love v. Pence*, 47 F. Supp. 3d 806 (S.D. Ind. 2014)..................................................................6, 10

*McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63 (1st Cir. 2003)......................................................7

*N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) .......................................................2, 3

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)...............................................2

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017)................................................................................4

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999).........................................2

*Richards v. Jefferson County*, 517 U.S. 793 (1996) ......................................................................5

*S. Cal. Alliance of Publicly Owned Treatment Works v. EPA*, No. 2:14-CV-01513, 2015
  WL 5435910 (E.D. Cal. Sept. 15, 2025)................................................................................10

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)..............................................................2

*United States v. City of Portsmouth*, No. 9-CV-283-PB, 2016 WL 5477571 (D.N.H.
  Sept. 28, 2016) .........................................................................................................................6

**Statutes & Rules**

Fed. R. Civ. P. 59(e) ...................................................................................................................6

**Other Authorities**

11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2810.1
    (3d ed.) .....................................................................................................................7

# INTRODUCTION

Robinhood's Memorandum in Support of its Motion for Reconsideration (ECF No. 74, "Mem.") offers two bases for reconsideration of the Court's Dismissal Order (ECF No. 69, "Order"). *First*, Robinhood explains why the Order cannot be reconciled with four binding precedents. (Mem. at 5-15.) *Second*, Robinhood identifies two pieces of newly available evidence—its recent launch of ForecastEx sports-related event contracts, and the November 13 Letter from the Massachusetts Gaming Commission to its licensees[1]—each of which warrants reconsideration of the dismissal regardless of whether the Court's original Order was legally correct. (*Id.* at 15-19.)

Defendants' Opposition ("Opp.") fails to distinguish the binding precedents (ECF No. 81, Opp. at 4-8) and misstates the law on what constitutes new evidence sufficient to justify reconsideration (*see, e.g.*, Opp. at 9 (asserting that "newly discovered evidence" does not include "later-arising developments" that occur post-judgment)). Defendants also virtually refuse to engage with the new facts (*id.* at 9-11); much of the brief presumes that Kalshi is still the only designated contract market through which Robinhood facilitates sports-related event contract trading, despite clear evidence Robinhood has presented to the contrary (*see, e.g.*, Opp. at 8). Robinhood addresses these fundamental mischaracterizations of binding law and applicable facts, thereby confirming that the Court should grant the Motion for Reconsideration, deny Defendants' motion to dismiss, and permit Robinhood to supplement its Complaint.

# ARGUMENT

I. **BINDING SUPREME COURT AND FIRST CIRCUIT PRECEDENTS REQUIRE RECONSIDERATION OF THE COURT'S ORDER.**

Defendants' efforts to distinguish binding precedents rest on an erroneous assertion that

---

[1] ECF No. 76-1, Ex. A ("November 13 Letter").

Robinhood has no reason to fear enforcement against it. (*See* Opp. at 6-7.) But the core of Defendants' position is that unless they say that they will enforce against Robinhood specifically, there is no ripe claim. That is wrong as a matter of law. If the Court declines reconsideration, it would reward Defendants' gamesmanship to avoid the jurisdiction of this and every other Article III court—state agencies could pick a single actor in a competitive market, sue only that actor in state court, and by doing so, completely vitiate the right of any other actor engaging in the same conduct to seek *Ex parte Young* review in federal court. That is reversible error.

In fact, Defendants' purported assurances of non-prosecution are transparently tactical statements designed solely to avoid this Court's jurisdiction to resolve an important issue of Federal law. They have offered *no concrete assurances* that they will not commence enforcement proceedings the minute there is an order on their motion for preliminary injunction in the *Kalshi* state-court proceedings. (*See id.* at 6.) They have offered no satisfactory explanation as to why Robinhood should not interpret the enforcement proceeding against Kalshi and Defendants' November 13 Letter as clear indicators that enforcement against Robinhood is inevitable. To the contrary, the cumulative effect of these indicators—*i.e.*, the lack of real assurances of non-enforcement, the enforcement proceeding against Kalshi, and the November 13 Letter—is more than enough to establish a credible threat of enforcement under binding precedent.

    **A.**     **Defendants' Attempt To Distinguish *SBA List*, *Whitehouse*, *Rosen*, and *Bellows* Fails.**

Defendants assert that the Court need not reconsider its Order in light of *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ("*SBA List*"), *Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024), *New Hampshire Lottery Commission v. Rosen*, 986 F.3d 38 (1st Cir. 2021), or *Rhode Island Association of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999), because "[e]ach of those cases involved a plaintiff facing a direct, concrete, and

acknowledged threat of enforcement under a statute that unambiguously applied to the plaintiff's own conduct." (Opp. at 5.) Defendants attempt to differentiate these cases by saying the statutes "unquestionably applied" to the plaintiffs. (*Id.* at 5 n.2 (regarding *SBA List*); *see also id.* at 5 (regarding *Whitehouse*, saying the statute there "plainly applied," and the state offered "only a narrowing construction for [] litigation"); *id.* at 6 (regarding *Bellows*, saying the statute "directly barred" plaintiffs' activities and officials "continued to defend that interpretation as enforceable").)

Defendants' attempts to distinguish these cases, however, only underscore their applicability. In light of Defendants' interpretation of Massachusetts sports-wagering laws, there can be no question that they believe that Chapter 23N bars Robinhood's conduct. The *Kalshi* action makes abundantly clear the Commonwealth's position that "offering" sports-related event contracts violates Chapter 23N. *Commonwealth of Massachusetts v. KalshiEx LLC*, No. 2584-CV-02525 ("*Kalshi*") (Mass. Super. Ct. filed Sept. 12, 2025), Dkt. 1, ¶ 1. So does its November 13 Letter. (*See* ECF No. 76-1, Ex. A at 1 (stating licensees "are prohibited from offering sports-related event contracts in Massachusetts").) Robinhood offers sports-related event contract trading in Massachusetts. Under Defendants' interpretation of the statute, it "plainly" applies to Robinhood's activities just as much as Kalshi's, and Robinhood's activities are "directly barred" by Chapter 23N. Defendants contort the facts to avoid this conclusion and this Court's jurisdiction. But these precedents, which Defendants urge the Court to ignore, are directly relevant to and dispositive of whether Robinhood's pre-enforcement challenge is ripe.

Defendants also misrepresent *Rosen* by claiming that the key fact there was that defendants had conceded the plaintiffs were an enforcement target. (Opp. at 6.) Defendants' telling of *Rosen* ignores the fact that the DOJ subsequently *disavowed* that its interpretation of the Wire Act covered state lotteries like the plaintiffs; still, the First Circuit held that the plaintiffs' claims were ripe. *See*

3

*Rosen*, 986 F.3d at 47, 53.  In other words, the facts in *Rosen* were exactly the opposite of what Defendants claim.  In reality, the defendants in *Rosen* did far more than Defendants here have done to avoid Federal jurisdiction; they disavowed any conclusion that the relevant statute applied to plaintiffs' conduct.  Despite that disavowal, the First Circuit unequivocally found that the plaintiffs in *Rosen* had the right to seek vindication of its Federal rights in federal court.  This Court must do the same here, where Defendants have never said the statute does not apply to Robinhood, have offered only temporary non-enforcement to Robinhood, and have pursued an enforcement action against Kalshi for offering the very same contracts that Robinhood offers.

> **B.    Defendants Do Not Explain Why *Reddy*, *Labor Relations*, or *Richards* Bar Reconsideration.**

Defendants' tortured interpretations of *Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017), and *Labor Relations Division of Construction Industries of Massachusetts, Inc. v. Healey*, 844 F.3d 318 (1st Cir. 2016), also do not withstand scrutiny.  (Opp. at 7-8.)  *First*, Defendants admit that in *Reddy*, "the statute had never been enforced and a necessary precondition to enforcement had never occurred and might never occur."  (Opp. at 7.)  Here, Defendants are actively enforcing the statute against Kalshi, and the November 13 Letter reveals the Commonwealth's intent to pursue enforcement beyond Kalshi.  While enforcement was remote in *Reddy*, it is far from that here.  The only precondition to enforcement against Robinhood is that Robinhood offers sports-related event contract trading in Massachusetts.[2]  Robinhood already does so.

*Second*, regarding *Labor Relations*, Defendants argue vaguely that there are fact issues

---

[2] Defendants have manufactured an additional precondition with respect to Robinhood's contracts executed on Kalshi's exchange—the state court's decision on the preliminary injunction hearing in *Kalshi*, which has been fully briefed and argued.  Unlike the "precondition to enforcement" in *Reddy*, a decision on that motion is imminent.  And there is *no* precondition to enforcement against Robinhood with respect to its ForecastEx contracts.

4

with respect to applying Chapter 23N to sports-related event contract trading. (Opp. at 7-8.) Defendants confuse Robinhood's preemption claim with an enforcement action; without belaboring an already-briefed point, Robinhood's preemption claim presents a purely legal question and does not require any factual development.[3] The First Circuit in *Labor Relations* was careful to distinguish the "claim-specific," factually dependent preemption analysis there from more typical preemption analyses such as the one here. *See* 844 F.3d at 327-30.

Nevertheless, in *Kalshi*, Defendants have stated clearly that they believe Kalshi's conduct violates Chapter 23N. *Kalshi* Compl. ¶¶ 89-92, 105-107. Robinhood facilitates trading of *the exact same products*, as Defendants recognize, *id.* ¶ 129, and in light of Chapter 23N's broad definitions and Defendants' interpretation of them, Defendants' assertion that fact investigation is required to determine whether Robinhood's conduct violates Chapter 23N strains credulity. If Defendants in fact viewed Robinhood's conduct as falling outside Chapter 23N's restrictions, they would give Robinhood a true non-enforcement commitment. They have not done so; indeed, they have reserved their ability to enforce against Robinhood as soon as there is a decision on their *Kalshi* preliminary injunction motion. Defendants could bring a suit against Robinhood at such time without *any* additional fact development.

Defendants also take issue with Robinhood's citation of *Richards v. Jefferson County*, 517 U.S. 793 (1996), even though they agree that no result in *Kalshi* "will bind Robinhood as a matter of preclusion." (*See* Opp. at 8.) Accordingly, there is no legitimate reason to delay adjudication of Robinhood's *Ex parte Young* claim. Defendants' attempt to ignore that Robinhood facilitates

---

[3] Defendants also contend, without support, that "the Superior Court is [] developing a concrete factual record in the *Kalshi* enforcement action." (Opp. at 7.) Discovery in that case has not commenced, and the state court has only heard arguments on motions for preliminary injunction and to dismiss. *See generally Kalshi*, Dkts. 1-46. To be clear, nothing in any later-developed factual record in *Kalshi* will assist this Court in adjudicating Robinhood's purely legal claim.

sports-related event contract trading with ForecastEx as well as Kalshi fails; if Kalshi were to be enjoined in Massachusetts, Robinhood could still offer sports-related event contract trading in Massachusetts (through ForecastEx). It simply is not the case that resolution of the *Kalshi* motion will determine whether there is "any live enforcement posture left to adjudicate as to Robinhood at all." (*Id.*)

II.  **NEW FACTS SATISFY RULE 59(e).**

    A.  **Defendants Misrepresent *Alicea*, *Emmanuel*, *In re Neurontin*, and Wright & Miller.**

In an attempt to set aside the new evidence, Defendants take the extraordinary position that a motion under Federal Rule of Civil Procedure 59(e) can be granted based on a change in facts only if the "facts already existed when the court entered judgment." (Opp. at 9.) That is simply incorrect. *See Geneva Coll. v. Sebelius*, 929 F. Supp. 2d 402, 454-59 (W.D. Pa. 2013) (granting reconsideration because post-judgment changes to agency rules—*i.e.*, new facts that did not exist at the time of the first decision—changed the standing analysis); *Love v. Pence*, 47 F. Supp. 3d 806, 807 (S.D. Ind. 2014) (granting reconsideration because dismissal "was based on an inaccurate premise" that the governor was an improper defendant, which a subsequent memorandum—*i.e.*, a new fact—clarified). District courts in this Circuit agree that "a significant change in the law *or facts* since the submission of the issues to the court" justifies reconsideration. *Fed. Ins. Co. v. MATEP, LLC*, No. 5-12391, 2008 WL 11511401, at *2 (D. Mass. Dec. 1, 2008) (emphasis added); *see United States v. City of Portsmouth*, No. 9-CV-283, 2016 WL 5477571, at *3-4 (D.N.H. Sept. 28, 2016) (noting reconsideration is appropriate when "a new fact [] compels a different result" and discussing new evidence received by the movant after the Court's order but ultimately declining to reconsider because the evidence was not "truly new" or legally significant).

Indeed, the very treatise that Defendants cite instructs that a reconsideration motion "may

6

be granted so that the moving party may present newly discovered *or previously unavailable* evidence." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2810.1.[4] The use of "or" in the treatise makes clear that both newly discovered (*i.e.*, available at the time of judgment but unknown) *and* previously unavailable (*i.e.*, facts not existing at the time of judgment) evidence are potential bases for reconsideration. The cases Defendants rely upon likewise provide no support for their position as applied to the facts here. *See Alicea v. Machete Music*, 744 F.3d 773 (1st Cir. 2014); *Emmanuel v. Int'l Bhd. of Teamsters*, 426 F.3d 416 (1st Cir. 2005); *In re Neurontin Marketing & Sales Practices Litig.*, 799 F. Supp. 2d 110 (D. Mass. 2011).

*First*, in *Alicea*, the plaintiffs tried to present "new evidence" of facts that were prerequisites to their copyright claims, and they had had two years prior to summary judgment to address this defect and failed to do so. 744 F.3d at 777-78. The court found that, with due diligence, the purported "new facts" could have been included in the summary judgment record. *Id.* at 782. Here, the new pieces of evidence Robinhood offers as a basis for reconsideration are not prerequisites to its claim, nor could either have been included in the record earlier with due diligence. (*See* Mem. at 17 & n.7.) While Robinhood maintains that its suit was ripe at the time of filing, the Court's dismissal without prejudice on ripeness grounds is particularly susceptible to reconsideration based on new facts, because ripeness is fundamentally a question of timing. *See McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003). The facts in *Alicea* and the facts here are not analogous. In the former, the court disallowed a plaintiff from reopening a final decision on the merits based on new facts that could and should have been developed earlier. *Alicea*, 744 F.3d at 777-78. Robinhood's new facts justify reconsideration of a dismissal without

---

[4] Defendants assert that this treatise supports their assertion that "newly discovered evidence" only includes facts that existed at the time of the judgment. (Opp. at 9.) As discussed above, that is flatly wrong, and the treatise actually contradicts Defendants' position.

7

prejudice on ripeness grounds. The timing of Robinhood's suit, if it was not proper already, is now proper in light of these new facts that developed subsequent to Robinhood's prior briefing.[5]

The facts of *Emmanuel* and *In re Neurontin* diverge even farther from the facts here. In *Emmanuel*, the purported "new" evidence was not new at all. The plaintiff sought reconsideration of summary judgment based on online research he just as easily could have conducted before summary judgment was decided. *Emmanuel*, 426 F.3d at 422. Similarly, in *In re Neurontin*, the court denied a post-trial motion for reconsideration based on "new" evidence in the form of a scholarly article that was substantially similar to expert testimony at trial. *In re Neurontin*, 799 F. Supp. at 115-16. Neither case is apposite to the new evidence here.

Defendants cite *Emmanuel* in particular to suggest that "nothing prevented [Robinhood] from presenting [information about its partnership with ForecastEx] in the original ripeness briefing." (Opp. at 10.) But as explained in Robinhood's Motion, Robinhood did not know that it would be able to facilitate sports-related event contracts through ForecastEx (as it now does) until after the Court issued its Order, and Robinhood presented as much information on this issue as was known at the time of the hearing on Defendants' Motion to Dismiss. (*See* Nov. 12, 2025 Hearing Tr. at 5:17-6:6 ("Robinhood does offer event contracts through other DCMs and could offer sporting event contracts through other DCMs."); *see also id.* at 6:14-17, 9:9-13, 17:13-16.) Robinhood has acted with diligence.

In direct contrast to the "new" evidence offered in *Alicea*, *Emmanuel*, and *In re Neurontin*, Robinhood's newly available evidence is just that—new. These developments since the Court's

---

[5] Because Robinhood's original complaint was dismissed without prejudice, Robinhood can, of course, simply file a new suit with its proposed supplemental complaint (*see* ECF No. 76-2, Ex. B). However, granting reconsideration would be more efficient and promote judicial economy.

Order should have a material impact on the Court's decision and therefore justify reconsideration.

### B. The November 13 Letter Chills Business Partnerships and Unequivocally Reveals Defendants' Aggressive Enforcement Intentions.

Defendants try to downplay the November 13 Letter by arguing that it was not addressed or sent directly to Robinhood. (Opp. at 10.) That is irrelevant. Indeed, the November 13 Letter is not the only letter that Massachusetts has sent recently on this subject that Robinhood has been made aware of. (*See* ECF No. 82-1 (Declaration of Nicholas Lin) ¶¶ 3-4.) As demonstrated by Mr. Lin's declaration, even if Defendants were to decline to enforce against Robinhood, Defendants are *currently taking steps* that put Robinhood's business at risk by chilling actual and prospective business partners from engaging with Robinhood because Robinhood offers sports-related event contracts. Robinhood is entitled to a ruling on whether the state laws Defendants are using in ways that threaten Robinhood can be enforced against Robinhood at all.

Defendants have taken the position in this litigation that their only target at the moment is Kalshi, and Robinhood should thus have no fear of "present" enforcement against it. (*See, e.g.*, Opp. at 7.) The November 13 Letter reveals that Defendants' position is merely posturing for this litigation to avoid this Court's jurisdiction. There is simply no way to read the letter as anything other than a warning that Defendants intend to enforce broadly their sports-wagering laws against businesses offering sports-related event contract trading. Defendants claim that "nothing in the letter is new" (Opp. at 10), but even if that were true—and it is not—it is not only the words on the page that are new evidence. Defendants' decision to send the letter *at all*—the day after this Court dismissed Robinhood's claim—is new evidence of an aggressive enforcement posture and a threat of enforcement against Robinhood. While Defendants assert the letter is no such threat because it was a warning to sports-wagering licensees and Robinhood is not a licensee (Opp. at 10), the letter speaks more broadly to Defendants' attitude toward sports-related event contract

9

trading, which is certainly relevant to all offerors of such trading, including Robinhood.

Defendants attempt to distinguish Robinhood's cited cases by claiming that, unlike the post-judgment developments in those cases, the November 13 Letter did not "*change[] the governing legal regime* or ***reveal[] that the court's prior mootness or standing analysis rested on an inaccurate premise***." (Opp. at 11 (second emphasis added).) *See Geneva Coll.*, 929 F. Supp. 2d at 454-59; *Love*, 47 F. Supp. 3d at 807; *S. Cal. Alliance of Publicly Owned Treatment Works v. EPA*, No. 2:14-CV-01513, 2015 WL 5435910, at *4-6 (E.D. Cal. Sept. 15, 2025) (granting reconsideration after newly produced document showed prior mootness determination rested on inaccurate factual premise). But Defendants ignore the significance of the letter's timing and the difference between taking a position about Chapter 23N in litigation and broadly communicating that position to all licensees. The November 13 Letter is a strong warning to licensees that has ripple effects on others in the industry, and even more importantly, it reveals that the Court's prior analysis "rested on an inaccurate premise" that there was no imminent threat to Robinhood.

The Court dismissed Robinhood's claim as unripe because it believed Robinhood had no reason to fear enforcement until a preliminary injunction decision in *Kalshi*. But it is indisputable that Robinhood's event contracts business in Massachusetts does not rise or fall with Kalshi. Further, Defendants have been careful never to commit to non-enforcement against Robinhood once a preliminary injunction decision issues in *Kalshi*. That is because their claim that Robinhood is not an enforcement target is merely a litigation strategy. Their actions, including the November 13 Letter, reveal their true view on enforcement and show that the threat of enforcement against Robinhood is real and imminent.

## CONCLUSION

For the reasons set forth above, the Court should grant Robinhood's Motion for Reconsideration.

DATED:  January 6, 2026

        Respectfully submitted,

        By:   /s/ Nicholas J. Schneider

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

Craig Waksler (BBO No. 566087)
cwaksler@eckertseamans.com
Nicholas J. Schneider (BBO No. 688498)
nschneider@eckertseamans.com

2 International Place #1600
Boston, Massachusetts 02110
Telephone: (617) 342-6800
Facsimile: (617) 342-6899

**CRAVATH, SWAINE & MOORE LLP**

Kevin J. Orsini (*pro hac vice*)
korsini@cravath.com
Antony L. Ryan (BBO No. 629971)
aryan@cravath.com
Brittany L. Sukiennik (*pro hac vice*)
bsukiennik@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff*
*Robinhood Derivatives, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 6, 2026, I electronically filed the foregoing Reply Memorandum of Points and Authorities in Support of Plaintiff Robinhood's Motion for Reconsideration with the Clerk of the Court by using the Court's CM/ECF system and accordingly served the parties who receive notice of the filing via the Court's CM/ECF system.

*/s/ Nicholas J. Schneider*

Nicholas J. Schneider