## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ROBINHOOD DERIVATIVES, LLC

*Plaintiff*,

v.

ANDREA JOY CAMPBELL, in her official
capacity as Attorney General of the
Commonwealth of Massachusetts, et al.,

*Defendants*.

Civil Action No. 1:25-cv-12578

## COMBINED MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR IN THE ALTERNATIVE TO STAY PROCEEDINGS AND IN RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...........................................................................1

BACKGROUND .............................................................................................2

MOTION TO DISMISS ARGUMENT ............................................................4

    I.    ROBINHOOD'S AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE IT REMAINS NONJUSTICIABLE.4

        A.    Robinhood Lacks Standing as There is No Imminent Enforcement Risk ...................................................................................................6

        B.    Robinhood's Claims Are Unripe Because They Are Contingent...10

    II.    THE CLAIMS AGAINST THE MGC CHAIR AND COMMISSIONERS SHOULD BE DISMISSED INDEPENDENTLY BECAUSE ROBINHOOD CANNOT SATISFY EX PARTE YOUNG'S THRESHOLD REQUIREMENTS. ...................................................................................................12

        A.    The Complaint Alleges No Ongoing Violation by the Commissioners and No Credible Enforcement Nexus Directed at Robinhood by the MGC. ...................................................................................................13

        B.    There Is Independently No Article III Traceability nor Redressability as to the Commissioners.........................................................................13

    III.    EVEN IF THE COURT REACHES THE MERITS, ROBINHOOD FAILS TO STATE A CLAIM UNDER RULE 12(B)(6). ...........................................14

    IV.    ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE DECLARATORY JURISDICTION AND DISMISS OR STAY IN LIGHT OF ONGOING STATE PROCEEDINGS AND PRINCIPLES OF FEDERALISM AND COMITY.............................................................16

        A.    *Younger* Supports Abstention or, at Minimum, a Stay to Avoid Interference with the Commonwealth's Ongoing Civil Enforcement Proceeding.16

        B.    At Minimum, the Court Should Stay Under *Wilton/Brillhart*, and *Colorado River* Supports a Stay to Avoid Piecemeal Adjudication.17

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION ...............................18

    I.    ROBINHOOD IS UNLIKELY TO SUCCEED ON THE MERITS..........19

        A.    Federal Law Continues to Bar Interstate Sports Wagering, Irrespective of the CEA......................................................................................20

        B.    The CEA's Express Preemption Provisions Indicate that State Gaming Law is Not Preempted.................................................................22

        C.    Congress Has Not Impliedly Preempted State Regulation of Sports Wagering. ...................................................................................25

    II.    ROBINHOOD WILL NOT SUFFER IRREPERABLE HARM ABSENT A PRELIMINARY INJUNCTION.............................................................29

III.    THE EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR THE
        COMMONWEALTH..................................................................................31

CONCLUSION....................................................................................................33

# TABLE OF AUTHORITIES

**CASES**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118 (D.D.C. 2017) ................................................................. 31

*Abdow v. Att'y Gen.*, 468 Mass. 478 (2014) .......................................... 27, 32

*Ah Sin v. Wittman*, 198 U.S. 500 (1905) ................................................ 27, 32

*Allen v. Wright*, 468 U.S. 737 (1984) ........................................................ 4, 14

*Altria Grp. v. Good*, 555 U.S. 70 (2008) ................................................... 23, 26

*Arizona v. United States*, 567 U.S. 387 (2012) .............................................. 26

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ................ 14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 14

*Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass. 2020) ...................... 19, 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 14

*Blue Lake Rancheria*, No. 25-cv-06162-JSC, 2025 WL 3141202 (N.D. Cal. Nov. 10, 2025), *appeal filed*, No. 25-7504 (9th Cir. Nov. 25, 2025) .................... 20

*BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755 (9th Cir. 2018) .............. 25

*Bond v. United States*, 572 U.S. 844 (2014) .................................................... 22

*Bower v. Egyptair Airlines Co.*, 731 F.3d 85 (1st Cir. 2013) ........................... 22

*Braintree Labs., Inc. v. Citigroup Glob. Mkts., Inc.*, 622 F.3d 36 (1st Cir. 2010) ............. 29

*Brillhart v. Excess Ins. Co. f Am.*, 316 U.S. 491 (1942) ............................ 16, 17

*Capron v. Off. of Att'y Gen. of Mass.*, 944 F.3d 9 (1st Cir. 2019) .............. 26, 27

*Chicago Mercantile Exch. v. SEC*, 883 F.2d 537 (7th Cir. 1989) ..................... 23

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) ....................................... 23

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................... 5, 6, 8, 9

*Coinbase Financial Markets, Inc. v. Ford, et al.*, No. 2:26-cv-0256 (D. Nev. Feb. 7, 2026) ................................................................ 17

iv

*Colella v. State Racing Comm'n*, 360 Mass. 152 (1971) .................................................. 32

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ................. 18

*Commonwealth of Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass.) ......... 3

*Commonwealth of Massachusetts v. KalshiEX LLC*, No. 2584CV02525-BLS1 .... 2, 10, 17

*Corp. Techs., Inc. v. Harnett*, 731 F.3d 6 (1st Cir. 2013) .................................................. 19

*Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87 (2017) ................................... 23

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) .................................................................... 23

*Dataphase Systems, Inc. v. C L Systems, Inc.* 640 F.2d 109 (8th Cir. 1981) .................... 32

*Env't Def. Fund, Inc. v. Wright*, No. CV 25-12249-WGY, 2025 WL 2663068 (D. Mass. Sept. 17, 2025) ...................................................................................................... 18

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) ................................................................. 22

*Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13 (1st Cir. 2006) ................. 18

*Ex parte Young*, 209 U.S. 123 (1908) ................................................................................ 12

*FMC Corp. v. Holliday,* 498 U.S. 52 (1990) ....................................................................... 22

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983) .......................... 15

*Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995) .......................................................... 23

*FTC v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001) ................................................... 23

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) ...................................................... 31

*Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989) ......................... 14

*Grant v. Trial Ct.*, 784 F. Supp. 3d 475 (D. Mass. 2025) ................................................. 32

*Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999) ............. 32

*Harris as next friend of RNH v. Adams*, 757 F. Supp. 3d 111 (D. Mass. 2024) .... 19, 29, 31

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ................................................................... 17

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) ............................................................ 24

*KalshiEX LLC v. Martin*, 793 F.Supp.3d 667 (D. Md. Aug. 1, 2025), *appeal filed*, No. 25-1892 (4th Cir. Aug. 6, 2025) ...................................................................... passim

*KalshiEx, LLC v. Hendrick*, No. 25-00575, 2025 WL 1073495 (D. Nev. Apr. 9, 2025), *appeal filed*, No. 25-7516 (9th Cir. Nov. 25, 2025) .......................................... 19

*Kansas v. Garcia*, 589 U.S. 191 (2020) ...................................................... 26, 29

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) ...................................... 4, 10

*Lab. Rels. Div. of Constr. Indus. Of Mass., Inc. v. Healey*, 844 F.3d 318 (1st Cir. 2016) .................................................................................................... passim

*LCM Enters, Inc. v. Town of Dartmouth*, 14 F.3d 675 (1st Cir. 1994) ............................. 27

*Lichoulas v. City of Lowell*, 555 F.3d 10 (1st Cir. 2009) ................................... 16

*Local Union No. 12004 v. Mass. Comm'n Against Discrimination*, 377 F.3d 64 (1st Cir. 2004) ...................................................................................... 13

*Mass. Ass'n of Priv. Career Schs. v. Healey*, 159 F. Supp. 3d 173 (D. Mass. 2016) ........ 26

*Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness of Mass.*, 649 F.2d 71 (1st Cir. 1981) ................................... 29

*Mazurek v. Armstrong,* 520 U.S. 968 (1997) (*per curiam*) ................................ 30

*McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63 (1st Cir. 2003) ........................... 5, 12

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ...................................... 10, 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) ................ 24

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...................... 18

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) ........................ 20, 26, 32

*N. Am. Derivatives Exchange Inc. d/b/a Crypto.com v. Hendrick*, No. 2:25-cv-00978-APG-DJA (D. Nev.) .................................................................... 19

*N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) ................................... 8

*Nw. Selecta, Inc. v. Gonzalez-Beiro*, 145 F.4th 9 (1st Cir. 2025) ........................... 23

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) ............................................. 27

*Penobscot Nation v. Frey*, 3 F.4th 484 (1st Cir. 2021) ......................................... 7

*Power v. Arlington Hosp. Ass'n*, 42 F.3d 851 (4th Cir. 1994) ................................. 24

*Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ............................... 8

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952)...................................... 15

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) .......................................................... 6, 7, 12

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999) ............. 8

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56 (1st Cir. 2005) ..................... 29

*Robinhood Derivatives, LLC v. Dreitzer*, 2025 WL 3283308 (D. Nev., 2025),
    *appeal filed* No. 25-7831 (9th Cir. Dec. 12, 2025) ......................................... 28, 31, 33

*Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219 (1st Cir. 2003)................................. 31

*Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9 (1st Cir. 2020)................................. 18

*Santiago v. Municipality of Utuado*, 114 F.4th 25 (1st Cir. 2024) .................................. 31

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) ...................................... 15

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) ...................................... 16, 17

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024)...................................................... 18

*Stone v. Mississippi*, 101 U.S. 814 (1879) ................................................................. 27

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......................................... 5, 7, 8

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)................................................ 4, 8, 9, 13

*Va. Off. For Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) ......................................... 12

*Valentin v. Hosp. Bella Vista*, 254 F.3d 35 (1st Cir. 2001) .............................................. 5

*Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009)............................ 29

*Whitman v. Am. Trucking Ass'n*, 531 U.S. 457 (2001)................................................... 20

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)....................................................... 16, 17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ......................................... 18, 30

*Wyeth v. Levine*, 555 U.S. 555 (2009) ....................................................................... 26

*Younger v. Harris*, 401 U.S. 37 (1971) ................................................................... 16, 17

**STATUTES**

15 U.S.C. § 3001 (a) .............................................................................................. 21, 27

18 U.S.C. § 1084 ..................................................................................... 20, 21

25 U.S.C. § 2701 *et seq.* ............................................................................ 21

28 U.S.C. § 3701 *et seq.* ............................................................................ 20

31 U.S.C. § 5363 .......................................................................................... 21

7 U.S.C. § 13a-2(1) ..................................................................................... 24

7 U.S.C. § 16(e)(2) ...................................................................................... 23

7 U.S.C. § 2(a)(1)(A) .............................................................................. 23, 24

7 U.S.C. § 2(e) ............................................................................................. 20

7 U.S.C. § 6(a)(1) ........................................................................................ 20

7 U.S.C. § 7a-2(5)(C)(i)(V) ........................................................................ 24

7 U.S.C. § 7a-2(c)(5)(C)(i) ......................................................................... 25

G.L. c. 23K .................................................................................................. 32

G.L. c. 23N .................................................................................................. 32

## OTHER AUTHORITIES

17 C.F.R. § 40.11(a)(1) ...................................................................... 22, 24, 28

U.S. Const. art. III, § 2 ................................................................................. 4

*Whether the Wire Act Applies to Non-Sports Gambling*, 35 Op. O.L.C. 134 (Sept. 20, 2011), https://www.justice.gov/olc/file/2011-09-20-wire-act-non-sports-gambling/dl, *superseded by*, *Reconsidering Whether the Wire Act Applies to Non-Sports Gambling*, 42 Op. O.L.C. 158, 159 (Nov. 2, 2018), https://www.justice.gov/olc/file/1121531/dl ................................................ 21

## RULES

Fed. R. Civ. P. 12(b)(1) .............................................................................. 10

## REGULATIONS

76 Fed. Reg. 44776 (July 27, 2011) ............................................................ 22

# PRELIMINARY STATEMENT

Plaintiff Robinhood Derivatives, LLC ("Robinhood") filed this renewed action for declaratory and injunctive relief against the Massachusetts Attorney General and the Commonwealth's Gaming Commissioners (collectively, the "Commonwealth"[1]) after the Commonwealth sued KalshiEX LLC ("Kalshi") in Massachusetts state court for violating state sports wagering law. In this renewed action, Robinhood still fails to allege an actual case or controversy between Robinhood and the Commonwealth.

Robinhood's now claims that it facilitates certain sports-related event contracts listed and executed on a *second* designated contract market ("ForecastEx"). As with its prior complaint, Robinhood's amended complaint arises solely from sports-related event contracts listed and executed on third-party Commodities and Futures Trading Commission-("CFTC") designated exchanges (Kalshi and ForecastEx); the trades themselves are not taking place on Robinhood's platform. Am. Compl., ECF No 88, at ¶¶ 1, 25, 27-28. Thus, this action continues only to seek to end-run the Attorney General's preexisting enforcement action against Kalshi, which (unlike this action) includes the requisite parties to decide the legality and classification of the challenged exchange-listed contracts under Massachusetts law. Neither Kalshi nor ForecastEx is a party to this federal action, even though Robinhood's asserted injury is predicated on trades that occur on those exchanges.

Given the ongoing action brought against Kalshi—the actual entity that creates and trades the sports contracts in question—even if Robinhood's claim for injunctive relief were proper, other abstention doctrines and this Court's inherent authority provide that this action

---

[1] For convenience, "Commonwealth" refers collectively to the Massachusetts defendants here and, where relevant, the Attorney General's position in the related enforcement matter.

should be dismissed or stayed.  This Court already granted dismissal on November 13, 2025, for lack of ripeness—where it "beg[an] (and end[ed]) its analysis."  ECF No. 69.  If anything, the Commonwealth's amended non-enforcement stipulation confirms that Robinhood still faces no imminent enforcement risk. The Attorney General has agreed to not enforce against Robinhood before the Kalshi preliminary injunction is fully resolved through state appeals, and before this Court decides Robinhood's renewed motion for preliminary injunction.  Am. Non-Enf't Stip., ECF No. 100, at ¶ 7.  The stipulation also confirms that the MGC will not request Attorney General enforcement until after those same milestones.  *Id*. at ¶ 9.

Even were the Court to decline to dismiss or stay this action, no preliminary injunction would be warranted.  Federal courts have long recognized the fundamental state police power to govern gambling.  Robinhood's argument that the Commodity Exchange Act ("CEA"), as amended in 2010, silently displaced that authority by requiring that *all* sports wagering operations fall *only* under the CFTC's purview—unbeknownst to the Supreme Court, state gambling regulators, and the dozens of state legislatures that have since enacted detailed state regulatory regimes—fails.  The claim is refuted by fundamental principles of statutory interpretation and all pertinent legislative history; it also defies common sense. As before, Robinhood faces no harm, let alone the type of imminent and irreparable harm required for preliminary relief.   The Court should dismiss the amended complaint and deny Robinhood's renewed motion for preliminary injunction.

## BACKGROUND

On September 12, 2025, the Commonwealth filed a civil enforcement action in the Suffolk Superior Court concerning sports wagers offered on the Kalshi exchange. *Commonwealth of Massachusetts v. KalshiEX LLC*, No. 2584CV02525-BLS1.  Kalshi removed

that lawsuit to this Court, but this Court promptly remanded. *Commonwealth of Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass.) (Stearns, J. presiding); *id*. at ECF No. 21, at pp. 7–16. Last month, the state court denied Kalshi's motion to dismiss and, on February 6, 2026, entered a preliminary injunction against Kalshi. ECF No. 99. Kalshi has noticed an appeal.

One business day after the Commonwealth initiated the Kalshi enforcement action, Robinhood filed this federal suit seeking declaratory and injunctive relief against the Attorney General and Massachusetts Gaming Commission ("MGC") Commissioners. ECF No. 1. On November 13, 2025, the Court allowed the Commonwealth's motion to dismiss and denied Robinhood's motion for a preliminary injunction. ECF No. 69, at 5. However, the Court invited Robinhood to file an amended complaint after Robinhood moved for reconsideration based on facts occurring after the initial dismissal briefing and hearing occurred. ECF No. 86.

On January 20, 2026, Robinhood filed its amended complaint, and a renewed motion for preliminary injunction, ECF No. 88–92. In its Amended Complaint, Robinhood alleges that it facilitates Massachusetts customers' access to sports-related event contracts that are listed and executed on third-party exchanges—initially through Kalshi and now also through ForecastEx—and contends that Massachusetts' sports wagering laws are preempted as applied to that activity. ECF No. 88, at ¶¶ 1, 5–7, 22–38, 43–61. Despite these amendments, Robinhood's Amended Complaint still fails to allege any concrete enforcement step by the Commonwealth directed at Robinhood; instead, it treats a letter issued to licensed sports wagering operators on November 13, 2025 ("MGC Letter"), as a purported basis for irreparable harm and a "credible threat" of enforcement. ECF No. 88 ¶ 4.

As this Court previously recognized, Robinhood's asserted controversy is contingent upon the outcome of the Attorney General's enforcement action against Kalshi;

Robinhood's alleged risk of enforcement depends on future events in that proceeding. ECF No. 39-1, at 4–5. To subdue any doubt about the Commonwealth's intent, the Commonwealth has filed an amended non-enforcement stipulation that forecloses any imminent enforcement risk. The Attorney General has agreed that she will not file or maintain any civil or criminal enforcement action against Robinhood based on Robinhood's facilitation of Massachusetts customers' orders in or offers of sports-related event contracts listed and executed on Kalshi or ForecastEx, until the following conditions are met: (1) Kalshi has exhausted its state appellate remedies to challenge the preliminary injunction, and (2) this Court reaches a decision on the pending motion for preliminary injunction in this action. ECF No. 100, at ¶ 7. As to the MGC, it will not maintain or file any enforcement action against Robinhood unless and until Robinhood becomes licensed pursuant to G.L. c. 23N; in addition, the MGC will not request under G.L. c. 23N §4(g) for the Attorney General to bring an enforcement action against Robinhood until after the same non-enforcement conditions for the Attorney General have been met. *Id*. at ¶ 9.

## MOTION TO DISMISS ARGUMENT

### I.     ROBINHOOD'S AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE IT REMAINS NONJUSTICIABLE.

Federal Courts may adjudicate only "Cases" or "Controversies." U.S. Const. art. III, § 2; *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). Article III justiciability doctrines—standing and ripeness—"define[] with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." *Allen v. Wright*, 468 U.S. 737, 750 (1984). Where, as here, a plaintiff seeks pre-enforcement relief, it must plead facts establishing an injury that is concrete and particularized, actual or imminent, fairly traceable to defendants, and likely redressable by the requested relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–26 (2021). In the pre-enforcement context, a plaintiff must show a "credible threat" of

enforcement that is "real and immediate," not "conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–61 (2014) ("*SBA List*"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–14 (2013).

This Court has already applied those principles to this controversy and dismissed it as unripe. ECF No. 69, at 4–5. Robinhood's amendments are immaterial. On the contrary, the Commonwealth's amended non-enforcement stipulation makes clear that there is no present enforcement risk as to Robinhood's offering of *both* Kalshi and ForecastEx sports-event contracts. ECF No. 100; ECF No. 69, at 4–5.[2] Robinhood still faces no "direct and immediate" hardship, and this Court lacks jurisdiction under Article III. *Lab. Rels. Div. of Constr. Indus. Of Mass., Inc. v. Healey*, 844 F.3d 318, 326, 330 (1st Cir. 2016) (hardship prong "focuses on 'direct and immediate' harm" and is "unconcerned with wholly contingent harm") (quoting *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003)).

Robinhood's amended pleading does not cure the jurisdictional defect that required dismissal last time. The Court dismissed because Robinhood's sole federal claim was not ripe: the Commonwealth's non-enforcement stipulation eliminated any imminent enforcement risk, and, even so, whether any dispute would ever ripen depended on hypothetical and future events, such as those in the Commonwealth's ongoing state-court enforcement proceeding against Kalshi. ECF No. 69, at 4–5. Robinhood now attempts to repackage the same speculative controversy by adding allegations about (i) a second exchange (ForecastEx) and (ii) intervening developments in the Kalshi matter. But those additions only underscore why this

---

[2] Because ripeness and hardship turn on whether there is any present risk of enforcement, the Court may consider jurisdictional facts outside the pleadings in resolving the Commonwealth's Rule 12(b)(1) motion—including the Commonwealth's filed amended non-enforcement stipulation in this action. *See, e.g.*, *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363–64 (1st Cir. 2001) (on Rule 12(b)(1), court may consider evidence beyond the complaint to resolve jurisdictional facts).

case remains contingent—and thus, still faces no "direct and immediate" hardship. *Lab. Rels. Div.*, 844 F.3d at 330.

### A. Robinhood Lacks Standing as There is No Imminent Enforcement Risk

#### 1. Robinhood's Addition of ForecastEx Does Not Create Standing.

Robinhood's theory of injury rests on the premise that because the Commonwealth sued Kalshi and mentioned Robinhood in that complaint, Massachusetts will imminently bring "a similar complaint and motion" against Robinhood. ECF No. 88, at ¶ 6. That is speculation layered on speculation. A plaintiff cannot establish standing by hypothesizing a chain of possibilities about what a sovereign "might do" in the future. *Clapper*, 568 U.S. at 410–14. Nor can it manufacture imminence through business choices made "based on their fears of hypothetical future harm." *Id*. at 416; *see also Reddy v. Foster*, 845 F.3d 493, 500–01 (1st Cir. 2017) (future injury must be "certainly impending" or present a "substantial risk" of occurring).

To be clear, here Robinhood's newly asserted "fear" —based on its new business relationship with ForecastEx— is entirely manufactured. Robinhood's addition of ForecastEx to its business portfolio does not change its relationship to these DCMs and to the trading of the sports event contracts themselves. The Commonwealth filed suit against Kalshi, the entity through which the sports event contracts are created and traded—Robinhood is not similarly situated to Kalshi. Rather, Robinhood is a "financial-services company" centered around being a stock-trading platform, but merely allows consumers another access point to Kalshi's event contracts. EFC No. 88, at ¶¶ 1-2. Robinhood's role is the same for ForecastEx's sports event contracts. *Id.* Any allegations as to how there is a credible threat of enforcement by the Commonwealth against Robinhood, an entity whose entire business model does not involve creating or trading sports event contracts, would be entirely speculative. *See Clapper*, 568 U.S. at 413-414 (reluctance to

endorse standing that rest on speculation about how independent decisionmakers will exercise judgment).

Furthermore, the Commonwealth's amended stipulation forecloses standing for the same basic reason the Court dismissed last time: Robinhood cannot plausibly allege any "real and immediate" threat of enforcement while the Commonwealth agreed not to enforce. *SBA List*, 573 U.S. at 159–61. Robinhood added ForecastEx to avoid the Court's prior observation that if Kalshi were enjoined, Robinhood would lose its platform and its *Ex parte Young* claim would become a "nullity." ECF No. 69, at 4. The amended complaint now alleges that Robinhood facilitates sports-related event contracts on both Kalshi and ForecastEx as an attempted workaround to the "nullity" observation. ECF No. 88 ¶¶ 26-28. But the amended non-enforcement stipulation covers both exchanges. ECF No. 100. *See, e.g.*, *Penobscot Nation v. Frey*, 3 F.4th 484, 508–09 (1st Cir. 2021) (where policies and disavowals make harm unlikely and contingent, claims are not fit and hardship is lacking).

What is more, the amended stipulation is stronger than the one the Court relied upon previously. ECF No. 29. Last time, the Court held there was "no risk" of enforcement before the state court ruled on the Commonwealth's preliminary injunction motion against Kalshi, and whatever might happen later "depends entirely on what that decision proves to be." ECF No. 69, at 4. Now, the Commonwealth's non-enforcement commitments are broader (covering both exchanges) and longer (extending through entry of the Kalshi injunction and any stay or state appeal thereof). ECF No. 100, at ¶ 7. Robinhood thus remains where it was at dismissal: seeking an advisory declaration about hypothetical future enforcement during a period where such enforcement will not happen. *Reddy*, 845 F.3d at 505 (lack of enforcement posture undercuts fitness and hardship).

### 2. Robinhood's Reliance on *R.I. Ass'n of Realtors* and *Rosen* Is Misplaced.

Robinhood has argued that a non-enforcement commitment cannot defeat standing because it would allow "case-specific amnesty" to insulate statutes from review. *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 36 (1st Cir. 1999). But *R.I. Ass'n of Realtors* does not establish a categorical rule that enforcement disavowals are irrelevant to Article III; it held only that the particular presentation there—explicitly described by the First Circuit as equivocal—did not negate a credible threat. *Id*. at 26. This case is materially different. The Commonwealth's posture is governed by a filed stipulation that forecloses enforcement against Robinhood for the conduct at issue until the stipulated judicial milestones occur. ECF No. 100, at ¶ 7. Article III turns on whether there is a real and immediate prospect of enforcement, rather than a desire for a theoretical legal interpretation. *SBA List*, 573 U.S. at 159–61; *Clapper*, 568 U.S. at 409–14.

Nor does *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021), help Robinhood. *Rosen* recognized that disavowals may defeat imminence where they are "unambiguous" and foreclose any reasonable prospect of enforcement. *Id*. at 52. The Commonwealth's filed stipulation does exactly that. ECF No. 100; *cf*. *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 51 (1st Cir. 2024) (discussing nonbinding representations). To the extent Robinhood argues that the Commonwealth has not "disclaimed coverage" of Robinhood's conduct under Massachusetts law, that is beside the Article III point: a plaintiff must still plead a credible threat that defendants will enforce against it. *Clapper*, 568 U.S. at 410–14; *TransUnion*, 594 U.S. at 423–24. Robinhood has not alleged any facts concerning the Commonwealth's intention to take enforcement action against it that are not merely speculative and entirely contingent on a

multitude of other factors, including how the Kalshi lawsuit plays out. This does not rise to the level of a credible threat.

### 3. Robinhood Lacks Standing as to the MGC Commissioners Because There Is No Enforcement Threat Traceable to Them.

Robinhood also names the Chair and Commissioners of the Massachusetts Gaming Commission ("MGC") in their official capacities. ECF No. 88, at ¶¶ 10–14. But Robinhood's alleged fear of enforcement by the MGC rests almost entirely on a November 13, 2025 letter addressed to sports wagering licensees—warning those licensees that they are "prohibited" from offering sports-related event contracts and that the MGC "may take steps up to and including revocation" for violations. ECF No. 88, at ¶ 4. That letter does not threaten Robinhood (which is not a sports wagering licensee), does not purport to initiate any proceeding against Robinhood, and—crucially—cannot supply traceability or imminence where the MGC has now stipulated away enforcement against Robinhood.

Under the amended non-enforcement stipulation, the MGC agrees not to initiate or maintain any civil or criminal enforcement action against Robinhood unless it becomes licensed pursuant to G.L. c. 23N; the MGC further agrees it will not request Attorney General enforcement under G.L. c. 23N § 4(g) until after the same judicial milestones as necessary for the Attorney General's stipulation are met. ECF No. 100, at ¶ 9. Robinhood does not allege it has applied for, holds, or intends to obtain a sports wagering license; it claims it does not need such a license, at all. ECF No. 88, at ¶ 5, 73–74. A plaintiff cannot establish standing against officials who have committed not to take enforcement action absent an event that is not alleged to be impending. *Clapper*, 568 U.S. at 410–14; *TransUnion*, 594 U.S. at 423–24.

Robinhood fails to plead injury-in-fact, traceability, and redressability, while the amended stipulation further removes any credible threat of enforcement by either the Attorney

General or the MGC during the operative period. The amended complaint should be dismissed for lack of standing. Fed. R. Civ. P. 12(b)(1); *Katz*, 672 F.3d at 71–72.

### B. Robinhood's Claims Are Unripe Because They Are Contingent.

Even if standing exists, the Court must dismiss because Robhood's claim remains unripe. Ripeness asks whether (1) a dispute is "fit for judicial decision" and (2) withholding review would cause "hardship." *Lab. Rels. Div.*, 844 F.3d at 326 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). When the alleged harm depends on uncertain future events, the claim is not fit; hardship is "necessarily also" contingent. *Id*. at 330. This Court has already applied that framework to this controversy and held it unripe, noting that what might happen after the state court acted "depends entirely on what that decision proves to be." ECF No. 69, at 4–5. The amended complaint does not eliminate that contingency; it multiplies it where it now facilitates sports event contract trades on ForecastEx – a completely separate entity from Kalshi.

#### 1. The Kalshi Proceeding Remains a Principal Driver of Contingency, and the State Court's January 20 Decision Confirms the Evolving Injunctive Posture.

Robinhood alleges that the Suffolk Superior Court has granted the Commonwealth's motion for a preliminary injunction and denied Kalshi's motion to dismiss, while also noting the injunction had "not yet issued" as of the filing of the amended complaint. ECF No. 88, at ¶ 3. The Superior Court has now entered a preliminary injunction against Kalshi, ECF No. 99, but Kalshi has appealed. *Commonwealth of Massachusetts v. KalshiEX LLC*, No. 2584CV02525-BLS1 (D. Mass.), Dkt. 58.

The Commonwealth's enforcement framework and the practical landscape for market participants are still actively being shaped by the resolution of any stay or appeal of the Kalshi

injunction.  That structure underscores—rather than cures—the contingent nature of Robinhood's asserted dispute.

### 2. ForecastEx Does Not Make the Dispute "Fit" Because the Amended Stipulation Extends the Same Contingency to ForecastEx.

Robinhood's amended complaint alleges it now offers sports-related event contracts through a second exchange, ForecastEx, and suggest this eliminates dependency on the Kalshi action.  ECF No. 88 ¶¶ 1, 26–28.  But the amended non-enforcement stipulation extends non-enforcement to Robinhood's ForecastEx sports-related event contracts.  ECF No. 100, at ¶ 7.  If the Commonwealth has disavowed enforcement against the very conduct that supposedly creates the controversy—across both exchange channels—then there is no present dispute to warrant federal adjudication.  *MedImmune*, 549 U.S. at 127; *Lab. Rels. Div.*, 844 F.3d at 326.

Robinhood's reliance on ForecastEx to manufacture immediacy also overstates what the Amended Complaint pleads.  Robinhood does not allege that it stands in the same posture as Kalshi or ForecastEx, which both are designated contract markets.  Sports event contracts still are not independently traded on Robinhood.  Rather, Robinhood alleges that customers simply facilitate orders through a Robinhood account, and "the trades themselves" are executed on the DCMs; Robinhood's interface "does not affect" execution and "merely adds additional CFTC regulation of Robinhood's activities as an FCM."  ECF No. 88, at ¶¶ 25, 28.  These allegations underscore that Robinhood's asserted injury remains entirely derivative of other factors, including on third-party exchange conduct and contingent on state court litigation.

Accordingly, the addition of ForecastEx does not make this controversy "fit" for adjudication; rather, it confirms that Robinhood is asking the Court to decide a preemption defense in the abstract.

### 3. Hardship Is Necessarily Contingent and Therefore Insufficient.

The hardship prong requires "direct and immediate" harm; it does not credit "wholly contingent harm." *Lab. Rels. Div.*, 844 F.3d at 330 (quoting *McInnis-Misenor*, 319 F.3d at 73). This Court previously held that because the threat of enforcement was contingent, any hardship was "also necessarily contingent," mandating dismissal. ECF No. 69, at 5 (quoting *Lab. Rels. Div.*, 844 F.3d at 330). The same is still true as Robinhood still only *facilitates* sports event contract transactions for DCMs. ECF No. 100, at ¶ 7. Additionally, ForecastEx is an entity entirely separate from Kalshi—the action upon which all of Robinhood's allegations rely—thus, to the extent harm ensues from Robinhood facilitating ForecastEx sports event contracts, such harm is also contingent on whether any action is taken against ForecastEx. And because the stipulation specifies that a "decision" on ECF No. 90 includes denial as moot or dismissal, Robinhood cannot establish hardship from withholding review where the Commonwealth's forbearance extends through the very resolution Robinhood seeks. *Id*. In short, Robinhood cannot plausibly claim a "dangling sword" of imminent prosecution when Defendants have filed a stipulation that forecloses enforcement while the relevant judicial milestones have yet to occur.

Because Robinhood's claim remains contingent and not fit for adjudication—and because any alleged hardship is contingent as well—the amended complaint must be dismissed under Rule 12(b)(1) for lack of ripeness. *Lab. Rels. Div.*, 844 F.3d at 326, 330' *Reddy*, 845 F.3d at 501.

## II. THE CLAIMS AGAINST THE MGC CHAIR AND COMMISSIONERS SHOULD BE DISMISSED INDEPENDENTLY BECAUSE ROBINHOOD CANNOT SATISFY EX PARTE YOUNG'S THRESHOLD REQUIREMENTS.

*Ex parte Young* is a "narrow" exception to sovereign immunity, available only to enjoin an ongoing violation of federal law by officials who have sufficient connection to enforcement of the challenged state law. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Va. Off. For Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011). An *Ex parte Young* action requires a real enforcement nexus and the need for a prospective remedy. *Local Union No. 12004 v. Mass. Comm'n Against*

*Discrimination*, 377 F.3d 64, 70–72 (1st Cir. 2004). Robinhood cannot meet those requirements as to the MGC Chair and Commissioners.

### A. The Complaint Alleges No Ongoing Violation by the Commissioners and No Credible Enforcement Nexus Directed at Robinhood by the MGC.

Robinhood's alleged threat from the MGC hinges on an MGC Letter directed to sports wagering licensees—warning of possible licensing consequences for those licensees. ECF No. 88 ¶ 4. Robinhood is not an MGC licensee. So there is not an ongoing enforcement action against Robinhood, and the letter does not establish that any Commissioner is poised to take enforcement action against Robinhood. If anything, the MGC Letter underscores the distinction: it addresses licensee compliance and potential licensing discipline—tools that operate within the sports-wagering license framework.

Additionally, the amended stipulation provides that the MGC shall not file or maintain any civil or criminal enforcement action against Robinhood unless and until Robinhood obtains a sports wagering license pursuant to G.L. c. 23N, and further provides that the MGC will not request Attorney General enforcement until after the ¶ 7 milestones are met. ECF No. 100, at ¶ 9. Because Robinhood is not a licensee and does not intend to become one, Robinhood faces no risk from the MGC or its Commissioners. ECF No. 88 ¶¶ 1, 5.

### B. There Is Independently No Article III Traceability nor Redressability as to the Commissioners.

Article III requires that the alleged injury be "fairly traceable" to the defendant and likely redressed by the requested relief. *TransUnion*, 594 U.S. at 423–26. Robinhood's alleged injury is fear of prosecution and business uncertainty. ECF No. 88, at ¶¶ 6–7, 75. But Robinhood has alleged no concrete MGC action directed at it. The MGC Letter is directed only to sports wagering licensees, and the Commission indicated it will not pursue enforcement against Robinhood absent licensure under the amended stipulation. Enjoining the Commissioners would

not redress Robinhood's claimed injury where there is no credible threat of MGC enforcement in the first place. *See Allen*, 468 U.S. at 753 n. 19 (traceability and redressability is limited where injury depends on independent decisions).

For each of these reasons, the claims against the Chair and Commissioners should be dismissed under Rule 12(b)(1), and independently under Rule 12(b)(6) for failure to plead an actionable *Ex parte Young* defendant with a connection to enforcement against Robinhood.

### III.   EVEN IF THE COURT REACHES THE MERITS, ROBINHOOD FAILS TO STATE A CLAIM UNDER RULE 12(B)(6).

Rule 12(b)(6) requires dismissal where a complaint fails to plead a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). Robinhood's amended complaint fails that standard for an independent, threshold reason: it asserts a cause of action under the "Supremacy Clause" itself. ECF No. 88, at ¶¶ 70–76. The Supreme Court has held that the Supremacy Clause "is not the 'source of any federal rights,' and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989)). A plaintiff cannot plead around *Armstrong* merely by labeling its count "Supremacy Clause—Preemption" and requesting declaratory and injunctive relief. ECF No. 88, at Count I; Prayer for Relief.

To be sure, federal courts may in appropriate cases entertain suits for prospective equitable relief to prevent state officials from enforcing preempted state law. But that equitable pathway still requires a justiciable enforcement dispute and proper *Ex parte Young* defendants with a connection to enforcement of the challenged law against the plaintiff. Here, those threshold requirements are absent for the reasons set forth above—Robinhood's speculative enforcement fears remain the same as they were as alleged in their original complaint, and the

amended stipulation forecloses enforcement through any legally uncertain periods related to the Kalshi injunction, while the MGC Commissioners have no present enforcement nexus as to Robinhood. ECF No. 100, at ¶ 9.

Nor does the Declaratory Judgment Act supply the missing basis for relief. The Act "enlarge[s] the range of remedies available," but "[did] not extend the[] jurisdiction" of the federal courts and does not itself create substantive rights. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). A declaratory-judgment plaintiff must identify an independently cognizable substantive claim; otherwise, the request is a request for an advisory opinion. *Id.*; *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 16–19 (1983).

Robinhood's lawsuit is an attempt to "front-run" a hypothetical state enforcement action by obtaining a federal declaration that its federal preemption defense would prevail. The Supreme Court has cautioned against using declaratory relief to adjudicate defenses to anticipated state actions. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). That concern is acute where, as here, the Commonwealth has not indicated it intends to take any action against Robinhood—an entity that is differently situated than Kalshi—and has filed a non-enforcement stipulation eliminating any credible threat of enforcement during the periods relevant to Robinhood's claim. ECF No. 100, at ¶¶ 7–9.

Accordingly, even apart from Article III ripeness, the complaint fails to plead a plausible basis for equitable relief because it seeks an advance adjudication of a defense to entirely speculative enforcement that the Commonwealth has disclaimed through the operative stipulation. The amended complaint should be dismissed under Rule 12(b)(6). *Armstrong*, 575 U.S. at 324; *Skelly Oil*, 339 U.S. at 671–72; *Wycoff*, 344 U.S. at 248.

IV.     **ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE DECLARATORY JURISDICTION AND DISMISS OR STAY IN LIGHT OF ONGOING STATE PROCEEDINGS AND PRINCIPLES OF FEDERALISM AND COMITY.**

Even assuming that Robinhood has pleaded an actionable claim, this Court retains substantial discretion to decline to entertain a pre-enforcement declaratory action that would interfere with, duplicate, or preempt parallel state-court adjudication of the same issues. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–90 (1995); *Brillhart v. Excess Ins. Co. f Am.*, 316 U.S. 491, 494–95 (1942). "In general, declaratory and injunctive relief are both matters of judicial discretion," and courts "ha[ve] no obligation to oblige." *Lichoulas v. City of Lowell*, 555 F.3d 10, 13 (1st Cir. 2009).

Here, the Commonwealth's enforcement action against Kalshi is not a speculative parallel proceeding; it has generated a merits-based decision allowing preliminary injunctive relief and rejecting Kalshi's preemption theory at the motion-to-dismiss stage *Com. of Massachusetts v. KalshiEX LLC*, 2026 WL 188019 at *9 (allowing Commonwealth's preliminary injunction and denying Kalshi's motion to dismiss). Robinhood's requested declaratory relief would invite this Court to decide, in the abstract, the same question about the applicability of Massachusetts sports wagering law—in the face of a specious federal preemption defense—that is now before the Commonwealth's appellate courts. Federalism and "wise judicial administration" counsel against that. *Wilton*, 515 U.S. at 288; *Brillhart*, 316 U.S. at 495.

A.     ***Younger* Supports Abstention or, at Minimum, a Stay to Avoid Interference with the Commonwealth's Ongoing Civil Enforcement Proceeding.**

Principles of comity reflected in *Younger v. Harris*, 401 U.S. 37 (1971), counsel abstention where the federal relief would interfere with certain ongoing state proceedings. As clarified in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013), *Younger* applies in "exceptional" categories that include state civil enforcement proceedings "akin to a criminal

prosecution" initiated by the State in its sovereign capacity. The Kalshi action falls within that category: it is an enforcement action to stop unlawful sports-wagering, and the state court has allowed preliminary injunctive relief. *Com. of Massachusetts v. KalshiEX LLC*, 2026 WL 188019 at *9; *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–05 (1975). The preliminary junction is now the subject of an appeal. *Commonwealth of Massachusetts v. KalshiEX LLC*, No. 2584CV02525-BLS1 (D. Mass.), Dkt. 58.

Although Robinhood is not a named party in the Kalshi proceeding, the relief it seeks would still interfere with that enforcement action by inviting a federal adjudication of the same preemption question at the heart of the Commonwealth's case. *See Sprint*, 571 U.S. at 78–79 (focus on interference with qualifying state proceedings). And no *Younger* exception is alleged: Robinhood does not plead bad faith, harassment, or other extraordinary circumstances warranting federal intervention. *Younger*, 401 U.S. at 53–54.[3]

### B. At Minimum, the Court Should Stay Under *Wilton/Brillhart*, and *Colorado River* Supports a Stay to Avoid Piecemeal Adjudication.

At minimum, the Court should exercise its discretion to dismiss the declaratory claim or stay this action pending completion of the ongoing state litigation and the milestones set by the Commonwealth's amended stipulation. *See Wilton*, 515 U.S. at 286–90; *Brillhart*, 316 U.S. at 494–95. Doing so avoids piecemeal litigation, respects state-court adjudication of core state interests in regulating sports wagering, and prevents a federal advisory pronouncement. *Wilton*, 515 U.S. at 288; *Lab. Rels. Div.*, 844 F.3d at 330.

---

[3] The District Court of Nevada recently held *Younger* abstention was proper against Coinbase's action for a temporary restraining order and preliminary injunction against Nevada, where Nevada had a state proceeding concerning Coinbase's unlawful offering of events contracts; important state interests in the regulation of gaming and protecting the public are implicated; and there is an opportunity to litigate the exact claims Coinbase brought in state court. *Coinbase Financial Markets, Inc. v. Ford, et al.*, No. 2:26-cv-0256 (D. Nev. Feb. 7, 2026).

*Colorado River* provides additional support for a stay. In "exceptional" circumstances, a federal court may stay proceedings to avoid wasteful duplication and piecemeal adjudication. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–20 (1976); *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16–19 (1983). The Kalshi enforcement action squarely presents core questions Robinhood asks this Court to decide, i.e., whether Massachusetts sports wagering law applies to wagers made available on a CFTC-registered exchange. *Commonwealth of Massachusetts v. KalshiEX LLC*, 2026 WL 188019 at *9. That issue is now on expedited appeal, and that appeal should be allowed to play out without disruption from the potential of conflicting results. *See Moses H. Cone*, 460 U.S. at 16–19 (avoidance of piecemeal litigation is a paramount consideration).

## OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Regardless of whether this Court dismisses Robinhood's complaint, its request for a preliminary injunction should be denied. Robinhood cannot establish entitlement to such extraordinary relief and has no prospect of success on the merits.

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024) (citation omitted). To obtain a preliminary injunction, Robinhood must show "that it is 'likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.'" *Env't Def. Fund, Inc. v. Wright*, No. CV 25-12249-WGY, 2025 WL 2663068, at *1 (D. Mass. Sept. 17, 2025) (citation omitted). "If the movant cannot demonstrate that he is likely to succeed . . . the remaining factors become matters of idle curiosity." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020) (quotation omitted).

# I. ROBINHOOD IS UNLIKELY TO SUCCEED ON THE MERITS.

"With respect to the first element, 'the district court is required only to make an estimation of likelihood of success and need not predict the eventual outcome on the merits with absolute assurance.'" *Harris as next friend of RNH v. Adams*, 757 F. Supp. 3d 111, 128 (D. Mass. 2024) (citation omitted). "This element is of 'primary importance' and the 'sine qua non for obtaining a preliminary injunction.'" *Harris as next friend of RNH*, 757 F. Supp. 3d at 128 (quoting *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 380 (D. Mass. 2020)).

Robinhood will not succeed on the merits because its preemption claim fails in two, fundamental respects. First, Robinhood is incorrect, as a matter of law, that the CEA, as amended in 2010, legalized sports gaming nationwide. Second, Robinhood cannot meet its burden to establish preemption because the CEA does not clearly and palpably displace longstanding state police power over sports gambling. Robinhood's sophistic arguments otherwise fail upon inspection, and have been failing throughout the country in recent weeks and months. Multiple federal courts have *denied* Kalshi's requests for injunctive relief premised on materially similar preemption theories, and the Suffolk Superior Court has *granted* an order to enjoin Kalshi from offering sports-event contracts in Massachusetts. *See KalshiEX LLC v. Martin*, 793 F.Supp.3d 667 (D. Md. Aug. 1, 2025), *appeal filed*, No. 25-1892 (4th Cir. Aug. 6, 2025); *N. Am. Derivatives Exchange Inc. d/b/a Crypto.com v. Hendrick*, No. 2:25-cv-00978-APG-DJA (D. Nev.); *KalshiEx, LLC v. Hendrick*, No. 25-00575, 2025 WL 1073495, at *8 (D. Nev. Apr. 9, 2025) (hereinafter "*KalshiEx (D. Nev.)*"), *preliminary injunction later dissolved by KalshiEX (D. Nev.)*, ECF No. 237 (D. Nev. Nov. 24, 2025), *appeal filed*, No. 25-7516 (9th Cir. Nov. 25, 2025) (dissolving order for injunctive relief issued to Kalshi upon further consideration); *Com. of Massachusetts v. KalshiEx, LLC*, No. 2584CV02525, 2026 WL 188019,

at *9.[4]  Ultimately, Robinhood ignores that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

## A. Federal Law Continues to Bar Interstate Sports Wagering, Irrespective of the CEA.

In Robinhood and Kalshi's telling, unbeknownst to everyone, Congress authorized sports wagering on CFTC-registered exchanges in the 2010 Dodd-Frank Act.[5]  The assertion relies on a breathtakingly overbroad construction of the CEA.  Either Robinhood is wrong, or nearly 40 states and the Supreme Court itself have entirely missed a sea change in the law.  In 2010, when Congress was considering the Dodd-Frank Act, sports gaming had been illegal in 47 states for the previous 18 years due to the Professional Amateur Sports Protection Act of 1992 ("PASPA"),[6] *see* 28 U.S.C. § 3701 *et seq.*; the use of the internet to wager on sports was barred by the Wire Act (as it still is to this day), *see* 18 U.S.C. § 1084; and just four years earlier,

---

[4] Robinhood renewed pleading relies, in part, on the district court's decision in *Blue Lake Rancheria*, No. 25-cv-06162-JSC, 2025 WL 3141202 (N.D. Cal. Nov. 10, 2025), *appeal filed*, No. 25-7504 (9th Cir. Nov. 25, 2025).  In its cursory analysis of the statute, the opinion adopts an unduly narrow view of the CEA, treating CFTC exchange registration as if it were an affirmative federal authorization to offer sportsbook-style wagers, and leaping from "regulated product" or "swaps" to "preempts state gambling law" without the clear statement Congress would need to displace States' traditional police powers over gambling.  The court's atextual implied-repeal theory would silently nullify not only state laws but also Congress's longstanding scheme that builds on (rather than exceeds) state restrictions, including IGRA and federal anti-gambling statutes.  The case is also inapposite because it arises from tribes' claims under IGRA and tribal-gaming frameworks (and related theories).

[5] Though Robinhood and Kalshi shy away from acknowledging the consequence of this argument, it is worth recognizing it expressly:  if sports wagers are "swaps," as they claim, the *only* place sports wagers may be made is on CFTC-regulated exchanges, such that the existing sports gaming economy now in place in dozens of states would violate federal law, therefore nullifying nearly forty state regulatory frameworks for legal sports wagering across the country. *See* 7 U.S.C. §§ 2(e), 6a(1).

[6] In fact, PASPA remained in effect until 2018 when it was ultimately overturned in *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018), which opened the floodgates to the legalization of sports wagering across the country.

Congress had adopted the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA") to stem illicit gambling payments on wagers, like sports wagers, barred by state law. 31 U.S.C. § 5363. Not one word in the text of the 2010 Dodd-Frank amendments altered the federal landscape of sports wagering.[7]

Instead, numerous federal laws, dating back decades, codify the national understanding that "States should have the primary responsibility for determining what forms of gambling may legally take place within their borders." 15 U.S.C. § 3001 (a) (Interstate Horseracing Act of 1978); *see* 18 U.S.C. § 1084 (a) (criminalizing interstate transmission of wagers on sporting events under the Federal Wire Act). Congress did not sweep all of that aside, without comment or fanfare, in its quest to bring oversight to formerly opaque derivative markets when it amended Dodd-Frank in 2010. *See Martin*, 793 F.Supp.3d at 683 ("Therefore, when Congress enacted and amended the CEA, it was highly unlikely to have intended to override state laws . . . because at those times it was already largely illegal federally to engage in sports gambling (under either the Wire Act in 1974 or PASPA in 2010)"). Robinhood argues that these laws were impliedly repealed when, under its narrative, Congress expanded the CEA to include swaps in 2010. But this Court does not imply repeal of a federal law, let alone multiple federal laws.[8] "The Supreme Court has made clear there is a 'strong presumption that repeals by implication are disfavored

---

[7] Indeed, since then, the Department of Justice has issued multiple opinions affirming that the Wire Act bars interstate sports wagering. *See Whether the Wire Act Applies to Non-Sports Gambling*, 35 Op. O.L.C. 134 (Sept. 20, 2011), https://www.justice.gov/olc/file/2011-09-20-wire-act-non-sports-gambling/dl, *superseded by*, *Reconsidering Whether the Wire Act Applies to Non-Sports Gambling*, 42 Op. O.L.C. 158, 159 (Nov. 2, 2018), https://www.justice.gov/olc/file/1121531/dl (finding that "the 2006 enactment of UIGEA did not alter the scope of the Wire Act").

[8] At minimum, Robinhood's proposed statutory interpretation implies at least a partial repeal of the Wire Act, as well as the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq. Martin*, 793 F.Supp.3d at 683.

and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute.'" *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)). This is particularly true where federal law would significantly alter the balance of state and national authority in subject matter. *E.g.*, *Bond v. United States*, 572 U.S. 844, 858 (2014).

The CFTC's own regulations reflect this reality. 17 C.F.R. § 40.11(a)(1) (prohibiting registered entities from offering products involving or relating to, in pertinent part, "gaming"). In promulgating the regulation, the CFTC explained that "its prohibition of certain 'gaming' contracts is consistent with Congress's intent to 'prevent gambling through the futures markets' and to 'protect the public interest from gaming and other events contracts.'" Provisions Common to Registered Entities, 76 Fed. Reg. 44776, 44786 & n. 35 (July 27, 2011) ("[T]he Commission 'needs the power to, and should, prevent derivative contracts that are contrary to the public interest because they exist predominantly to enable gambling through supposed event contracts.").

## B. The CEA's Express Preemption Provisions Indicate that State Gaming Law is Not Preempted.

Even were Robinhood to prevail on its incredible claim that 2010 amendments to the CEA allowed sports wagering on CFTC-registered exchanges, that would not be enough; Robinhood would next need to establish that the CEA also preempts all state regulation of sports wagering. Both of Robinhood's express preemption and implied preemption arguments fail.

In addressing a claim of express preemption, "the starting point for [the Court's] analysis is the 'language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 92 (1st Cir. 2013) (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57 (1990)). As part of this analysis, the Court must consider "the preemption clause's statutory context and the

statute's overall purpose." *Nw. Selecta, Inc. v. Gonzalez-Beiro*, 145 F.4th 9, 15 (1st Cir. 2025) (citing *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 96 (2017)).  Language that purportedly preempts state law is to be interpreted narrowly, especially where, as here, federal legislation touches an area traditionally governed by the States.  *CTS Corp. v. Waldburger*, 573 U.S. 1, 19 (2014).  Accordingly, ambiguity must be construed to "disfavor preemption."  *Altria Grp. v. Good*, 555 U.S. 70, 77 (2008).

Congress knows well how to expressly preempt state law and has so demonstrated *in the CEA* itself.  For example, 7 U.S.C. § 16(e)(2) adopts expressly preemptive language—"[t]his chapter shall supersede and preempt the application of any State or local law that prohibits or regulates" certain transactions not applicable here.  Congress's decision to expressly preempt state laws in one area indicates "that matters beyond that reach [like sports wagering] are not pre-empted."  *Martin*, 793 F.Supp.3d at 681 (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992); *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995)).

So, Robinhood's express preemption argument relies not on the CEA's avowedly preemptive provisions, but instead on a phrase defining the CFTC's jurisdiction in 7 U.S.C. § 2(a)(1)(A).  That provision defines the CFTC's jurisdiction as "exclusive" over certain financial products because, absent that exclusivity, other federal regulatory agencies (like the CFTC) would have overlapping oversight.  *See, e.g., Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 548 (7th Cir. 1989).  But this language does not reference, let alone displace, state law concerning sports wagering; it serves instead to define CFTC's jurisdiction as compared to peer federal agencies.  *See, e.g., FTC v. Ken Roberts Co.*, 276 F.3d 583, 591 (D.C. Cir. 2001) (discussing § 2(a)(1)(A) to determine CFTC jurisdiction as compared to FTC jurisdiction); *see also Martin*, 793 F.Supp.3d at 678 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

*Curran*, 456 U.S. 353, 386–87 (1982)) ("As the Supreme Court has explained, the exclusive-jurisdiction provision was intended to "consolidate federal regulation of commodity futures trading in the Commission" and to "separate the functions of the [CFTC] from those of the [SEC] and other regulatory agencies.").  In fact, the CEA expressly recognizes existing state jurisdiction: "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State."  7 U.S.C. § 2(a)(1)(A).  And, though this provision is remarkably omitted from Robinhood's briefing, the CEA expressly recognizes state enforcement authority, empowering state attorneys general to bring suit to enforce the CEA; this plain language deflates entirely any contention that the CFTC has sole enforcement authority.  7 U.S.C. § 13a-2(1).[9]

Moreover, quite apart from displacing state law, the CEA instead expressly envisions that state law will impact what type of swaps may be listed on registered exchanges.  CFTC regulations prohibit the listing on a market of contracts that "involve[], relate[] to, or reference[] . . . gaming, or an activity that is unlawful under any State or Federal law," 17 C.F.R. § 40.11(a)(1), and these regulations were adopted as part of the implementation of Dodd-Frank.  *See* 7 U.S.C. § 7a-2(5)(C)(i)(V).  As the Maryland federal court concluded, where "'a federal statute expressly incorporates state law,' a 'preemption analysis is inappropriate.'"  *Martin*, 793 F.Supp.3d at 680 (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 864 (4th Cir. 1994)).

---

[9] Contrary to Robinhood's assertion, the inclusion of "except as hereinabove provided" immediately prior to this provision is not further independent evidence that Congress intended to preempt state law.  *See* Memorandum of Points & Authorities in Support of Plaintiff Robinhood's Motion for a Preliminary Injunction, ECF No. 90, at 10 n.5.  "A savings clause generally 'negates the inference that Congress left no room for state causes of action.'" *Martin*, 793 F.Supp.3d at 681–82 (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987)).

Robinhood's express preemption argument relies on references to *other statutes* in cases decided by other circuits that are wholly inapplicable here. For example, whereas the use of the term "exclusive jurisdiction" may be preemptive when read in the context of a detailed federal statutory scheme on a topic of longstanding federal concern (interstate railroad commerce), a Ninth Circuit decision to that effect sheds no light on the plain text of the CEA here. Besides, much of that decision actually rejects Robinhood's argument. *See, e.g.*, *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 766 (9th Cir. 2018) ("Congress knew that § 5125(f)(1) provided protection from preemption by federal law . . . . That is, Congress knew that § 5125(f)(1) permitted States to impose fees related to the transportation of hazardous materials by rail, and to do so despite the FRSA. If Congress intended in the ICCTA to reverse course and no longer permit States to impose such fees, one would expect Congress to have said so. But Congress said nothing."). And even assuming the CEA grants exclusive federal jurisdiction over trading on DCMs for certain purposes, that does not amount to a blanket immunity from generally applicable state gambling and consumer protection laws—especially where the CEA's own "special rule" framework expressly treats contracts involving "gaming" and activity unlawful under state law as prohibited categories. 7 U.S.C. § 7a-2(c)(5)(C)(i).

### C. Congress Has Not Impliedly Preempted State Regulation of Sports Wagering.

Robinhood further suggests that the CEA impliedly preempts state sports wagering law, either because the CEA purportedly "covers the field" or otherwise conflicts with the purpose of federal law. Because state law is presumed to remain intact, and Robinhood points to no detailed

scheme of federal sports wagering regulation,[10] Robinhood fails to demonstrate implied preemption, either field or conflict.

### 1. There is No Field Preemption and Robinhood Fails to Overcome the Presumption Against Preemption.

The Court may infer congressional intent to preempt a field only "from [1] a framework of regulation 'so pervasive ... that'" it leaves "'no room for the States to supplement it' or [2] where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Capron v. Off. of Att'y Gen. of Mass.*, 944 F.3d 9, 21-22 (1st Cir. 2019) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012).

On this issue, Robinhood faces a strong presumption against preemption that it cannot overcome. To establish "field preemption," Robinhood must first describe with particularity the "field" from which Congress purportedly intended to exclude the states. *E.g., Kansas v. Garcia*, 589 U.S. 191, 208 (2020). "Field preemption is a high standard, and the presumption against federal preemption is especially strong 'when Congress has legislated in a field traditionally occupied by the States.'" *Martin*, 793 F.Supp.3d at 684 (quoting *Altria Grp. v. Good*, 555 U.S. 70, 77 (2008)). Specifically, in "all preemption cases, and particularly those in which Congress has 'legislated … in a field in which States have traditionally occupied,' … we 'start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 567 (2009); *Mass. Ass'n of Priv. Career Schs. v. Healey*, 159 F. Supp. 3d 173, 217 (D. Mass. 2016) (same). The question is not whether the "the federal statute can be framed as pertaining to

---

[10] Of course, there is no such scheme. In 2018, the Supreme Court expressly recognized the federal policy of leaving sports wagering regulation up to the states. *Murphy*, 584 U.S. at 484 (recognizing the "coherent federal policy" of "respect[ing] the policy choices of the people of each State on the controversial issue of [sports] gambling.").

an area of existing federal regulation, but rather whether the state law [claimed to be preempted] governs conduct that has historically been subject to state regulation." *Martin,* 793 F.Supp.3d at 676. The presumption applies with particular force here because the regulation of gambling has long been a core state police power. *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a state"); *Abdow v. Att'y Gen.*, 468 Mass. 478, 489 (2014) (citing *Stone v. Mississippi*, 101 U.S. 814, 821 (1879)).

"[T]o define the field," the Supreme Court has instructed courts to "proceed cautiously" and "consider[] the *target* at which the state law *aims*." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 385 (2015) (emphasis in original). Here, of course, the Commonwealth's target is sports wagering, and in that field, Congress has evinced an intent to *preserve* rather than preclude state authority. *See, e.g.*, 15 U.S.C. § 3001 (a) ("States should have the primary responsibility for determining what forms of gambling may legally take place within their borders"); *see Capron*, 944 F.3d at 23 (where "state law measures . . . concern[] a quintessentially local area of regulation," inference is against Congressional intent to occupy the field). Indeed, Robinhood has identified no federal regulation of sports wagering, because none exists. This is hardly a scheme that is so pervasive "that [it] leaves no room for state and local supplementation." *LCM Enters, Inc. v. Town of Dartmouth*, 14 F.3d 675, 684 (1st Cir. 1994); *see Martin*, 793 F.Supp.3d at 681–82.

### 2. Robinhood Further Fails to Establish Conflict Preemption.

Robinhood's assertion of implied conflict preemption is weaker still. To demonstrate an implied conflict, Robinhood must show that Massachusetts gaming law clearly and manifestly poses an obstacle "to the accomplishment and execution of the full purposes and objectives" of federal law. *Capron*, 944 F.3d at 36. But federal law bars forms of interstate sports wagering. *See supra* I.A. Even the CEA anticipates that regulated exchanges will not be used to offer

contracts that constitute gaming or violate state law, 7 U.S.C. § 7a-2(c)(5)(C)(I), (V), (VI), and the CFTC has prohibited such contracts by regulation. 17 C.F.R. § 40.11(a)(1). This is in accord with numerous other federal statutes, including the Wire Act (which prohibits interstate sports wagers over the internet), and the UIGEA (which prohibits facilitating payments due from such wagers).

Accordingly, that Massachusetts law prohibits Kalshi from offering sports wagers without licensure is entirely consistent with the federal structure. In actuality, Robinhood's argument is that because the CFTC has chosen not to enforce against the sports wagering occurring on its exchange, Massachusetts must stand aside, too,[11] and let its illegal conduct continue. Robinhood's related contention that these sports-event contracts are "legal under federal law" because a self-certification became effective at the end of the review period—i.e., was "deemed approved" after ten business days—confuses procedural effectiveness with substantive approval. Self-certification does not constitute CFTC approval of the product, nor does it resolve whether the contract is impermissible "gaming" or otherwise unlawful under state law. But "[i]n the end, . . . the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption. The Supremacy Clause gives priority to 'the Laws of the United States,'

---

[11] Robinhood's reliance on the agency's inaction on sports-related event contracts to support their legality, *see* ECF No. 90, at 16, is undermined by the CFTC's issuance of an advisory that clarifies that it has yet to take a stance on whether it can regulate sports-related event contracts. *See Robinhood Derivatives, LLC v. Dreitzer*, 2025 WL 3283308, at *2 (D. Nev., 2025), *appeal filed* No. 25-7831 (9th Cir. Dec. 12, 2025) (rejecting TRO and noting CFTC had directed FCMs to warn customers about pending litigation and attendant risks; customers therefore on notice). CFTC staff later withdrew Staff Advisory 25-36 on Feb. 4, 2026. *See* CFTC Letter No. 26-04 at 1.

not the . . . law enforcement priorities or preferences of federal officers." *Kansas*, 589 U.S. at

212.

## II.     ROBINHOOD WILL NOT SUFFER IRREPERABLE HARM ABSENT A
##          PRELIMINARY INJUNCTION.

Irreparable harm is measured "on 'a sliding scale, working in conjunction with a moving

party's likelihood of success on the merits', . . . such that '[t]he strength of the showing necessary

on irreparable harm depends in part on the degree of likelihood of success shown." *Braintree*

*Labs., Inc. v. Citigroup Glob. Mkts., Inc.*, 622 F.3d 36, 42–43 (1st Cir. 2010) (quoting *Vaqueria*

*Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009)); *Mass. Coal. of Citizens with*

*Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness of Mass.,* 649 F.2d 71, 75 (1st

Cir. 1981).  "'Irreparable injury' in the preliminary injunction context means an injury that

cannot adequately be compensated for either by a later-issued permanent injunction, after a full

adjudication on the merits, or by a later-issued damages remedy." *Harris as next friend of RNH*

*v. Adams*, 757 F. Supp. 3d 111, 129 (D. Mass. 2024) (quoting *Rio Grande Cmty. Health Ctr., Inc.*

*v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005)).  An irreparable harm finding "must be grounded on

something more than conjecture, surmise, or a party's unsubstantiated fears of what the future

may have in store." *Harris,* 757 F. Supp. 3d at 129 (quoting *Baptiste v. Kennealy*, 490 F. Supp.

3d 353, 381 (D. Mass. 2020)).

Robinhood's bases for "irreparable harm" do not go beyond mere conjecture to warrant

issuance of a preliminary injunction because Robinhood relies on an uncertain chain of

contingent events to establish impending harm, namely the fear of an enforcement action against

itself in light of the Commonwealth's action against Kalshi, *see* ECF No. 88, at ¶ 5; *see also*

*supra* Motion to Dismiss Argument Parts I-II (showing lack of credible threat of imminent

enforcement).  Furthermore, Robinhood's claimed harm is self-imposed: it chose to facilitate

sports-event contracts not only on Kalshi but also (per its own pleading) through ForecastEx—despite ongoing activity and litigation risks. As such, Robinhood fails to establish more than "a possibility of irreparable harm," which is "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (*per curiam*)).

The only new argument that Robinhood asserts stems from the MGC's issuance of a letter dated November 13, 2025, (the "MGC Letter") for the proposition that "Massachusetts has confirmed its position that offering sports-related event contracts trading is contrary to Massachusetts law. . . . [that] underscores the risk of an enforcement action to Robinhood, which is currently engaged in the exact conduct Massachusetts asserts is prohibited." ECF No. 90, at 1–2. This is the extent to which Robinhood addresses this letter, most likely because it is nothing more than mere conjecture. As Robinhood notes itself, the MGC letter is addressed to its sports-wagering licensees, noting that they are "prohibited from offering sports-related event contracts in Massachusetts." This letter does not apply to Robinhood as it is notably *not* a licensed sports-wagering operator in the Commonwealth. *See* ECF No. 88 ¶ 25, 28. Because the letter is not directed to Robinhood and does not apply to it, it cannot supply the "credible threat" or "imminent enforcement" predicate necessary to establish irreparable harm. Therefore, any such risk of enforcement would only apply to Robinhood if it was granted a sports wagering license from the MGC, which the given litigation suggests is unlikely to happen any time soon. *See Com. of Massachusetts v. KalshiEx, LLC*, No. 2584CV02525, 2026 WL 188019, at *7, n.7 (finding that the MGC Letter "does not state an intention to prohibit sports-related event contracts in Massachusetts).

Even were Robinhood's claims of pending enforcement credible, a risk of future injury associated with such an enforcement action is not irreparable harm that entitles it to a preliminary injunction. The risks and costs of litigation are "part of the social burden of living under government," even when the "burden of defending [a] proceeding" is "substantial." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see also 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118, 123 (D.D.C. 2017). Other courts have rejected the same asserted harms from Robinhood's facilitation of sports-event contracts. In *Robinhood Derivatives, LLC v. Dreitzer*, the District of Nevada denied Robinhood's temporary restraining order request, concluding that the harms Robinhood identified were largely self-inflicted (Robinhood "made a business decision") to reopen trades in the face of known state enforcement risk) and were primarily monetary—and therefore not the kind of irreparable injury warranting emergency injunctive relief. *Robinhood Derivatives, LLC v. Dreitzer*, 2025 WL 3283308, at *2 (D. Nev., 2025), *appeal filed* No. 25-7831 (9th Cir. Dec. 12, 2025).

III. **THE EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR THE COMMONWEALTH.**

The final consideration in weighing the grant of a preliminary injunction is 'the effect of the court's action on the public interest.'" *Harris as next friend of RNH*, 757 F. Supp. 3d at 144 (quoting *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1st Cir. 2003)). This element focuses on "the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does." *Santiago v. Municipality of Utuado*, 114 F.4th 25, 34 (1st Cir. 2024) (quoting *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1st Cir. 2003)). "The crux of the balance of equities inquiry is whether 'the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are

determined.'" *Grant v. Trial Ct.*, 784 F. Supp. 3d 475, 490 (D. Mass. 2025) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.* 640 F.2d 109, 113 (8th Cir. 1981)).

Here, the public interest favors the Commonwealth's enforcement of its sports wagering law; not Robinhood's attempt to use a specious preemption argument to forestall that enforcement—partnership with ForecastEx makes no difference to this assessment.  Mitigating the negative externalities of gambling "historically has been recognized as a matter that falls squarely within the [Commonwealth's] core police power."  *See Abdow*, 468 Mass. at 488–89; *Ah Sin*, 198 U.S. at 505–06. "Gambling has been recognized as a potentially harmful 'vice activity,' such that states have a recognized interest in reducing 'the social costs associated with' it."  *Martin*, 793 F.Supp.3d at 677 (quoting *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 185 (1999)); *see also Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 at 458–59 (2018) (describing history of state gambling laws).  Gambling legalization "[does] not remove all of the many perils, pitfalls, temptations and traps for the unwary, nor the occasions for corruption for the participants, all of which are inherent in any gambling operation of such proportions."  *Colella v. State Racing Comm'n*, 360 Mass. 152, 159 (1971).  To address those "perils, pitfalls, temptations and traps," the Massachusetts Legislature has determined that the public interest requires comprehensive legal protections, including the "strict oversight of all gaming establishments"; a mandate that all licensed operators are "responsib[le for] identif[ying], address[ing] and minimiz[ing] any potential negative consequences of their business operations"; the exclusion of young people under the age of 21 from sports wagering; and protections meant to ensure the integrity of the sporting events wagered upon and the health and safety of the athletes who participate in them.  *See, e.g.,* G.L. c. 23K, § 1 (1), (8); G.L. c. 23N, § 4; *see also Com. of Massachusetts v. Kalshiex LLC*, 2026 WL 188019, at *8 ("There is no

real question that licensure, and the consequent oversight, of sports wagering operations in the state serve both public health and safety, and the Commonwealth's financial interest. Seeking enforcement against non-complying entities also serves the public interest of fair competition and equal oversight among all sports wagering operations in the state.").[12]

Accordingly, enjoining the Commonwealth from enforcing its own sports wagering laws would certainly harm the public interest, and Robinhood's request for a preliminary injunction should be denied.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Robinhood's amended complaint. In the alternative, the Court should decline declaratory jurisdiction and dismiss or stay this action in deference to ongoing state proceedings and principles of comity and judicial economy. If the Court neither dismisses nor stays this matter, the Court should deny Robinhood's request for a preliminary injunction.

---

[12] Similarly, the Nevada district court recently held the balance of hardships and the public interest weighed against enjoining Nevada's enforcement posture, noting Robinhood's harms were essentially lost profits and reputational impact from discontinuing the activity— harms the court found insufficient to justify TRO relief when weighed against the state's interest. *Dreitzer*, 2025 WL 3283308, at *2 (D. Nev., 2025), *appeal filed* No. 25-7831 (9th Cir. Dec. 12, 2025).

Respectfully submitted,

ANDREA JOY CAMPBELL
MASSACHUSETTS ATTORNEY
GENERAL

COMMISSIONER JORDAN MAYNARD
COMMISSIONER EILEEN O'BRIEN
COMMISSIONER BRADFORD R. HILL
COMMISSIONER NAKISHA SKINNER
COMMISSIONER PAUL BRODEUR
MASSACHUSETTS GAMING
COMMISSION

Dated:        February 10, 2026        By:___*/s/ Alda Chan*_____
Alda Chan, BBO # 705204
Louisa E. Castrucci, BBO # 692208
Joshua Edlin, BBO # 715110
Jared Rinehimer, BBO # 684701
M. Patrick Moore, BBO # 670323
Assistant Attorneys General
One Ashburton Place
Boston, Massachusetts 02108

617-963-2525 / alda.chan@mass.gov
617-963-2848 / louisa.castrucci@mass.gov
617-963-2905 / joshua.edlin@mass.gov
617-963-2594 / jared.rinehimer@mass.gov
617-963-7491 / pat.moore@mass.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system on February 10, 2026, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Alda Chan*