THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBINHOOD DERIVATIVES, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, et al.,<br><br>*Defendants*. | Civil Action No. 1:25-cv-12578 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

i

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    I.    ROBINHOOD STILL LACKS STANDING AND ITS CLAIMS ARE NOT RIPE. ......... 2

        A.    Robinhood Does Not Allege Any Credible, Imminent Threat of Enforcement. ............ 2

        B.    Robinhood's Claims are Unripe and Robinhood Has Failed to Distinguish *Reddy v. Foster*. ................................................................................................................................... 5

    II.    THE CLAIMS AGAINST THE MGC DEFENDANTS SHOULD BE DISMISSED BECAUSE ROBINHOOD FAILS TO SATISFY *EX PARTE YOUNG*'S REQUIREMENTS.. 7

    III.    THE COURT SHOULD ABSTAIN FROM PROCEEDING OR, AT A MINIMUM, STAY THIS ACTION. .................................................................................................................. 8

        A.    *Wilton/Brillhart* Discretion Applies to Robinhood's Request for Declaratory Relief. ... 8

        B.    *Younger* Principles Support Abstention or, at Minimum, a Stay ..................................... 9

        C.    *Colorado River* Also Supports Abstention or a Stay Given the Overlap and the Heavy Costs of Parallel Adjudication. ............................................................................................ 9

        D.    The Polymarket Stay Posture Further Underscores That a Temporary Pause Is an Ordinary, Practical Case-management Tool in this Niche Context ..................................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

*Atlantic Research Marketing Systems, Inc. v. G.G. & G., L.L.C.*, 167 F. Supp. 2d 458 (D. Mass. 2001) ................................................................................................................................ 8

*Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014) ............................................................................... 4

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) .............................................................. 8

*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) .............................................................................. 4

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................................. 3, 4

*Commonwealth of Massachusetts v. KalshiEX LLC*, No. 2026-J-0143 (Mass. App. Ct. filed Jan. 9, 2026) ..................................................................................................................................... 1

*Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012) ........................................... 2

*Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530 (1st Cir. 1995) ............... 6

*Ex parte Young*, 209 U.S. 123 (1908) ....................................................................................... 7, 8

*Flectat Ltd. v. KASL Seabreeze, LLC*, 257 F. Supp. 3d 152 (D. Mass. 2017) ............................... 9

*Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18 (1st Cir. 2025) ....................................... 6

*New Hampshire Lottery Commission v. Rosen*, 986 F.3d 38 (1st Cir. 2021) ................................ 7

*O'Neil v. Canton Police Dep't*, 116 F.4th 25 (1st Cir. 2024) ........................................................ 2

*Penobscot Nation v. Frey*, 3 F.4th 484 (1st Cir. 2021) .................................................................. 4

*QCX LLC d/b/a Polymarket US v. Campbell*, No. 1:26-cv-10651-WGY (D. Mass. Mar. 5, 2026) ............................................................................................................................................. 1, 10

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) .................................................................... 2, 4, 5, 7

*Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979) ...................................................................... 7

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................................ 2, 3

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ............................................................................ 8

**INTRODUCTION**

Robinhood's Opposition confirms that this case still fails at the threshold. Robinhood represents that it stopped offering sports-related event contracts through ForecastEx, putting itself in the same posture as when this claim was previously dismissed. ECF No. 69 at 4. Robinhood then continues to insist that this Court adjudicate the legality of contingent future offerings it hopes to launch through "one or more" additional designated contract markets ("DCMs") by June 2026. Opp. at 1, 3, 10. Article III does not permit federal courts to issue advisory opinions about a plaintiff's speculative, evolving business plans—especially where no state defendant has threatened imminent enforcement against that plaintiff.

Robinhood's continued effort to manufacture imminence by pointing to the Commonwealth's separate enforcement action against Kalshi similarly falls short. That action is now on a fast track for merits resolution by the Massachusetts Supreme Judicial Court, with oral arguments currently scheduled for May 2026. *See* Decl. of Joshua R. Edlin ("Edlin Decl.") ¶ 3 & Ex. A (SJC Notice of Oral Argument, dated March 5, 2026) (seeking availability for oral argument for May 4 or 6, 2026). The Massachusetts Appeals Court also entered a stay of the *Kalshi* preliminary injunction pending appeal. *See Commonwealth of Massachusetts v. KalshiEX LLC*, Docket No. 2026-J-0143. (Mass. App. Ct., Single Justice Session) (Singh, J.) (order entered Feb. 17, 2026).

And in a separate, closely related litigation in this District—where another prediction-market platform (Polymarket) asserted a similar Commodity Exchange Act preemption theory against the Commonwealth—the court granted the parties' joint motion for an administrative stay of proceedings pending the Kalshi state appeal. *See QCX LLC d/b/a Polymarket US v. Campbell*, No. 1:26-cv-10651-WGY (D. Mass. Mar. 5, 2026), ECF No. 23. This reflects the

1

practical and widely shared recognition that sequencing these overlapping disputes promotes comity, conserves judicial resources, and avoids the risk of inconsistent rulings.

Proceeding on Robinhood's preemption claims on a hypothetical record—at the behest of a company with a "dynamic" and everchanging collection of prediction market offerings—would invite needless friction and potential inconsistency. The Court should dismiss for lack of justiciability or, alternatively, stay this matter pending the SJC's resolution of the Kalshi appeal.

## ARGUMENT

I.  **ROBINHOOD STILL LACKS STANDING AND ITS CLAIMS ARE NOT RIPE.**

   A.  **Robinhood Does Not Allege Any Credible, Imminent Threat of Enforcement.**

Robinhood is correct that in some circumstances a plaintiff may bring a pre-enforcement challenge. But those cases do not dispense with the core Article III requirement of a credible threat that the defendants will enforce that law against the plaintiff in the near term. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–62 (2014) ("*SBA List*"); *O'Neil v. Canton Police Dep't*, 116 F.4th 25, 30–32 (1st Cir. 2024) (requiring threatened enforcement action must be sufficiently specific). A generalized desire for business certainty, or a speculative fear that enforcement might occur at some unknown time, is not enough. *Reddy v. Foster*, 845 F.3d 493, 504–05 (1st Cir. 2017). Here, Robinhood points to (i) Massachusetts's enforcement action against Kalshi, (ii) statements in regulatory communications directed to sports-wagering licensees, and (iii) alleged vendor inquiries. None of these constitute a direct, imminent enforcement step against Robinhood.[1]

---

[1] Robinhood also argues that "the existence of a statute implies the threat of its enforcement," relying chiefly on out-of-circuit authority. Opp. at 5, quoting *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012). That out-of-circuit slogan cannot substitute for the Supreme Court's requirements of an actual, non-speculative threat as applied to the plaintiff's

### 1. Enforcement against Kalshi Does Not Establish a Credible Threat of Enforcement Against Robinhood.

Robinhood's attempt to bootstrap standing from the Commonwealth's enforcement against Kalshi (now stayed pending appeal before the SJC) similarly fails. The fact that Massachusetts is litigating against a different entity (a DCM) does not establish a credible threat of imminent enforcement against Robinhood—an entity that is not a DCM, has ceased the only identified sports prediction market offering other than through Kalshi, and now relies on prospective, unspecified future offerings. Robinhood thus uses the *Kalshi* enforcement action as a means to "manufacture standing by incurring costs in anticipation of nonimminent harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013).

Robinhood's efforts to collapse the distinction between a designated contract market (Kalshi) and a futures commission merchant (Robinhood) do not cure the lack of imminence. Opp. at 6–7. The standing inquiry asks whether the Commonwealth is poised to enforce the challenged law against Robinhood's specific conduct, not that it is possible articulate an enforcement theory that could reach Robinhood. *See SBA List*, 573 U.S. at 158–62.

### 2. The MGC Letters to Licensees and Alleged Vendor Inquiries Do Not Create an Imminent Enforcement Threat Against Robinhood.

Robinhood points to (1) the November 13 MGC letter directed to sports-wagering licensees and (2) alleged letters to two licensee-vendors, LexisNexis Risk Solutions FL Inc. and Socure, "probing their relationships with entities offering sports-related event contracts." Opp. at 3. This still does not show standing. First, communications to third parties about licensee compliance are not enforcement threats *against Robinhood*, who is not a licensee. Robinhood's

---

intended conduct, rather than a generalized fear of enforcement based on a statute's mere existence. *SBA List*, 573 U.S. at 158–62.

3

theory is several steps removed from an actual enforcement position against it: the letters would have to be interpreted as targeting Robinhood, then converted into a decision to initiate enforcement.

Second, even as to licensees, the November 13 letter reflects regulatory guidance and oversight within a licensed industry.  A generalized regulatory communication, untethered to a credible and imminent enforcement action against the plaintiff, is insufficient to confer Article III standing. *See Brito v. Garland*, 22 F.4th 240, 254 (1st Cir. 2021) ("The Supreme Court has expressed 'reluctan[ce] to endorse standing theories that require guesswork as to how independent decision-makers will exercise their judgment.'" (citing *Clapper*, 568 U.S. at 413–14).

### 3.  The Amended Non-Enforcement Stipulation Further Undercuts Any Claim of Imminence.

The Commonwealth's Amended Non-enforcement Stipulation, ECF No. 100, materially narrows any near-term enforcement risk to Robinhood.[2]  The question is whether Robinhood currently faces a real and immediate threat of enforcement sufficient to create an Article III controversy.  Unequivocal commitments that substantially eliminate the immediacy of enforcement are directly relevant to that inquiry.  *See Reddy*, 845 F.3d at 501–503 (no standing where the State "disavowed" interference); *Blum v. Holder*, 744 F.3d 790, 798–99 (1st Cir. 2014) (similar); *Penobscot Nation v. Frey*, 3 F.4th 484, 507–09 (1st Cir. 2021).

---

[2] In substance, the Attorney General has committed not to file or maintain civil or criminal enforcement actions based on Robinhood facilitating Massachusetts customer orders in sports-related event contracts listed/executed on specified federally regulated markets until defined litigation milestones are reached, including milestones tied to the related Massachusetts state-court proceeding against Kalshi and the pending preliminary-injunction proceeding before this Court. ECF No. 100, at ¶ 7.

4

### B. Robinhood's Claims are Unripe and Robinhood Has Failed to Distinguish *Reddy v. Foster*.

Even if Robinhood could plausibly allege some generalized risk of future enforcement, its claims are unripe. *Reddy* provides the controlling framework for applying those principles to this pre-enforcement challenge, and Robinhood's Opposition does not meaningfully distinguish it. In that case, the First Circuit rejected a pre-enforcement challenge because the alleged injury depended on an additional triggering event and therefore on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reddy*, 845 F.3d at 495.

Robinhood argues that its claim is "purely legal" and therefore "fit" for adjudication. Opp. at 1, 9. But a court does not decide abstract legal questions in a vacuum; it decides cases where the legal question arises in a sufficiently concrete, imminent controversy. Here, Robinhood's Opposition repeatedly underscores the very contingencies that defeat fitness. It emphasizes the "dynamic nature" of the prediction-market space and predicates much of its claimed need for relief on intended expansion through "one or more additional DCMs" by June 2026. Opp. at 4n.2, 9. That is the opposite of a stable, concrete factual predicate. It is an invitation for the Court to issue a sweeping advisory ruling about how Chapter 23N might apply to a shifting set of present and future offerings in a fast-changing market.

Robinhood tries to distinguish *Reddy* by claiming that here all preconditions of enforcement have been met because Robinhood offers sports-related event contracts in Massachusetts and Massachusetts has stated such offerings violate state law. Opp. at 10. That does not distinguish *Reddy*. First, Robinhood's asserted injury depends on multiple contingencies: whether and how Robinhood's present and future conduct would be treated under Chapter 23N; whether the Commonwealth will take enforcement steps against Robinhood (as opposed to other actors); and when such steps might occur in light of non-enforcement

5

commitments tied to defined litigation milestones. Second, Robinhood's own argument highlight that it is merely facing business uncertainty rather than an immediate enforcement dilemma. Robinhood asserts it can operate "without Kalshi," emphasizes that Kalshi is "one of 24 DCMs," and points to future expansions in June 2026. Opp. at 4.

Robinhood also leans on *Jensen v. Rhode Island Cannabis Control Commission* to argue that it need not await "the consummation of threatened injury" and that the prospect of future enforcement alone makes its claim ripe. Opp. at 13–14. But *Jensen* reiterated that the fitness inquiry turns on whether the claim "involves uncertain and contingent events that may not occur as anticipated or may not occur at all," such that any opinion would be advisory. *Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18, 24 (1st Cir. 2025) (quoting *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 536 (1st Cir. 1995). Critically, the First Circuit emphasized that because Jensen "must be excluded from obtaining a retail license under any scheme implemented … under the Act," this created "adverse legal interests" between the parties and there was enough immediacy to find Jensen's claim ripe. *Id*. at 25. It likewise stressed imminence and concreteness: Jensen alleged she was "certain to be ineligible" under the text of the statute, and she faced concrete burdens in preparing a "doomed" license application on the eve of licensing issuance. *Id*.

But Robinhood does not face a fixed, imminent bar that will operate regardless of future events. Instead, Robinhood seeks a sweeping pre-enforcement ruling about how Massachusetts might apply Chapter 23N to Robinhood's present and evolving prediction-markets activity, and to hypothetical future expansions. Opp. at 1, 3–4.

6

*Reddy* also defeats Robinhood on hardship. Robinhood relies on "dangling sword" language from cases such as *Rosen*,[3] but the key question is whether Robinhood must choose now between compliance and punishment or between abandoning current conduct and risking imminent sanctions. Robinhood has not alleged such a dilemma. Instead, Robinhood seeks judicial certainty for present operations and prospective expansion.

## II. THE CLAIMS AGAINST THE MGC DEFENDANTS SHOULD BE DISMISSED BECAUSE ROBINHOOD FAILS TO SATISFY *EX PARTE YOUNG*'S REQUIREMENTS.

*Ex parte Young* is not a roving commission to sue any official with some connection to a regulatory scheme. The plaintiff must show that the official has a specific connection to enforcement of the challenged law against the plaintiff and that the relief sought would redress the plaintiff's injury. *Ex parte Young*, 209 U.S. 123, 157–59 (1908); *see, e.g., Shell Oil Co. v. Noel*, 608 F.2d 208, 211–12 (1st Cir. 1979). Robinhood's allegations do not meet that standard. It points to a letter directed to licensees, vendor inquiries, and the MGC's general role under Chapter 23N. But Robinhood does not allege that the MGC Defendants have taken or threatened enforcement action against Robinhood; it does not allege a concrete MGC administrative proceeding against Robinhood; and it does not allege a direct enforcement step that would make prospective relief against these officials meaningful. Robinhood's theory is essentially that

---

[3] *Rosen* is inapposite. There, federal officials had "affirmatively warned" plaintiffs that their ongoing online lottery operations violated the Wire Act, and the government's later memoranda did not meaningfully disavow enforcement, offering only a limited internal forbearance period that could begin whenever DOJ chose—thus leaving plaintiffs to operate under a "dangling sword." *New Hampshire Lottery Commission v. Rosen*, 986 F.3d 38, 51–54 (1st Cir. 2021). Here, by contrast, the Commonwealth's enforcement posture has targeted different conduct—a DCM's offering of sports-related event contracts—not futures commission merchants or broker platforms like Robinhood. Nor has the Commonwealth directly warned Robinhood that its current facilitation activity violates Massachusetts law on a short fuse without meaningful disavowal. The predicates that made *Rosen* justiciable are therefore absent.

because the MGC operates in the sports-wagering ecosystem, it must be a proper defendant in Robinhood's preemption suit. That is not the law.

Robinhood cites *Verizon* and *Shaw* to argue that preemption claims may proceed under *Ex parte Young*. Opp. at 16–17. Those authorities do not eliminate Article III requirements or *Young*'s nexus requirement, and they do not authorize prospective relief against officials lacking a direct enforcement connection to the plaintiff's alleged injury.[4]

### III.   THE COURT SHOULD ABSTAIN FROM PROCEEDING OR, AT A MINIMUM, STAY THIS ACTION.

The Court has multiple, independent bases to decline to proceed now, and Robinhood's attempt to foreclose each of them rests on formalistic premises that do not reflect how these doctrines operate in practice—particularly in mixed declaratory/injunctive cases raising preemption defenses against ongoing state enforcement efforts.

#### A.   *Wilton/Brillhart* Discretion Applies to Robinhood's Request for Declaratory Relief.

Robinhood's lead contention—that *Wilton/Brillhart* does not apply because Robinhood's "claim" is brought under *Ex parte Young* rather than the Declaratory Judgment Act—confuses cause-of-action theory with remedial discretion. Opp. at 17–18. Declaratory relief is not automatic; it is discretionary, and federal courts "may" declare rights, not "must," even in *Ex parte Young* cases. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–90 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942); *see also Atlantic Research Marketing Systems, Inc. v. G.G. & G., L.L.C.*, 167 F. Supp. 2d 458, 467–68 (D. Mass. 2001) (explaining the

---

[4] Robinhood also attempts to distinguish *Armstrong v. Exceptional Child Center, Inc.* by labeling it a "mandatory injunction" case and asserting that *Armstrong* is irrelevant where a plaintiff seeks to prohibit enforcement of preempted state law. Opp. at 16. But the key point remains: whatever the merits of preemption, Robinhood still must plead a proper *Young* claim against each defendant. It has not done so as to the MGC Defendants.

8

abstention doctrine "has its roots in *Ex parte Young*" and abstention is available even in cases that "[do] not fit neatly into any of the various categories of abstention established by precedent").

Robinhood's invocation of *Ex parte Young* does not convert the DJA into a mandatory entitlement or strip the Court of discretion to withhold a declaration while related state proceedings are actively addressing the same underlying controversy.

### B. *Younger* Principles Support Abstention or, at Minimum, a Stay.

Even if strict *Younger* dismissal is not compelled because Robinhood is not a party to the Kalshi action, the comity principles *Younger* embodies strongly counsel against federal intervention while the Commonwealth's enforcement theory and related issues are being litigated in an expedited state appeal now before the SJC. The relief Robinhood seeks—prospective federal constraints on Massachusetts's ability to enforce its sports-wagering laws in this space—would create practical interference and a substantial risk of inconsistent rulings. At minimum, a stay is warranted.

### C. *Colorado River* Also Supports Abstention or a Stay Given the Overlap and the Heavy Costs of Parallel Adjudication.

Robinhood argues *Colorado River* cannot apply because the cases are not "parallel" and the parties differ. Opp. at 19. But the operative concern is whether parallel adjudication would be duplicative and inefficient in light of related proceedings likely to resolve or materially narrow the issues presented. *See, e.g., Flectat Ltd. v. KASL Seabreeze, LLC*, 257 F. Supp. 3d 152, 157–59 (D. Mass. 2017) (granting *Colorado River* abstention despite different parties and explaining that there need only be an available procedural vehicle in state court by which the federal plaintiff, even if not in the state action, can resolve the issues raised in the federal action) (internal quotation omitted). With the *Kalshi* case on an expedited track for review by the SJC,

9

those concerns are compelling. A stay avoids unnecessary friction and preserves the Court's resources while the SJC addresses closely related questions.

### D. The Polymarket Stay Posture Further Underscores That a Temporary Pause Is an Ordinary, Practical Case-management Tool in this Niche Context.

Polymarket's related CEA-preemption case in this District provides a practical benchmark for why a stay is warranted here. *See QCX LLC d/b/a Polymarket US v. Campbell*, No. 1:26-cv-10651-WGY (D. Mass. Mar. 4, 2026), ECF No. 23 (granting joint motion to stay proceedings pending Kalshi's state appeal). The stay posture in that case reflects the obvious reality: where multiple, overlapping suits seek broad pre-enforcement rulings while related proceedings are actively developing, sequencing is often the most efficient and least intrusive course.

## CONCLUSION

For the foregoing reasons, the Commonwealth's Renewed Motion to Dismiss or, in the Alternative, Stay Proceedings should be granted. If the Court does not dismiss, it should stay this action in whole or in part on prudential grounds pending resolution of related proceedings.

Respectfully submitted,

        ANDREA JOY CAMPBELL
        MASSACHUSETTS ATTORNEY GENERAL

        COMMISSIONER JORDAN MAYNARD
        COMMISSIONER EILEEN O'BRIEN
        COMMISSIONER BRADFORD R. HILL
        COMMISSIONER NAKISHA SKINNER
        COMMISSIONER PAUL BRODEUR
        MASSACHUSETTS GAMING COMMISSION

Dated: March 10, 2026        By: */s/ Joshua R. Edlin*
        Joshua Edlin, BBO # 715110
        Alda Chan, BBO # 705204
        Louisa E. Castrucci, BBO # 692208
        Jared Rinehimer, BBO # 684701
        M. Patrick Moore, BBO # 670323
        Assistant Attorneys General
        One Ashburton Place
        Boston, Massachusetts 02108

        617-963-2905 / joshua.edlin@mass.gov
        617-963-2525 / alda.chan@mass.gov
        617-963-2848 / louisa.castrucci@mass.gov
        617-963-2594 / jared.rinehimer@mass.gov
        617-963-7491 / pat.moore@mass.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the CM/ECF system on March 10, 2025, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                         */s/ Joshua R. Edlin*
                                                         Joshua R. Edlin